## UNITED STATES DISTRICT COURT FOR
## SOUTHERN DISTRICT OF FLORIDA
**Miami Division**

MUSIC SPECIALIST, INC., a Florida
Corporation, and SHERMAN NEALY,
an individual

                        Plaintiffs,

      v.

ATLANTIC RECORDING CORP. a Delaware
Corporation, WARNER/CHAPPELL MUSIC, INC.,
a Delaware Corporation, ARTIST PUBLISHING
GROUP, L.L.C., a Delaware Limited Liability,
Corporation, MIKE CAREN an individual, ,

                        Defendants.

_____/

## COMPLAINT

Plaintiffs, MUSIC SPECIALIST, INC., a Florida Corporation, and SHERMAN NEALY, an individual, by and through undersigned counsel, respectfully allege their Complaint against Defendants, ATLANTIC RECORDING CORPORATION a Delaware Corporation, WARNER/CHAPPELL MUSIC, INC., a Delaware Corporation, ARTIST PUBLISHING GROUP, L.L.C., a Delaware Limited Liability Company, MIKE CAREN, an individual (collectively "Defendants") and in support state as follows:

### JURISDICTION AND VENUE

1.     This court has subject matter jurisdiction over Plaintiffs' claims for copyright infringement and related claims pursuant to 17 U.S.C. §101 and 28 U.S.C. §§1331 and 1338(a).

2.     This Court has federal question jurisdiction in this matter in that Plaintiffs seek damages and injunctive relief against the Defendants named herein under Section 501 through 505 of the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

1

3.     The amount in controversy in this action exceeds $75,000, exclusive of interest, attorney's fees and costs.

4.     This Court has personal jurisdiction over the Defendants pursuant to Fla. Stat. § 43.193, for the following reasons: Plaintiffs are citizens and residents of the State of Florida; Defendants have been operating, conducting, engaging in, or carrying on business or a business venture within this state; Defendants are engaged in substantial and not isolated activity within this state; and Defendants are engaging in, causing, inducing, materially contributing to, supervising and controlling and receiving direct financial benefit from copyright infringement within this state.

5.     The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) in that this independent civil action arises from the same common nucleus of operative facts over which the Court had original jurisdiction in the Complaint Case 09-20505- CIV-MORENO. These claims are so related to the claims in that action that they form part of the same controversy in accordance with Article III of the United States Constitution.

6.     This action has diversity jurisdiction that lies within this Court pursuant to 28 U.S.C. § 1332(2) in that the controversy is between citizens and subjects of the State of Florida and citizens or subjects of a foreign state.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) and 28 U.S.C. § 1400(a). The copyrights that were infringed upon are co-owned by Plaintiffs, Florida residents. Each of the Defendants entered into agreements in the Southern District of Florida which  infringe upon the copyrights of Plaintiffs.

## PARTIES

8.     Plaintiffs, MUSIC SPECIALIST, INC. ("MSI"), is a Florida corporation organized and existing under the laws of the State of Florida with its principal place of business in Miami Dade County, Florida. MSI owns, produces, and sells sound recordings.

2

9.      Plaintiff, SHERMAN NEALY ("NEALY"), is an individual residing in Ft. Lauderdale, Florida. NEALY owns and controls MSI.

10.     At all material times herein, Plaintiffs were the copyright owners in the sound recordings and exclusive publisher for all the subject master recordings and compositions listed herein.

11.     Under the Copyright Act, the Plaintiffs have the right to reproduce the copyrighted works, to distribute copies of the copyrighted works, to publicly perform the copyrighted works and to authorize or license the use of the copyrighted works in audio and video recordings and public performances, among other things, including those broadcast on radio, over the internet, telecast on television, and to capture the recordings sold at retail outlets worldwide. *See* 17 U.S.C. § 106.

### *Defendants*

12.     Upon information and belief, Defendant, WARNER/CHAPPELL MUSIC, INC. ("WARNER") is a corporation organized under the laws of the State of Delaware, with its principal place of business in California. WARNER is a for-profit corporation based on its business conducted within the State of Florida.

13.     Upon information and belief, Defendant, ARTIST PUBLISHING GROUP, L.L.C. ("ARTIST"), is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in California. ARTIST exploits and administers music throughout the country, including in the State of Florida.  Defendant MIKE CAREN is the sole owner of Artist Publishing, L.L.C.  and is personally directing and participating in the conduct contained herein for a direct financial benefit

14.     Upon information and belief, Defendant, ATLANTIC RECORDING CORPORATION ("ATLANTIC"), is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York. ATLANTIC is a division of Warner Music Group

Corporation. ATLANTIC is a for-profit corporation based on its business dealings, including the sale and distribution of recorded songs, within the State of Florida.

15.     WARNER, ARTIST, ATLANTIC, and MIKE CAREN are collectively referred to as "Defendants."

## GENERAL ALLEGATIONS

16.     This is an action by Plaintiffs for copyright infringement, failure to account, constructive trust, unauthorized fixation and trafficking in illicit recordings and fraud.

17.     In 1983, NEALY founded and became the owner of MSI and created Jam Packed as a trademark label imprint which was owned by MSI. MSI created a catalog of popular songs between 1983 and 1987.

18.      In 1988 NEALY was incarcerated. NEALY was released in 2008.

19.      NEALY served an additional period of incarceration from 2011 to  2015.

20.     MSI is a company in the music industry that owns, produces, and sells sound recordings and musical compositions to the public. MSI owns copyrights of written songs, as well as master recordings of performances of songs by artists, which are for sale to the public in various formats.

21.     The artists engaged by MSI are professionally known as Debbie Deb, Freestyle (Garfield Baker and Byron Smith), Pretty Tony (Tony Butler) and Trinere.

22.     MSI is affiliated with Music Specialist Publishing ("MSP"), which administers the publishing rights to the musical compositions it owns.

23.     MSI and MSP have developed a catalog of popular songs. The sound recordings and musical compositions which were recorded and first published by MSI, include but are not limited to: (1) "Computer Language"; (2) "Fix It in the Mix"; (3) "Freestyle Express"; (4) "I Know You Love Me"; (5) "Jam the Box"; (6) "Lookout Weekend"; (7) "Party Has Begun"; (8) "When I Hear Music"; (hereinafter the "Musical Work(s)").

24.     The infringements of the master recordings and compositions which are owned by MSI include but are not limited to the use of "Jam the Box" in "In the Ayer" by multi-platinum recording artist Flo Rida, the use of "When I Hear Music" in "Fuego" by multi-platinum recording artist Pitbull and the use of "Look Out Weekend" in "Weekends" by multi-platinum recording artist Black Eye Peas.

25.     Plaintiffs have been the owners of the master recordings and exclusive publishing rights for the subject Musical Works since their creation. Plaintiffs did not assign, license, sell and/or divest themselves of their ownership interests in the copyrights at issue by virtue of any alleged agreement to any third party at any time. Under Section 106 of the Copyright Act, Plaintiffs have the distinct, severable and exclusive rights to, among other things, reproduce and distribute their works to the public and to perform those works publicly. *See* 17 U.S.C. § 106.

### "In the Ayer"

26.     Upon information and belief, a company named 321 Music L.L.C. a Florida Corporation which is solely owned by Tony Butler through improper or invalid agreements or other means licensed the rights in Plaintiffs' master recording and composition "Jam the Box" to Defendant ATLANTIC. Said agreement purported to authorize ATLANTIC's use of "Jam the Box" without Plaintiffs' consent or permission. ATLANTIC knew prior to entering into any agreement with 321 that 321 did not possess any instrument which lawfully conveyed the copyrights in Jam the Box to 321.

27.     ATLANTIC then permitted one of its recording artists known as Flo Rida to digitally sample and interpolate "Jam the Box" in his song entitled "In the Ayer" on the compact disc *Mail on Sunday.*

28.     Defendant ATLANTIC never sought or obtained Plaintiffs' permission to copy, duplicate, digitally sample or otherwise use "Jam the Box" in Flo Rida's composition and sound recording of "In the Ayer."

29.     Defendant ATLANTIC failed to conduct adequate due diligence and failed to investigate the ownership of the copyrights in "Jam the Box" or 321's purported authority to license "Jam the Box." Had ATLANTIC searched the U.S. Copyright Office's website, it would have discovered that Plaintiffs own the copyrights for "Jam the Box."

30.     ATLANTIC released Flo Rida's album *Mail on Sunday* in March 2008. The album was a smash hit. The song, "In the Ayer" topped various airplay and sales charts, and drove album sales. Since that time, "In the Ayer" has been distributed and sold through record stores, internet on-line sites, and other outlets and has been played on terrestrial radio, satellite radio, television, and at live performances by Flo Rida worldwide and in the United States, including the State of Florida.

31.     ATLANTIC have earned and continue to earn significant revenue from their fraudulent copying and use of Plaintiffs' copyrighted "Jam the Box" in the musical composition and sound recording of "In the Ayer," which has been licensed for use in many instances that include the following:

     a.   *So You Think you Can Dance July 2, 2008*
     b.   *FN MTV programming July 2008*
     c.   *So you think you can Dance July 9, 2008*
     d.   *Cinemax Tour Stories HBO, July 20 2009*
     e.   *One Tree Hill #601, July 17, 2008*
     f.   *Randy Jackson Presents July 17, 2008*
     g.   *Chuck 2008-2009 season June 25, 2008*
     h.   *blanket license to Warner Music Corp. for digital video*
     i.   *2008 Espy's July 8 2008*
     j.   *Comedy Central of Bob Saget July 17, 2008*
     k.   *9 Squared July 7, 2008*

**ATLANTIC RECORDS UNLAWFULLY CONVEYS AWAY
PLAINTIFFS' COPYRIGHTS**

32.     On February 27, 2009 a copyright infringement action was instituted in the Southern District of Florida by a company named Pandisc Music Corporation ("Pandisc") and an affiliated company named Whooping Crane ("Whooping Crane") regarding the subject musical works against 321 Music, Tony Butler, Atlantic Recording Corp., Artist Publishing L.L.C., and Warner Chappell Music. *Pandisc Music et al vs 321 Music et al* Case No: 09-20505-CIV-Moreno/Torres the ("2009 Case").

33.     In the 2009 Case, Pandisc and Whooping Crane knowingly alleged false claims that they had lawfully acquired ownership rights in the subject Musical Works via a set of agreements which they entered into between 1989-1992 with two companies named Captain Productions Inc. ("Captain") and Ctan Music Inc. ("Ctan"). Captain and Ctan are both defunct Florida Corporations which were solely owned by Tony Butler. Although Pandisc and Whooping Crane lack standing to institute a copyright infringement action in the 2009 case, along with their unfounded copyright infringement claims Pandisc and Whooping Crane sought to enforce an unrelated $300,000 judgment against Butler and 321 in the case.

34.     In the 2009 case, 321 filed a counter complaint against Pandisc and Whooping Crane. Although 321 was not authorized and entitled to enforce a copyright action pertinent to the subject musical works in their counter complaint, 321 among other things alleged that MSI filed a copyright registration for *In the Ayer*.

35.     The 2009 Case was resolved by a mediation settlement agreement the ("MSA") on July 23, 2009. The MSA purportedly settled the dispute amongst the parties pertinent to dominion and control over the subject master recordings and compositions which are rightfully owned by the Plaintiffs. The case was dismissed with prejudice on July 31, 2009. Six months after the case being dismissed, these Defendants entered a so-called "Amendment" to the MSA. *See "Exhibit A" Mediation Settlement Agreement Amendment*.

36.     Shortly after entering into the "Amendment", Pandisc and Whooping Crane instituted another lawsuit in the Eleventh Judicial Circuit in and for Miami Dade County, FL against BUTLER and 321 claiming fraud in the inducement and breach of contract. *See Pandisc Music Corp. et al vs Tony Butler and 321 Music LLC*, Case. No. 10-59481 CA 40 the ("2010 Case"). Specifically, Pandisc and Whooping Crane alleged, among other things, that Tony Butler and 321 made fraudulent representations in the (2009) MSA and amended mediated settlement agreement that321 breached the amended mediated settlement agreement.

37.     In the same (2010) case, and almost 5 years later,  in 2015, the mediated settlement agreement and amendment resolving the 2009 Federal case were adjudicated ***fraud ab initio and unenforceable pursuant to the terms therein*** by the Honorable Judge Thornton, thereby, putting the parties to the MSA's back to the position they were in relative to the ownership of the subject Musical Works prior to the MSA and Amendment. *See "Exhibit B" 2015 Final Judgments Regarding Mediated Settlement Agreement.*

38.     Prior to becoming a party to the MSA and Amendment, ATLANTIC and MIKE CAREN, (who is a Vice President of A&R at Atlantic Records) knew that Plaintiff MSI was the Copyright Claimant of the subject master recordings and compositions and that Pandisc and Whooping Crane never held any ownership rights in the subject Musical Works as was falsely alleged in their 2009 Copyright Infringement claims. Moreover, ATLANTIC knew that 321 never obtained a lawful succession of the subject copyrights from MSI.

39.     ATLANTIC also knew that Butler and 321's representation that MSI filed a copyright registration for *In the Ayer* in 2009 was a false. Additionally, ATLANTIC knew that 321's representations in the MSA that 321 had a distribution agreement with Universal U.K. for the subject master recordings were fraudulent.

8

40.     ATLANTIC was complicit with Butler's fraud all along and knew clearly that the MSA and Amendment was fraudulent from the moment they were formed and that none of the subject songs could be lawfully covered by these agreements since the songs were recorded, distributed for sale, exclusively published and copyrighted by Plaintiffs prior to these agreements.

41.     Pursuant to the terms of the MSA and Amendment, ATLANTIC participated in the unlawful conveyance of 15% of the rights in the subject master recordings into perpetuity to Pandisc and 50% of Plaintiffs' publishers share of copyrights in the compositions into perpetuity to Whooping Crane as consideration in order to resolve their frivolous and unfounded dispute with Pandisc and Whooping Crane in the 2009 Case. In exchange for the unlawful conveyance of Plaintiffs' copyrights, Pandisc and Whooping Crane abandoned their copyright infringement claims and acceded to Tony Butler and 321's allegations that they held dominion and control over the subject musical works. Additionally, Pandisc and Whooping Crane waived and discharged their $300,000.00 unsecured judgment against Tony Butler and 321.

42.     It is clear that ATLANTIC became a party to the MSA and amendment to evade Pandisc and Whooping Crane's enforcement of the $300,000 unsecured judgment against Tony Butler , upon the ill-gotten revenues of 321, ARTIST, WARNER, and ATLANTIC which were derived from the unlawful exploitation of MSI's musical work "Jam The Box" in Flo- Rida's hit single " In The Ayer" from the multi-platinum album "Mail On Sunday".

43.     ATLANTIC knew that the prospective conveyance of Plaintiffs' copyrights in the subject musical works to Pandisc and Whooping Crane was illegal from the moment the MSA and amendment were formed.

44.     Plaintiffs never granted ATLANTIC the rights to convey away their copyrights to produce, sell, or otherwise exploit the subject master recordings and musical compositions. Despite their having no permission to do so, ATLANTIC have illicitly taken the recordings of performances

owned by Plaintiffs and have willfully and unlawfully participated in and/or communicated the sounds of their live performances to the public in interstate commerce, and have distributed, offered to distribute, sold and offered to sell, and trafficked in such illicit recordings in interstate commerce.

### WARNER AND ARTIST ENTERS INTO AN UNLAWFUL EXCLUSIVE PUBLISHING ADMINISTRATION AGREEMENT WITH  321 REGARDING PLAINTIFFS' MUSICAL WORKS

45.     On or about July 25, 2008, ARTIST and WARNER entered into an exclusive publishing administration agreement the ("Artist Agreement") with 321. WARNER and ARTIST knew prior to entering into the Artist Agreement that 321 never owned or controlled the subject copyrights nor did 321 have a lawful succession of the copyrights from the Plaintiffs. *See "Exhibit C" Artist Agreement*. Accordingly, WARNER and ARTIST knew that the Artist Agreement was an illegal contract which was in violation of Title 17 of the U.S. Code from the moment the agreement was formed.

46.     Under the Artist Agreement, 321 without the consent or authorization of the Plaintiffs, purported to license the worldwide exclusive administration of various songs as set forth herein, including but not limited to "Jam the Box", "When I Hear Music" and "Lookout Weekend", to ARTIST for a term effective March 1, 2008 through July 25, 2009 with an option to renew for successive one-year terms under the conditions set forth in the Artist Agreement.

47.     The Artist Agreement contains the following master recordings which are owned by Plaintiffs: "Computer Language"; "Fix It in the Mix"; "Freestyle Express"; "I Know You Love Me"; "Jam the Box"; "Lookout Weekend"; "Party Has Begun"; and "When I Hear Music".

48.     The Artist Agreement contains the following musical compositions which are owned by Plaintiffs; "Computer Language"; "Fix It in the Mix"; "Freestyle Express"; "Fuego"; "I Know You

Love Me"; "I'm Searchin'"; "In the Ayer"; "Jam the Box"; "Lookout Weekend"; "Party Has Begun"; "Weekends"; and "When I Hear Music".

49.     In exchange for authorizing the administration and exploitation of the Musical Works listed in the Artist Agreement, Defendant WARNER paid 321 $30,000.00. These payments were made as follows: WARNER paid $15,000 to 321 on August 1, 2008 and paid 321 the remaining balance of $15,000 on September 3, 2008.  Both payments were sent by WARNER to 321 in Miami, Florida.

50.     WARNER and ARTIST never sought or obtained Plaintiffs' permission to use "Jam the Box", "When I Hear Music" and "Lookout Weekend" or to license any of Plaintiffs' Musical Works to third parties as contemplated by the Artist Agreement.

51.     On April 9, 2009, a copyright registration for "In the Ayer" was filed with the United States Copyright Office. In the 2009 Case, 321 alleged that said registration was filed by MSI. *See "Exhibit D" Fraudulent Copyright Registration*.

52.     WARNER and ARTIST knew that the copyright registration for in the Ayer on its face contained fraudulent representations in violation of Title 17 of the U.S. Code.

53.     Defendants WARNER and ARTIST failed to conduct adequate due diligence to investigate the ownership of the copyrights of "Jam the Box", "When I Hear Music" and "Lookout Weekend" or any of Plaintiffs' Musical Works which are purportedly covered by the Artist Agreement. Additionally, WARNER and ARTIST failed to conduct adequate due diligence to investigate 321's purported authority to license these songs.

54.     WARNER and ARTIST authorized the use of Plaintiffs' Musical Works to third parties and unlawfully administered the publishing rights of Plaintiffs' Musical Works absent a lawful succession of the subject copyrights from the Plaintiffs.

55.     WARNER and ARTIST knew that the absence of a legal instrument of conveyance from Plaintiffs MSI and NEALY to 321 constituted a willful infringement of the Plaintiffs' copyrights and an inducement for the public to infringe on Plaintiffs' Musical Works. As a result of WARNER and ARTIST's unlawful licensing and administration of the Plaintiffs' Copyrighted Musical Works, Plaintiffs have suffered irreparable harm.

56.     Upon information and belief, pursuant to the illegal Artist Agreement, Defendants WARNER and ARTIST have licensed and administered Plaintiffs' copyrighted Musical Works, including but not limited to, "Jam the Box", "When I Hear Music" and "Lookout Weekend" worldwide, throughout the United States of America and in the State of Florida by licensing the use of Plaintiffs' copyrighted Musical Works to third parties.

57.     The Artist Agreement specifically permits WARNER and ARTIST to license "In the Ayer" which infringes upon Plaintiffs'' copyright for "Jam the Box."

58.     The Artist Agreement specifically permits WARNER and ARTIST to license "Fuego" by recording artist Pitbull, which infringes upon Plaintiffs' copyright for "When I Hear Music."

59.     The Artist Agreement specifically permits WARNER and ARTIST to license "Lookout Weekend" to Kid Sister ft. Nina Sky on the *Jersey Shore Soundtrack,* which infringes upon Plaintiffs' copyright for "Look Out Weekend."

60.     The Artist Agreement specifically permits WARNER and ARTIST to administer *Weekends by Black Eye Peas* which infringes on Plaintiffs' Musical Work "Lookout Weekend".

61.     Additionally, the Artist Agreement purportedly permitted WARNER and ARTIST to become parties to the fraudulent MSA and Amendment. The MSA and Amendment unlawfully conveyed the Plaintiffs' copyrights as consideration to resolve the alleged dispute in the 2009 Case between Pandisc and Whooping Crane on one hand and Artist/Warner on the other.

62.     Specifically, the MSA and Amendment purportedly authorized WARNER and ARTIST to convey 15% ownership of the master recordings and 50% ownership of the publishers share of copyright in Plaintiffs' musical compositions to WHOOPING CRANE into perpetuity, which infringes upon Plaintiffs' copyrights.

63.     Upon information and belief, Defendants WARNER and ARTIST have earned and will continue to earn significant amounts of money and other valuable benefits and consideration from their unlawful licensing and administration of Plaintiffs' copyrighted Musical Works, including but not limited to, "Jam the Box", "When I Hear Music" and "Look Out Weekend" to third parties under the illegal Artist Agreement, MSA and Amendment.

64.     MIKE CAREN is the sole owner and officer of ARTIST and is the person who controls and directs the infringing activity of Artist and who has the most direct financial interest in the unauthorized use of Plaintiffs' subject sound recordings and compositions.

65.     Plaintiffs never granted ARTIST and WARNER the right to produce, sell, or otherwise exploit the subject Musical Works. Despite their having no permission to do so, ARTIST and WARNER have taken the illicit recordings of performances owned by Plaintiffs and have willfully and unlawfully, or otherwise communicated to the public in interstate commerce the sounds of live performances and have distributed, offered to distribute, sold and offered to sell, and trafficked in such illicit recordings in interstate commerce.

### ADDITIONAL ACTS OF FRAUDULENT CONDUCT AND TRANSACTIONS IN *THE 2009 CASE* BY ARTIST, WARNER AND ATLANTIC

66.     At all relevant times Defendants knew that MSI was the legal owners of the copyrights in the subject musical works. Yet brazenly absent from the records of the U.S. copyright office and the Defendants pleadings in the 2009 case is any written instrument which transfers, assigns or otherwise conveys Plaintiffs' copyrighted musical works to any of the Defendants at any time.

Accordingly, Defendants lack standing to protect, enforce or convey MSI's exclusive rights in the subject musical works to resolve their unfounded disputes amongst themselves in the 2009 case. Notwithstanding, neither the Plaintiffs Pandisc et al or Counter Plaintiffs Butler/321 in the 2009 Case notified MSI by service of process of the 2009 proceedings. Additionally, Defendants failed to notify the court that MSI and NEALY were interested parties with an economic interest in the outcome of the 2009 proceedings and moreover was absent any attempt to join them as indispensable and necessary third parties in a dispute that they knew involved interests held by both MSI and NEALY. Moreover, Defendants intentionally misled the court to enter a final judgment in an action which Defendants knew unlawfully conveyed away Plaintiffs' exclusive rights in the subject copyrighted musical works. Specifically, Defendants entered into the fraudulent MSA and Amendment which purportedly resolved the 2009 case to intentionally perpetrate a deception upon the court and profit from the ill-gotten revenues derived from the unlawful exploitation of Plaintiffs' Musical Works.

67.     Plaintiffs are entitled to damages including but not limited to unpaid royalties and statutory penalties, and any and all other relief this Court deems appropriate as it pertains to Defendants unlawful, subversive, and fraudulent acts against the Plaintiffs, the Copyright Office, State and Federal Court and Defendants should be admonished for these heinous and willful acts.

68.     All conditions precedent to maintaining this action have occurred, been performed or been waived.

## COUNT I - COPYRIGHT INFRINGEMENT
## BY ATLANTIC RECORDS

69.     Plaintiffs incorporate by reference as set forth in full herein the allegations of Paragraph 1 through 68 of this Complaint.

70.     As set forth above, Plaintiffs are the owners of the copyrights in the sound recording and musical composition "Jam the Box" and the musical works which are purportedly covered by the

MSA and amendment. Plaintiffs are entitled to and authorized to protect the sound recordings and compositions against copyright infringement, including the enforcement of copyright actions. Plaintiffs secured the exclusive rights under 17 U.S.C. §§ 106 and 114, among others, to "reproduce the copyrighted works in copies or phonorecords," "to prepare derivative works based upon the copyrighted works," and "to sample their copyrighted works."

71.     Since 2008, Defendant ATLANTIC has infringed  upon Plaintiffs' copyrights in the composition "Jam the Box," by copying, reproducing, preparing, causing, contributing to, and participating in the fraudulent sampling, copying, reproduction, and use of the musical composition "Jam the Box" in Flo Rida's composition and sound recording of "In the Ayer" and causing same to be publicly distributed in retail stores, on the internet, by digital download, through radio and television airplay, and otherwise, throughout the United States and in the Southern District of Florida. Additionally, ATLANTIC participated in the fraudulent conveyance of Plaintiffs' copyrighted musical works to Pandisc and Whooping Crane by way of the fraudulent MSA and amendment.

72.     Plaintiffs did not authorize Defendant ATLANTIC to sample, copy, reproduce, or use the sound recording and composition "Jam the Box" in Flo-Rida's composition or sound recording, "In the Ayer." Nor did Plaintiffs authorize ATLANTIC to convey their copyrighted musical works which were purportedly covered by the MSA and amendment to Pandisc and Whooping Crane. Defendants ATLANTIC did not seek or obtain any permission, consent, or license from Plaintiffs for the sampling, copying, reproduction, or the use of the composition "Jam the Box" in the composition or sound recording, "In the Ayer," or in any uses thereof in the subject musical works that were made or authorized by Defendant ATLANTIC.

73.     Each infringement by Defendant ATLANTIC of Plaintiffs' copyrighted sound recordings and musical compositions "Jam the Box" or the musical works purportedly covered in the MSA and amendment constitutes a separate and distinct act of infringement.

74.     Defendant ATLANTIC's infringement is willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' copyrights. Plaintiffs' copyrights are registered and recorded with the United States Copyright Office and a simple search of the United States Copyright Office website reveals Plaintiffs' ownership.  At a minimum, Defendant ATLANTIC acted in reckless disregard of Plaintiffs' copyrights.

75.     As a direct and proximate result of the infringements, ATLANTIC is liable to Plaintiffs for willful copyright infringement under 17 U.S.C. § 501. Plaintiffs have suffered, and will continue to suffer, substantial damage to their professional reputation and goodwill, as well as losses in an amount not yet ascertained, but which will be determined according to proof. In addition to Plaintiffs' actual damages, Plaintiffs are entitled to receive the profits made by Defendant ATLANTIC from its wrongful acts, pursuant to 17 U.S.C. § 504. In the alternative, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of ATLANTIC's willful copyright infringement.

76.     Further, by reason of ATLANTIC's copyright infringement and threatened continued copyright infringement, Plaintiffs have sustained and, if ATLANTIC's acts are not enjoined, will continue to sustain irreparable harm for which no adequate remedy at law exists.

77.     Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502 enjoining any further use or exploitation by ATLANTIC of its infringing composition and sound recording of "Jam the Box" and to an order under 17 U.S.C. § 503 that any of ATLANTIC's infringing products be impounded and destroyed.

78.    Plaintiffs are also entitled to injunctive relief under 17 U.S.C. § 502 enjoining any further use or exploitation by ATLANTIC of its infringing composition and all sound recordings of "In the Ayer," and to an order under 17 U.S.C. § 503 that any of ATLANTIC's infringing products be impounded and destroyed.

79.    Plaintiffs are also entitled to recover their attorneys' fees and costs of suit under 17 U.S.C. § 505.

## COUNT II- COPYRIGHT INFRINGEMENT
## BY ARTIST and WARNER

80.    Plaintiffs incorporate by reference as set forth in full herein the allegations of Paragraph 1 through 68 of this Complaint.

81.    As set forth above, Plaintiffs are the owners of the copyrights in the sound recordings and musical compositions purportedly covered by the Artist Agreement, MSA and Amendment including but not limited to  "Jam the Box," "Look Out Weekend," and  "When I Hear Music" and are entitled to and authorized to protect the sound recordings and musical compositions against copyright infringement, including the enforcement of copyright actions. Plaintiffs secured the exclusive rights under 17 U.S.C. §§ 106 and 114, among others, to "reproduce the copyrighted work in copies or phonorecords," "to prepare derivative works based upon the copyrighted work," and "to sample their copyrighted works."

82.    Since 2008, Defendants ARTIST and WARNER have infringed Plaintiffs' copyrights in the  sound recordings and musical compositions which are purportedly covered by the Artist Agreement, MSA and Amendment including but not limited to  "Jam the Box," "Look Out Weekend," and  "When I Hear Music". Additionally, ARTIST and WARNER unlawfully conveyed 15% of the rights in the subject master recordings and 50% ownership of the publishers share of copyrights in the subject compositions to PANDISC and  WHOOPING CRANE respectively via the fraudulent MSA and Amendment.

83.       ARTIST and WARNER unlawfully authorized the copying, reproducing, preparing, causing, contributing to, and participating in the fraudulent sampling, copying, reproduction, and use of the musical compositions including but not limited to "Jam the Box" in the song "In the Ayer," the use of "Lookout Weekend" on the *Jersey Shore Soundtrack*, the use of "When I Hear Music" in the song "Fuego" and causing same to be publicly distributed in retail stores, on the internet, by digital download, through radio and television airplay, and otherwise, worldwide, throughout the United States and in the Southern District of Florida.

84.       Plaintiffs did not authorize Defendants ARTIST and WARNER to sample, copy, reproduce, or use the sound recordings and musical compositions purportedly covered by the Artist Agreement, MSA and Amendment. Defendants ARTIST and WARNER did not seek or obtain any permission, consent, or license from Plaintiffs to authorize the sampling, copying, reproduction, for the use of the  sound recordings and musical compositions purportedly covered by the Artist Agreement, MSA and Amendment or in any uses thereof that were made or authorized by Defendants ARTIST and WARNER.

85.       Each infringement by Defendants ARTIST and WARNER of Plaintiffs' copyrighted use of the sound recordings and musical compositions purportedly covered by the Artist Agreement, MSA and Amendment constitutes a separate and distinct act of infringement.

86.       Defendants ARTIST and WARNER infringement is willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' copyrights. At a minimum, Defendants ARTIST and WARNER acted in reckless disregard of Plaintiffs' copyrights.

87.       As a direct and proximate result of the infringements, ARTIST and WARNER are liable to Plaintiffs for willful copyright infringement under 17 U.S.C. § 501. Plaintiffs have suffered, and will continue to suffer, substantial damage to their professional reputation and goodwill, as well as losses in an amount not yet ascertained, but which will be determined

according to proof. In addition to Plaintiffs' actual damages Plaintiffs are entitled to receive the profits made by Defendants ARTIST and WARNER from their wrongful acts, pursuant to 17 U.S.C. § 504. In the alternative, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of ARTIST and WARNER's willful copyright infringement.

88.      Further, by reason of ARTIST and WARNER's copyright infringement and threatened continued copyright infringement, Plaintiffs have sustained and, if ARTIST and WARNER's acts are not enjoined, will continue to sustain irreparable harm for which no adequate remedy at law exists. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502 enjoining any further use or exploitation by ARTIST and WARNER of their infringing sound recordings and musical compositions purportedly covered by the Artist Agreement, MSA and Amendment and to an order under 17 U.S.C. § 503 that any of ARTIST and WARNER's infringing products be impounded and destroyed.

89.      Plaintiffs also are entitled to recover their attorneys' fees and costs of suit under 17 U.S.C. § 505.

## COUNT III - CONTRIBUTORY COPYRIGHT INFRINGEMENT
## BY WARNER AND ARTIST

90.      Plaintiffs incorporate by reference as if set forth in full herein the allegations of Paragraph 1 through 68 of this Complaint.

91.      Plaintiffs are, and at all material times hereto have been, the owners of copyrights in the sound recordings and musical compositions purportedly covered by the Artist Agreement, MSA and Amendment including but not limited to, "Jam the Box," "When I hear Music," "Lookout Weekend" and they are entitled to and authorized to protect their sound recordings and compositions against copyright infringement, including through the enforcement of copyright actions. Plaintiffs secured the exclusive rights under 17 U.S.C. § 106, among others, "reproduce

the copyrighted work in copies or phonorecords," "to prepare derivative works based upon the copyrighted work," and "to sample their copyrighted works."

92.         Upon information and belief, since at least 2008, WARNER and ARTIST have knowingly and systematically materially contributed to, intentionally induced, and/or caused third parties to infringe Plaintiffs' copyrights, including but not limited to, "Jam the Box," "When I hear Music," "Lookout Weekend" by administering and exploiting Plaintiffs' copyrighted  sound recordings and  musical  compositions  and  licensing  to  third  parties  the  use  of  Plaintiffs' copyrighted sound recordings and musical compositions in violation of Sections 106 *et seq.* and Section 501 of the Copyright Act.

93.         Defendants WARNER and ARTIST did not seek or obtain any permission, consent, or license from Plaintiffs for the administration and exploitation of the sound recordings and musical compositions purportedly covered by the Artist Agreement, MSA and Amendment including but not limited to, "Jam the Box," "When I hear Music," "Lookout Weekend", nor did Defendants WARNER and ARTIST seek permission to license Plaintiffs' copyrighted musical compositions.

94.         WARNER  and  ARTIST  knew  or  should  have  known  the   licensing  and administration of Plaintiffs' copyrighted sound recordings and musical compositions that were purportedly covered by the Artist Agreement, MSA and Amendment constituted infringements of Plaintiffs' copyrighted works in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

95.         The ownership rights in the sound recordings and musical compositions purportedly covered by the Artist Agreement were initially vested in Plaintiffs and were first recorded and published by MSI. Additionally, Plaintiffs' copyrights are registered and recorded with the United States Copyright Office. At a minimum, WARNER and ARTIST acted in reckless disregard of Plaintiffs' copyrights.

96.        Defendants WARNER and ARTIST's material contributions, intentional inducements and/or causing of copyright infringements by third parties were willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' copyrights.

97.        Each infringement by Defendants WARNER and ARTIST of Plaintiffs' copyrighted sound recordings and musical compositions that were purportedly covered by the Artist Agreement, MSA and Amendment including but not limited to, "Jam the Box," "When I Hear Music", "Lookout Weekend" constitutes a separate and distinct act of infringement.

98.        As a direct and proximate result of the infringements, Defendants WARNER and ARTIST are jointly and severally liable to Plaintiffs for willful copyright infringement under 17 U.S.C. § 501. Plaintiffs have suffered, and will continue to suffer, substantial damage to their professional reputation and goodwill, as well as losses in an amount not yet ascertained, but which will be determined according to proof. In addition to Plaintiffs' actual damages, Plaintiffs are entitled to receive the profits made by Defendants WARNER and ARTIST from their wrongful acts, pursuant to 17 U.S.C. § 504. In the alternative, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of WARNER and ARTIST's willful copyright infringement.

99.        Further, by reason of WARNER and ARTIST's copyright infringement and threatened continued copyright infringement, Plaintiffs have sustained and, if WARNER and ARTIST's acts are not enjoined, will continue to sustain irreparable harm for which no adequate remedy at law exists. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502 enjoining any further use or exploitation by WARNER and ARTIST of Plaintiffs' sound recordings and musical compositions purportedly covered by the Artist Agreement, MSA and Amendment including but not limited to "Jam the Box," "When I hear Music," "Lookout Weekend".

100.      Plaintiffs are also entitled to recover their attorneys' fees and costs of suit under 17 U.S.C. § 505.

## COUNT IV - VICARIOUS COPYRIGHT INFRINGEMENT
## BY ATLANTIC

101.   Plaintiffs incorporate by reference as if set forth in full herein the allegations of Paragraph 1 through 68 of this Complaint.

102.   Upon information and belief, ATLANTIC has the right and ability to control third parties' infringing use of Plaintiffs' copyrighted sound recordings and musical compositions, including but not limited to, "Jam the Box."

103.   Defendant ATLANTIC has an obvious direct financial interest in the infringing use of Plaintiffs' copyrighted sound recording and musical composition, including but not limited to, "Jam the Box."

104.   Upon information and belief, Defendant ATLANTIC profits from third party licensors including but not limited to Apple iTunes and Amazon's infringing distribution and sale of Plaintiffs' copyrighted sound recording and musical composition, "Jam the Box."

**105.**   By reason of the foregoing acts of vicarious copyright infringement and threatened continued vicarious infringement by Defendant ATLANTIC, Plaintiffs have sustained and, if ATLANTIC's actions are not enjoined, will continue to sustain irreparable for which no adequate remedy at law exists.

## COUNT V- VICARIOUS COPYRIGHT INFRINGEMENT
## BY ARTIST, MIKE CAREN and WARNER

106.      Plaintiffs incorporate by reference as if set forth in full herein the allegations of Paragraph 1 through 68 of this Complaint.

107.      Upon information and belief, ARTIST, MIKE CAREN and WARNER have the right and ability to control third parties' infringing use of Plaintiffs' copyrighted sound recordings

and musical compositions, including but not limited to, "Jam the Box," "When I Hear Music," "Lookout Weekend," and the sound recordings and musical compositions purportedly covered by the Artist Agreement.

108.      Defendants ARTIST, MIKE CAREN and WARNER have an obvious direct financial interest in the infringing use of Plaintiffs' copyrighted sound recordings and musical compositions, including but not limited to, "Jam the Box," "When I Hear Music," "Lookout Weekend," and the sound recordings and musical compositions purportedly covered by the Artist Agreement.

109.      Upon information and belief, Defendants ARTIST, MIKE CAREN and WARNER profits from third party licensors including but not limited to Atlantic Records' *In the Ayer*, *Fuego* by Pitbull, *Weekends* by Black Eyed Peas, A blanket License of "In the Ayer" to Warner music group for use and digital videos, Kid Sister *Weekend*, *So you Think You Can Dance,* Apple iTunes and Amazon's  infringing public performance, distribution and sale of Plaintiffs' copyrighted sound recordings and musical compositions, including but not limited to, "Jam the Box," "When I Hear Music," "Lookout Weekend," and the sound recordings and musical compositions purportedly covered by the Artist Agreement.

110.      By reason of the foregoing acts of vicarious copyright infringement and threatened continued vicarious infringement by Defendants ARTIST, MIKE CAREN and WARNER, Plaintiffs have sustained and, if ARTIST, MIKE CAREN and WARNER's actions are not enjoined, will continue to sustain irreparable harm for which no adequate remedy at law exists.

## COUNT VI – UNAUTHORIZED FIXATION AND TRAFFICKING IN SOUND RECORDINGS BY WARNER AND ARTIST

111.   Plaintiffs incorporate by reference as if set forth in full herein the allegations of Paragraph 1 through 68 of this Complaint.

112.    Plaintiffs never granted WARNER and ARTIST the right to produce, sell, convey or otherwise exploit the subject master recordings and musical compositions. Despite their having no permission to do so, WARNER and ARTIST have taken the illicit recordings of performances owned by Plaintiffs and have willfully and unlawfully, or otherwise communicated to the public in interstate commerce the sounds of live performances and have distributed, offered to distribute, sold and offered to sell, and trafficked in such illicit recordings in interstate commerce, and have threatened to continue to do so, in violation of 17 U.S.C. § 1101 of the Copyright Act's prohibition on unauthorized fixation and trafficking in sound recordings.

113.    Defendants have traded on Plaintiffs' creative works and have profited from their unlawful conduct. Their actions have damaged Plaintiffs and there is a cognizable danger that WARNER and ARTIST will again exploit the sound recordings and musical compositions in the future unless WARNER and ARTIST conduct is enjoined. Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated by money damages.

114.    Defendants' violations of 17 U.S.C. §1101 of the Copyright Act has been committed willfully, wantonly, maliciously and with reckless disregard for Plaintiffs' rights.

115.    Plaintiffs have been damaged as a result of Defendants' conduct.

116.    Plaintiffs have no adequate remedy at law.

## COUNT VII– UNAUTHORIZED FIXATION AND TRAFFICKING IN SOUND RECORDINGS BY ATLANTIC

117.    Plaintiffs incorporate by reference as if set forth in full herein the allegations of Paragraph 1 through 68 of this Complaint.

118.    Plaintiffs never granted ATLANTIC the right to produce, sell, convey or otherwise exploit the subject master recordings and musical compositions. Despite their having no permission to do so, ATLANTIC have taken the illicit recordings of performances owned by Plaintiffs and have willfully and unlawfully, or otherwise communicated to the public in interstate commerce the

24

sounds of live performances and have distributed, offered to distribute, sold and offered to sell, and trafficked in such illicit recordings in interstate commerce, and have threatened to continue to do so, in violation of 17 U.S.C. § 1101 of the Copyright Act's prohibition on unauthorized fixation and trafficking in sound recordings.

119.    ATLANTIC has traded on Plaintiffs' creative works and have profited from their unlawful conduct. Their actions have damaged Plaintiffs and there is a cognizable danger that Atlantic will again exploit the sound recordings and musical compositions in the future unless ATLANTIC's conduct is enjoined. Plaintiffs will suffer irreparable injury which cannot be adequately calculated or compensated by money damages.

120.    Defendants' violations of 17 U.S.C. §1101 of the Copyright Act has been committed willfully, wantonly, maliciously and with reckless disregard for Plaintiffs' rights.

121.    Plaintiffs have been damaged as a result of Defendants' conduct.

**122.**    Plaintiffs have no adequate remedy at law.

<u>**COUNT VIII**</u>
<u>**FRAUD BY ARTIST, WARNER,**</u>
<u>**ATLANTIC, AND MIKE CAREN**</u>

123.    Plaintiffs reincorporate and reallege paragraphs 1 through 68, as if fully set forth herein.

124.    Each of the agreements comprising the Contracts was prepared by the Defendants or their legal counsel.

125.    The Defendants and/or their agents made material misrepresentations pertinent to the Plaintiffs' copyrighted musical works that each of the agreements comprising the Contracts resulted in the licensing of content of the Catalogue and that the agreement authorized the sale, assignment, or renunciation by the Plaintiffs of its' sole ownership of the same.

126.    The Defendants knew that they did not possess a lawful succession of the copyrights from MSI.

127.    Defendants fraudulently concealed the fact that they did not have a lawful succession of the copyrights and entered into the illegal contracts which fraudulently conveyed the Plaintiffs' copyrights in violation of federal copyright law.

128.    Additionally, the Defendants were privy to and complicit with the filing of fraudulent copyright registration(s) of Plaintiffs' copyrighted musical works with the United States Copyright Office in order to induce the public to infringe on Plaintiffs' copyrights.

129.    Accordingly, Defendants issued worthless and ineffective licenses of Plaintiffs' copyrighted musical works to third parties in order to gain the ill-gotten profits which were derived from unlawfully exploiting the Plaintiffs' musical works.

130.    Plaintiffs have suffered damages. In furtherance of the scheme to misappropriate Plaintiffs' copyrighted material to profit therefrom, Defendants through counsel have made further misrepresentations to the Court in an effort to bolster their claims by claiming that Plaintiffs lawfully conveyed the copyrights to 321 and subsequently to Artist, Warner, Chappell, and Atlantic by written agreement.

131.    At the time that the Defendants and/or its agents made the aforementioned misrepresentations they knew or should have known of the falsity of the statements.

132.    The Defendants and/or its' agents intended that the representations would induce their third party assigns and licensees, the federal/state courts and the public to rely and act on them.

133.    As a result of the Defendants fraudulent scheme and misrepresentations, the Plaintiffs suffered injury and damages.  Plaintiffs are entitled to relief from the 2009 final judgment under Fed. R. Civ. P. 60B and 60D and under the laws of the State of Florida. Plaintiffs are entitled to be restored to their original rights of ownership as if the Defendants' fraud had been discovered from the moment it occurred.

134.     Plaintiffs demand judgment against the Defendants and respectfully requests that they be awarded damages, and other and further relief the Court deems just and proper. Plaintiffs reserve the right to amend this Count to include a claim for punitive damages.

**COUNT IX**
**GROSS NEGLIGENCE BY ARTIST,**
**ATLANTIC, WARNER, AND MIKE CAREN**

135.     Plaintiffs reincorporate and reallege paragraphs 1 through 68, as if fully set forth herein.

136.     Plaintiffs hereby plead this Count IX in the alternative to Count VIII.

137.     Each of the agreements comprising the Contracts was prepared by the Defendants ARTIST, ATLANTIC and WARNER and/or their legal counsel.

138.     At all material times ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 and/or their agents made material misrepresentations pertinent to the Plaintiffs' copyrighted musical works that each of the agreements comprising the Contracts resulted in the  licensing of content of the Catalogue and that the agreement authorized the sale, assignment, or renunciation by the Plaintiffs of its' sole ownership of the same.

139.     At all material times Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 did not possess a lawful succession of the copyrights from MSI.

140.     At all material times Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 unlawfully represented  the fact that they had a lawful succession of the copyrights from Plaintiffs. Nevertheless, Defendants entered into illegal contracts which fraudulently conveyed the Plaintiffs' copyrights in violation of federal copyright law.

141.     Additionally, at all material times Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 filed or caused to be filed

fraudulent copyright registrations of Plaintiffs' copyrighted Musical Works with the United States Copyright Office in order to induce the public to infringe on Plaintiffs' copyrights.

142.    At all material times Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 issued worthless and ineffective licenses of Plaintiffs' copyrighted musical works to themselves and third parties in order to gain the ill-gotten profits which were derived from unlawfully exploiting the  Plaintiffs' musical works.

143.    Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN have sophistication pertaining to the requirements necessary for a lawful transfer of ownership and breached their obligations to undergo any due diligence to determine the lawfulness of the proposed transfer, in a means that is inconsistent with the duty of care for actors to maintain their level of expertise and experience regarding lawful succession of rights.

144.    Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN's willful acquiescence to 321's unlawful activity lacked the slightest diligence or care and is tantamount to a voluntary act and omission that recklessly disregards the duty of care for actors maintaining Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN's level of expertise and experience regarding information necessary to effectuate a lawful succession of rights.

145.     Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN's actions have directly harmed Plaintiffs by virtue of their grossly negligent and willful acquiescence to 321's unlawful transfer and claims of ownership made against Plaintiffs' works that were made absent any valid instrument of conveyance.

146.    Plaintiffs have suffered significant damages as a result of Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN's carelessness and willful disregard for the diligence necessary to properly effectuate a lawful transfer of this sort.

147.    Plaintiffs demand judgment against the Defendants and respectfully requests that they be (1) awarded damages, (2) injunctive relief restoring Plaintiffs' their original rights of ownership as if the Defendants' grossly negligent conduct never took place, (3) and other and further relief the Court deems just and proper. Plaintiffs reserve the right to amend this Count to include a claim for punitive damages.

**COUNT X**
**NEGLIGENCE BY WARNER,**
**ARTIST, ATLANTIC, AND MIKE CAREN**

148.    Plaintiffs reincorporate and reallege paragraphs 1 through 68, as if fully set forth herein.

149.    Plaintiffs hereby plead this Count X in the alternative to Count VIII and Count IX.

150.    Each of the agreements comprising the Contracts was prepared by the Defendants ARTIST, ATLANTIC, WARNER  and/or their legal counsel.

151.    At all material times ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 and/or their agents made material misrepresentations pertinent to the Plaintiffs' copyrighted musical works that each of the agreements comprising the Contracts resulted in the licensing of content of the Catalogue and that the agreement authorized the sale, assignment, or renunciation by the Plaintiffs of its' sole ownership of the same.

152.    At all material times Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 did not possess a lawful succession of the copyrights from MSI.

153.    At all material times Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 unlawfully represented  the fact that they  had a lawful succession of the copyrights from the Plaintiffs. Nevertheless, Defendants entered into the illegal contracts which fraudulently conveyed the Plaintiffs' copyrights in violation of federal copyright law.

154.    Additionally, at all material times Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 filed or caused to be filed fraudulent copyright registrations of Plaintiffs' copyrighted musical works with the United States Copyright Office in order to induce the public to infringe on Plaintiffs' copyrights.

155.    At all material times Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN knew or reasonably should have known that 321 issued worthless and ineffective licenses of Plaintiffs' copyrighted Musical Works to themselves and third parties in order to gain the ill-gotten profits which were derived from unlawfully exploiting the Plaintiffs' musical works.

156.    Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN have sophistication pertaining to the requirements necessary for a lawful transfer of ownership and breached their obligations to undergo any due diligence to determine the lawfulness of the proposed transfer, in a means that is inconsistent with the duty of care for actors maintain their level of expertise and experience regarding lawful succession of rights.

157.    Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN's actions have directly harmed Plaintiffs by virtue of the resulting unlawful transfer and fraudulent claims of ownership made against Plaintiffs' works absent any valid instrument of conveyance.

158.    Plaintiffs have suffered significant damages as a result of Defendants ARTIST, ATLANTIC, WARNER, and MIKE CAREN's carelessness and knew or should have known that their actions didn't amount to the requisite diligence necessary to properly effectuate a lawful transfer of this sort.

159.    Plaintiffs demand judgment against the Defendants and respectfully requests that they be (1) awarded damages, (2) injunctive relief restoring Plaintiffs their original rights of ownership as if the Defendants' negligent conduct had never occurred, (3) and other and further relief the Court

deems just and proper. Plaintiffs reserve the right to amend this Count to include a claim for punitive damages.

## COUNT XI - CONSTRUCTIVE TRUST

160.    Plaintiffs incorporate by reference as if set forth in full herein the allegations of Paragraph 1 through 68 of this Complaint.

161.    By virtue of their wrongful conduct, all Defendants as set forth herein illegally received monies and profits that rightfully belonged to the Plaintiffs.

162.    The Defendants are therefore involuntary trustees of the gross receipts from their product sales, revenues and /or licensing to the extent that they are attributable to Plaintiffs' copyrighted sound recordings and musical compositions, including but not limited to, "Jam the Box," and the Musical Works which are purportedly covered by the Artist Agreement and which are therefore attributable to the infringement of Plaintiffs' copyrights therein. Defendants hold such monies and funds on behalf of and subject to a first and prior lien against all others in favor of Plaintiffs. Upon information and belief, Defendants hold this illegally received money and profits in the form of bank accounts, real property, and personal property that can be located and traced.

163.    In view of Defendants' wrongful infringement of Plaintiffs' copyrighted musical compositions, including but not limited to, "Jam the Box", Plaintiffs are entitled to the remedy of a constructive trust.

## COUNT XII - ACCOUNTING

164.    Plaintiffs incorporate by reference as if set forth in full herein the allegations of Paragraph 1 through 68 of this Complaint.

165.    Under 17 U.S.C. § 504, Plaintiffs may recover any and all profits of Defendants that are attributable to Defendants' acts of infringement.

31

166.    A balance is due to Plaintiffs from Defendant ATLANTIC, jointly and severally, for misappropriation of profits and gross receipts arising from or attributable to 321 and/or ATLANTIC's copying, reproduction and use of "Jam the Box" in the composition and sound recording of "In the Ayer" and consequent violation and infringement of Plaintiffs' copyrights in "Jam the Box."

167.    A balance is due to Plaintiffs from Defendants WARNER and/or ARTIST, jointly and severally, for misappropriation of profits and gross receipts arising from or attributable to 321, WARNER and/or ARTIST's administration and exploitation of Plaintiffs' copyrights in the sound recordings and musical compositions, including but not limited to, "Jam the Box,", the sound recordings and compositions purportedly covered by the Artist Agreement and the consequent violation and infringement of Plaintiffs' copyrights through the unauthorized licensing of Plaintiffs' copyrighted sound recordings and musical compositions to third parties.

168.    The exact amount of money due from Defendants is unknown to Plaintiffs and can only be ascertained through an accounting. Plaintiffs seek an order from this Court directing Defendants to provide Plaintiffs with an accounting and payment of the amount due as a result of the accounting, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

1.    That the Court enter a preliminary and permanent injunction prohibiting and enjoining Defendants' officers, agents, and employees, and all persons acting in concert with them from infringing Plaintiffs' copyrighted musical compositions in any manner and from distributing, selling, advertising, broadcasting, publishing or communicating, in the United States or elsewhere, any visual or sound recording (including those identified in this Complaint), as well as any sheet music, commercials, or other merchandise or materials that contain or refer to all or part of

Plaintiffs' copyrighted musical compositions;

2.   That the Court enter an order pursuant to 17 U.S.C. § 503 mandating the impounding of all

infringing copies of "In the Ayer" and any other materials prepared by Defendants containing

any copies of Plaintiffs' copyrighted musical compositions or any portions thereof;

3.   That the Court require Defendants to provide an accounting and payment to Plaintiffs

covering all profits derived from Defendants' wrongful acts;

4.   That the Court award compensatory damages in an amount to be proven at trial or applicable

statutory damages;

5.    For reasonable attorneys' fees and costs of suit incurred herein; and

6.    For such other and further relief in favor of Plaintiffs as the Court deems just and proper.


## DEMAND FOR JURY TRIAL


Plaintiffs respectfully demand trial by jury on all triable issues herein.


Dated: December 28, 2018                    Respectfully Submitted,


_____
By: Carlton LP Talbot, Esq.
Carlton LP Talbot Attorney At Law
Fla Bar ID: 0107089
123 NW 23rd St.
Miami, FL 33127
Telephone: (305) 697-3030
Email: ctesq.consulting@gmail.com

_/s/ Peter G. Herman, Esq._____
By: Peter G. Herman, Esq.
THE HERMAN Law GROUP, P.A.

Fla Bar ID: 353991
3020 NE 32nd Avenue, Suite 226
Ft. Lauderdale, FL 33308
Telephone: (954) 315-4874
Email: servicepgh@THLGlaw.com


By: David A. Moreno Jr., Esq.
Law Offices of Spar & Bernstein, P.C.
NY Bar ID: 5004460 *Pro Hac Vice Pending*
225 Broadway 5th Flr.
New York, NY 10007
Telephone: (646) 633-3064
Email: dmoreno@lawsb.com

*Attorneys for Sherman Nealy and*
*Music Specialist, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of December, 2018 a true and correct copy of

the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system.

Respectfully Submitted,

_____:
By: Carlton LP Talbot, Esq.
Fla. Bar No.: 0107089