# EXHIBIT A

## AMENDMENT TO MEDIATION SETTLEMENT AGREEMENT
## DATED JULY 23, 2009

This Amendment to the Settlement Agreement dated July 23, 2009 is made and entered this 27 day of January, 2010, by and between Pandisc Music Corp. ("Pandisc"), Whooping Crane Music, Inc. ("Whooping Crane"), 321 Music LLC ("321"), Tony Butler ("Tony"), Warner/Chappell Music, Inc. ("Warner"), Atlantic Recording Corporation ("Atlantic") Artist Publishing Group, LLC ("Artist"), and Robert Crane ("Crane").

### RECITALS

WHEREAS, on July 23, 2009, the parties hereto entered into a Mediation Settlement Agreement along with Garfield Baker and Byron Smith ; and

WHEREAS, Pandisc, Whooping Crane, Crane (the "Pandisc Parties"), 321 and Tony (the "321 Parties") and Warner, Atlantic and Artist (the "Warner Parties") seek to amend the Mediation Settlement Agreement in certain respects as it pertains to them only and not to Baker or Smith; and

WHEREAS, the parties to this Agreement now desire to resolve all issues and conflicts raised in the post-settlement motions;

NOW, THEREFORE, in consideration of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each party to the other, the parties, intending to be legally bound, do hereby agree as follows:

### AGREEMENT

1. Pandisc and Whooping Crane warrant and represent that they have not entered into any licenses of the master sound recordings described in paragraph 5 of the Settlement Agreement (the "Masters") since the date of the Settlement Agreement, July 23, 2009.

{97360000136514.1} 1

2. Pandisc has notified the following entities to remove the Masters from electronic distribution or downloading: iTunes; Emusic; I.O.D.A., Rhapsody and Amazon.

Pandisc has notified its distributor, Koch Entertainment, to cease all sale of hard copy CD's containing the Masters.

Pandisc has notified Amazon to remove the sale of hard copy CD's containing the Masters from the Pandisc "store" on Amazon.

Pandisc has removed the CD's containing the Masters from its website.

Pandisc has directed in writing that all future royalties received from prior licenses regarding the Masters be paid to Richard Wolfe as Escrow Agent in accordance with paragraph 16 of the Settlement Agreement. Pandisc will provide Richard Wolfe with copies of the letters regarding the prior licenses within 7 days. Richard Wolfe, 321 and/or Butler are free to obtain confirmation of the licensees' receipt of the notices from the licensees. Pandisc and Whooping Crane represent that they have not been paid any monies regarding third party licenses for the period after July 23, 2009.

Pandisc and Whooping Crane are not required to take any further action with regard to the removal of the Masters for electronic distribution, ceasing the sale of hard copy CDs or notifications regarding prior licenses.

Based upon the foregoing representations, 321 and Tony release Pandisc and Whooping Crane from any liability regarding the sale or distribution of the Masters, through electronic distribution or downloading, as hard copy CDs and prior third party licenses, including as set forth on the various websites attached as composite Exhibit A which are a part of this release.

3. 321 and Tony agree to pay Whooping Crane the sum of $8,000 for royalties due to Whooping Crane for the period ending June 30, 2009 as a result of the use of "Jam the Box" in the song "In the Ayer." 321 and Tony hereby instruct Warner to pay such sum and authorize Warner to charge back the $8,000 to 321 and/or Tony. Warner shall make this payment within 20 days of full execution of this Amendment.

321 and Tony agree that effective July 1, 2009 and continuing into the future, Warner shall pay Whooping Crane its pro rata 25% share of the publisher's share of royalties for use of "Jam the Box" in the song "In the Ayer" and that Warner is authorized to charge back such sums to 321 and/or Tony.

4. 321 and Tony agree that effective January 1, 2009 and continuing into the future, Warner shall pay Whooping Crane its 25% share of the publisher's share of royalties due pursuant to paragraphs 8 (as amended herein) and 10 of the Settlement Agreement and shall be paid its 48.5% share of the publisher's share of royalties due pursuant to paragraph 7 (as amended herein) and 10 of the Settlement Agreement for the licensed sampling and/or interpolation of the songs identified in paragraphs 7 and 8 (as amended herein) of the Settlement Agreement, with the exception of the sample/interpolation of "Jam the Box" as used in "In the Ayer" regarding the time period from 1/1/09 to 6/30/09, which is addressed separately in paragraph 3 of this Amendment.

Schedule A attached herein includes a final list of the songs that contain such licensed samples and/or interpolations, the relevant terms of the licenses and the effective date for the payment to Whooping Crane, Garfield and Byron as provided in this paragraph. Whooping Crane shall not be entitled to a share of any income received by Warner in connection with the scheduled compositions prior to January 1, 2009.

To the best of its knowledge, Whooping Crane has not received any mechanical royalties for the use of the song "Don't Stop the Rock" in the song "Muevelo" for the time period January 1, 2009 through June 30, 2009. Should Whooping Crane currently hold or receive any mechanical royalties for the use of the song "Don't Stop the Rock" in the song "Muevelo" in the future, Whooping Crane agrees to immediately remit such sums to Warner, who will in turn distribute it in accordance with this Agreement. Whooping Crane agrees to notify, direct and authorize all licensees of the sampled/interpolated works identified on Schedule A hereto to commence paying Warner royalties earned as a result of those licenses in accordance with the Artist Agreement and Schedule A hereto.

321 and Tony hereby authorize Warner to charge back to 321 and/or Tony any payments provided in this paragraph to the extent payments for such samples and /or interpolations were already made to 321 and /or Tony. 321 and Tony hereby warrant and represent that they have not issued any licenses for the use of any of the works identified on Schedules A and B hereto prior to inception of the Artist Agreement.

5. The parties agree that Schedule B attached herein accurately lists the songs subject to this agreement and the corresponding writers and publisher splits.

6. The parties agree that Warner is not responsible for paying any party with respect to any musical work not listed on Schedules A or B hereto which existed as of this date. Warner is responsible to pay the parties in accordance with this Agreement regarding the use of the songs set forth in paragraphs 7 and 8 (as amended) of the Settlement Agreement with respect to any future licensed sampling and/or interpolation of said songs as granted by Warner pursuant to the terms of the Artist Agreement.

7. The Settlement Agreement is amended to remove the song "They're Playing Our Song" and "Stay in Love with Me"[1] from paragraph 7 of the Settlement Agreement. The publishing rights regarding "They're Playing Our Song" and "Stay in Love with Me" will be administered by Whooping Crane under the 1992 agreement referenced in paragraph 1 of the Settlement Agreement. Warner is relieved prospectively of all obligations to administer or make payments for royalties earned from "They're Playing Our Song" and "Stay in Love with Me." However, with respect to any royalties currently held by Warner earned from "They're Playing Our Song" and "Stay in Love with Me," Warner is hereby directed by 321 and Butler to provide said sums to Whooping Crane for administration after deduction for Warner's administration fee regarding said sums currently held. Whooping Crane hereby agrees to indemnify Warner for any loss incurred, including defense costs, as the result of any failure by Whooping Crane to make any payments prospectively from the date of this Agreement for royalties earned from "They're Playing Our Song" and/or "Stay in Love with Me."

8. The song "Party has Just Begun" is added to the songs set forth in paragraph 8 of the Settlement Agreement.

9. Warner shall provide 321 and Whooping Crane with an adjusted Royalty Statement for the royalty period ending June 30, 2009 by February 26, 2010. If 321 or Whooping Crane has any questions regarding their respective statement, they will present such questions to Warner in writing, and the parties shall make a good faith expeditious effort to resolve the questions. Warner shall continue to account and pay Whooping Crane in accordance with the Settlement Agreement and this Amendment for all publishers' share of royalties due hereunder including but not limited to, internet sales, downloads sales for ringtones as well as royalties for sampling, interpolation and synchronizations. Warner shall pay Whooping Crane its

---

[1] Incorrectly identified as "Stay in Here with Me" in the Settlement Agreement.

publishers' share of royalties due under the Settlement Agreement and this Addendum with regard to any future advances made to 321, which the parties agree is 19.4% of any such future advances.

10. All other terms of the Settlement Agreement not modified herein remain in full force and effect.

11. The parties shall request that the Court retain jurisdiction to enforce the Settlement Agreement and this Amendment. However, the parties agree to mediate any dispute concerning the Settlement Agreement or this Amendment as a precondition to seeking relief from the Court, unless the parties agree in writing to waive the mediation requirement regarding a particular dispute.

12. Pandisc and Whooping Crane acknowledge Warner's right to make deductions permitted under the Artist Agreement prior to any distribution of royalties pursuant to the Settlement Agreement and Amendment, including Warner's administration fee as contained in the Artist Agreement. Further, Pandisc and Whooping Crane acknowledge that Warner has no obligation to seek their permission or consent to license any of the musical works that are subject to the Artist Agreement.

13. Each of the parties hereto has, prior to the execution of this Amendment, reviewed Schedules A and B hereto, and represent that Schedule A identifies all instances of sampling/interpolations of any of the works identified on Schedule B to each of the party's best information and belief.

14. In consideration of the promises made in the Settlement Agreement and amendment thereto, Pandisc and Whooping Crane each hereby release, relieve, and discharge Warner, Atlantic and Artist, and each of them, and their present and former principals, officers,

directors, shareholders, members, employees, agents, advisors, attorneys and representatives, and all parents, subsidiaries, affiliates, predecessors, successors and assigns, personal representatives, executors, and heirs of any of the foregoing, and each of them, of and from any and all claims, counterclaims, demand, obligations, actions, causes of action, suits, debts, contracts, promises, or controversies, in law or in equity, arising out of or in connection with, or which were or could have been raised in Case No. 09-20505 CIV-Moreno/Torres, United States District Court for the Southern District of Florida, from the beginning of the world to the day of these presents with the express exception of all obligations under the Settlement Agreement and this Addendum which are not released and remain in full force and effect.

15. This Agreement may be executed and delivered in counterparts any of which shall be an original and all of which shall constitute one agreement. A signature transmitted by electronic mail or by fax shall have the same effect as an original signature.

321 Music LLC

By:_____
Tony Butler, its President

_____
Tony Butler

Pandisc Music Corp.

By:_____
Robert Crane, its President

Whooping Crane Music Corp

By:_____
Robert Crane, its President

{973600136514.1}7

_____
Robert Crane

**Warner/Chappell Music, Inc.**

By:_____
Karen L. Stetson, Counsel

**Atlantic Recording Corporation**

By:_____
Karen L. Stetson, Counsel

**Artist Publishing Group, LLC**

By:_____
Karen L. Stetson, Counsel

# 197032 v1

{973600136514.1} 8

shareholders, members, employees, agents, advisors, attorneys and representatives, and all parents, subsidiaries, affiliates, predecessors, successors and assigns, personal representatives, executors, and heirs of any of the foregoing, and each of them, of and from any and all claims, counterclaims, demand, obligations, actions, causes of action, suits, debts, contracts, promises, or controversies, in law or in equity, arising out of or in connection with, or which were or could have been raised in Case No. 09-20505 CIV-Moreno/Torres, United States District Court for the Southern District of Florida, from the beginning of the world to the day of these presents with the express exception of all obligations under the Settlement Agreement and this Addendum which are not released and remain in full force and effect.

15. This Agreement may be executed and delivered in counterparts any of which shall be an original and all of which shall constitute one agreement. A signature transmitted by electronic mail or by fax shall have the same effect as an original signature.

321 Music LLC

By: _____
Tony Butler, its President

_____
Tony Butler

Paudisc Music Corp.

By: _____
Robert Crane, its President

Whooping Crane Music Corp

By: _____
Robert Crane, its President

{9736\00136514.1}7



Robert Crane

Warner/Chappell Music, Inc.

By: _____Karen L. Stetson_____
Karen L. Stetson, Counsel

Atlantic Recording Corporation

By: _____Karen L. Stetson_____
Karen L. Stetson, Counsel

Artist Publishing Group, LLC

By: _____Karen L. Stetson_____
Karen L. Stetson, Counsel

# 197032 v1

{9736\00136514.1}8



## SCHEDULE A

| Song | Writers | Writer % | Publishers | Publisher % |
|---|---|---|---|---|
| In the Ayer (samples and/or interpolates "Jam the Box") | Butler<br>Adams<br>Dillard | 50%<br>25%<br>25% | 321<br>WC<br>Cherry River<br>Sony/ATV | 75%<br>25% (eff. 7/09 and $8,000 for the period prior to 7/09)<br><br>(of 50%) |
| Muevelo (samples and/or interpolates "Don't Stop the Rock") | Butler<br>Byron<br>Garfield<br>Cruz<br>Sifuentes<br>Gomez | 37.5%<br>18.75%<br>18.75%<br>10.00%<br>10.00%<br>5.00% | 321<br>WC<br>Garfield & Byron<br>CKJointz Music<br>CKJointz Music<br>Nawasha Networks Pub. | 37.5%<br>48.5% (eff. 4/1/09)<br>14% (eff. 7/08)<br><br>(of 50%) |
| Drop the Boom (samples and/or interpolates "Don't Stop the Rock") | Butler<br>Byron<br>Garfield<br>Cantor<br>Griffin<br>Harvey<br>Morales | 16.67%<br>8.33%<br>8.33%<br>28.34%<br>5.00%<br>28.33%<br>5.00% | 321<br>WC<br>Garfield & Byron<br>Unknown<br>Unknown<br>Unknown<br>Unknown | 37.5%<br>48.5% (eff. 1/1/09)<br>14% (eff. 7/08)<br><br>(of 33.33%) |
| Fuego (samples and/or interpolates "When I Hear Music" performed by Debbie Deb and written by Tony Butler) | Butler<br>Crooms<br>Perez<br>Scott | 50.00%<br>12.50%<br>25.00%<br>12.50% | 321<br>WC<br>Collipark Music<br>EMI Blackwood<br>Unknown | 75%<br>25% (eff. 1/1/09)<br><br>(of 50%) |
| Keep It Crunk (samples and/or interpolates "The Party Has Begun" by Freestyle) | Butler<br>Jones | 50.00%<br>50.00% | 321<br>WC<br>Unknown | 75%<br>25% (eff. 1/1/09)<br><br>(of 50%) |

## SCHEDULE A (PAGE 2)

| | | | | |
|---|---|---|---|---|
| Another Weekend Remix<br><br>(samples and/or interpolates "Family Affair" by Sylvester Stewart and "Lookout Weekend" written by Tony Butler and performed by Debbie Deb) | Butler<br><br>Stewart<br>Adams<br>Pineda<br>Gomez | 33.33%<br><br>60.00%<br>4.45%<br>1.11%<br>1.11% | 321<br>WC<br>WCM<br>Will I. Am Music<br>Jeepney Music<br>Nawasha Networks Pub. | 75%<br>25% (eff. 1/1/09)<br><br>(of 33.33%) |
| Weekends<br><br>(samples and/or interpolates "Family Affair" by Sylvester Stewart and "Lookout Weekend" written by Tony Butler and performed by Debbie Deb) | Butler<br><br>Stewart<br>Adams<br>Pineda<br>Gomez | 33.33%<br><br>60.00%<br>4.45%<br>1.11%<br>1.11% | 321<br>WC<br>WCM<br>Will I. Am Music<br>Jeepney Music<br>Nawasha Networks Pub. | 75%<br>25% (eff. 1/1/09)<br><br>(of 33.33%) |

## SCHEDULE B

| Compositions | Writers Share | Split (all from 7/08) | Publishers Share | Split (of publishing controlled by Warner only) |
|---|---|---|---|---|
| Don't Stop My Love | Butler<br>Byron<br>Garfield | 50%<br>25%<br>25% | 321<br>WC<br>Garfield & Byron | 37.5%<br>48.5% (eff. 1/1/09)<br>14% (eff. 7/08) |
| Can't Get Enough | Butler<br>Byron<br>Garfield | 50%<br>25%<br>25% | 321<br>WC<br>Garfield & Byron | 37.5%<br>48.5% (eff. 1/1/09)<br>14% (eff. 7/08) |
| All Night | Butler<br>Byron<br>Garfield | 50%<br>25%<br>25% | 321<br>WC<br>Garfield & Byron | 37.5%<br>48.5% (eff. 1/1/09)<br>14% (eff. 7/08) |
| It's Automatic | Butler<br>Byron<br>Garfield | 50%<br>25%<br>25% | 321<br>WC<br>Garfield & Byron | 37.5%<br>48.5% (eff. 1/1/09)<br>14% (eff. 7/08) |
| Don't Stop the Rock | Butler<br>Byron<br>Garfield | 50%<br>25%<br>25% | 321<br>WC<br>Garfield & Byron | 37.5%<br>48.5% (eff. 1/1/09)<br>14% (eff. 7/08) |
| How Can We Be Wrong | Butler<br>Byron<br>Garfield | 50%<br>25%<br>25% | 321<br>WC<br>Garfield & Byron | 37.5%<br>48.5% (eff. 1/1/09)<br>14% (eff. 7/08) |
| I'll Be All You Ever Need | Butler<br>Byron<br>Garfield | 50%<br>25%<br>25% | 321<br>WC<br>Garfield & Byron | 37.5%<br>48.5% (eff. 1/1/09)<br>14% (eff. 7/08) |
| I Know You Love Me | Butler | 100% | 321<br>WC | 75%<br>25% (eff. 1/1/09) |
| Lookout Weekend | Butler | 100% | 321<br>WC | 75%<br>25% (eff. 1/1/09) |
| When I Hear Music | Butler | 100% | 321<br>WC | 75%<br>25% (eff. 1/1/09) |
| Jam the Box | Butler | 100% | 321<br>WC | 75%<br>25% (eff. 1/1/09) |
| Everybody's Jammin' | Butler | 100% | 321<br>WC | 75%<br>25% (eff. 1/1/09) |