**UNITED STATES DISTRICT
COURT FOR SOUTHERN
DISTRICT OF FLORIDA**

Case No.: 1:18-cv-25474-RAR

MUSIC SPECIALIST, INC., a Florida
Corporation, and SHERMAN
NEALY, an individual

         Plaintiffs,

  v.

ATLANTIC RECORDING CORP. a Delaware
Corporation, WARNER/CHAPPELL MUSIC,
INC., a Delaware Corporation, ARTIST
PUBLISHING  GROUP, L.L.C., a Delaware Limited
Liability, Corporation,

         Defendants.

_____/

## THIRD AMENDED COMPLAINT

   Plaintiffs, MUSIC SPECIALIST, INC., a Florida Corporation, and SHERMAN NEALY,
an individual, by and through undersigned counsel, respectfully allege their Complaint against
Defendants, ATLANTIC RECORDING CORPORATION, a Delaware      Corporation,
WARNER/CHAPPELL MUSIC, INC., a Delaware Corporation, ARTIST PUBLISHING
GROUP, L.L.C., a Delaware Limited Liability Company, (collectively "Defendants") and in
support state as follows:

### JURISDICTION AND VENUE

1.  This court has subject matter jurisdiction over Plaintiffs' claims for copyright
infringement and related claims pursuant to 17 U.S.C. §101 and 28 U.S.C. §§1331 and
1338(a).

2.  This Court has federal question jurisdiction in this matter in that Plaintiffs seek damages
and injunctive relief against the Defendants named herein under Section 501 through 505
of the Copyright Act of 1976, 17 U.S.C. § 101 et seq.

3. The amount in controversy in this action exceeds $75,000, exclusive of interest, attorney's fees and costs.

4. This Court has personal jurisdiction over the Defendants pursuant to Fla. Stat. § 43.193, for the following reasons: Plaintiffs are citizens and residents of the State of Florida; Defendants have been operating, conducting, engaging in, or carrying on business or a business venture in Florida; Defendants are engaged in substantial activity within Florida; and Defendants have committed a tortious act within Florida and caused injury to Plaintiffs in Florida by engaging in, causing, inducing, materially contributing to, supervising and controlling and receiving direct financial benefit from copyright infringement within this state.

5. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) in that this independent civil action arises from the same common nucleus of operative facts over which the Court had original jurisdiction in the Complaint Case 09-20505- CIV-MORENO. These claims are so related to the claims in that action that they form part of the same controversy in accordance with Article III of the United States Constitution.

6. This action has diversity jurisdiction that lies within this Court pursuant to 28 U.S.C. § 1332(2) in that the controversy is between citizens and subjects of the State of Florida and citizens or subjects of a foreign state.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) and 28 U.S.C. § 1400(a). The copyrights that were infringed upon are co-owned by Plaintiffs, who are Florida residents. Each of the Defendants entered into agreements in the Southern District of Florida which infringe upon the copyrights of Plaintiffs.

## PARTIES

8. Plaintiff, MUSIC SPECIALIST, INC. ("MSI"), is a Florida corporation organized and existing under the laws of the State of Florida with its principal place of business in Miami Dade County, Florida. MSI is an independent music company which owns rights to an extensive catalog of musical compositions.

9. Plaintiff, SHERMAN NEALY ("NEALY"), is an individual residing in Ft. Lauderdale, Florida. NEALY owns and controls MSI.

10. At all material times herein, Plaintiffs were the exclusive registered owner of the musical composition copyrights for each of the songs listed in the attached.

11.     Upon information and belief, Defendant, WARNER/CHAPPELL MUSIC, INC. ("WARNER") is a corporation organized under the laws of the State of Delaware, with its principal place of business in California. WARNER is a for-profit corporation based on its business conducted within the State of Florida.

12.     Upon information and belief, Defendant, ARTIST PUBLISHING GROUP, L.L.C. ("ARTIST"), is a limited liability company organized under the laws of the State of Delaware, with its principal place of business  in California.  ARTIST exploits and administers music throughout the country, including in the State of Florida.

13.     Upon information and belief, Defendant, ATLANTIC RECORDING CORPORATION ("ATLANTIC"), is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York. ATLANTIC is a division of Warner Music Group.

14.     ATLANTIC is a for-profit corporation based on its business dealings, including the sale and distribution of recorded songs, within the State of Florida.

15.     WARNER, ARTIST, and ATLANTIC, are collectively referred to as "Defendants."

## GENERAL ALLEGATIONS

16.     This is an action by Plaintiffs for damages from copyright infringement and injunctive relief and damages.

17.     In 1983, NEALY founded and became the owner of MSI and created Jam Packed as a trademark label imprint which was owned by MSI. MSI created a catalog of popular songs between 1983 and 1987.

18.     In 1988 NEALY was incarcerated. NEALY was released in 2008.

19.     NEALY served an additional period of incarceration from 2011 to 2015.

20.     MSI is a company in the music industry that owns, produces, and sells sound recordings and musical compositions to the public. MSI owns copyrights of written songs, as well as master recordings of performances of songs by artists, which are for sale to the public in various formats.

21.     The artists engaged by MSI are professionally known as Debbie Deb, Freestyle (Garfield Baker and Byron Smith), Pretty Tony (Tony Butler) and Trinere.

22.   MSI is affiliated with Music Specialist Publishing ("MSP"), which administers the publishing rights to the musical compositions it owns.

23.   MSI and MSP have developed a catalog of popular songs. The sound recordings and musical compositions which were recorded and first published by MSI, include the following: (1) in 1984 MSI registered a claim to ownership of the copyrights to "Computer Language" (Copyright No. PA 0000228955); (2) in 1984 MSI registered a claim to ownership of the copyrights to   "Fix It in the Mix" (Copyright No. SR 0000053631) ; (3) in 1983 MSI registered a claim to ownership of the copyrights to "Freestyle Express" (Copyright No. SR 0000052651); (4) in 1984 MSI registered a claim to ownership of the copyrights to "I Know You Love Me" (Copyright No. PA 0000328836); (5) in 1984 MSI registered a claim to ownership of the copyright to "Jam the Box" (Copyright No. PA 000031089); (6) in 1984 MSI registered a claim to ownership of the copyrights to "Lookout Weekend" (Copyright No: PA 0000236535); (7) in 1984 MSI registered a claim to ownership of the copyrights to "Party Has Begun" (Copyright No. PA 0000327996); (8) in 1984 MSI registered a claim to ownership of the copyrights to "When I Hear Music" (Copyright No. SR 0000059574); (hereinafter collectively referred to as the "Subject Musical Work(s)".

24.   Plaintiffs have registered all works referenced herein as the claimant with the United States Copyright Office.

25.   Plaintiffs have been the owners of the master recordings and exclusive publishing rights for the subject Musical Works since their creation. Plaintiffs did not assign, license, sell and/or divest themselves of their ownership interests in the copyrights at issue by virtue of any alleged agreement to any third party at any time. Under Section 106 of the Copyright Act, Plaintiffs have the distinct, severable and exclusive rights to, among other things, reproduce and distribute their works to the public and to perform those works publicly. See 17 U.S.C. § 106.

**WARNER AND ARTIST ENTERS INTO AN UNLAWFUL EXCLUSIVE PUBLISHING ADMINISTRATION AGREEMENT WITH 321 REGARDING PLAINTIFFS' SUBJECT MUSICAL WORKS**

26.   On or about July 25, 2008, ARTIST and WARNER entered into an exclusive publishing administration agreement with a company named 321 ("Artist Agreement"). WARNER

4

and ARTIST knew or should have known prior to entering into the Artist Agreement that 321 never owned or controlled the subject copyrights nor did 321 have a lawful succession of the copyrights from the Plaintiffs. Accordingly, WARNER and ARTIST knew or should have known that the Artist Agreement was an illegal contract which was in violation of Title 17 of the U.S. Code from the moment the agreement was formed.

27.     Under the Artist Agreement, 321 without the consent or authorization of the Plaintiffs, purported to license the worldwide exclusive administration of various songs as set forth herein to ARTIST for a term effective March 1, 2008 through July 25, 2009 with an option to renew for successive one-year terms under the conditions set forth in the Artist Agreement.

28.     The Artist Agreement contains the following master recordings which are owned by Plaintiffs: "Computer Language"; "Fix It in the Mix"; "Freestyle Express"; "I Know You Love Me"; "Jam the Box"; "Lookout Weekend"; "Party Has Begun"; and "When I Hear Music".

29.     The Artist Agreement contains the following musical compositions which are owned by Plaintiffs; "Computer Language"; "Fix It in the Mix"; "Freestyle Express"; "Fuego" (a derivative work of "When I Hear Music"); "I Know You Love Me"; "In the Ayer" (an interpolation of "Jam the Box"); "Jam the Box"; "Lookout Weekend"; "Party Has Begun"; "Weekends" (a derivative work of "Lookout Weekend"); and "When I Hear Music".

30.     In exchange for authorizing the administration and exploitation of the subject Musical Works listed in the Artist Agreement, Defendant WARNER paid 321 $30,000.00. These payments were made as follows: WARNER paid $15,000 to 321 on August 1, 2008 and paid 321 the remaining balance of $15,000 on September 3, 2008. Both payments were sent by WARNER to 321 in Miami, Florida.

31.     WARNER and ARTIST never sought or obtained Plaintiffs' permission to use or to license any of Plaintiffs' subject Musical Works to third parties as contemplated by the Artist Agreement.

32.     On April 9, 2009, a copyright registration for "In the Ayer" was filed with the United States Copyright Office. In the 2009 Case, 321 alleged that said registration was filed by MSI.

33.   WARNER and ARTIST knew or should have known that the copyright registration for "In the Ayer" on its face contained fraudulent representations in violation of Title 17 of the U.S. Code. Specifically, WARNER and ARTIST knew or should have known that the representation that MSI transferred the copyrights in "Jam The Box" to 321 in 2007 was false.

34.   Defendants WARNER and ARTIST failed to conduct adequate due diligence to investigate the ownership of the copyrights of "Jam the Box" or any of Plaintiffs' other subject Musical Works which are purportedly covered by the Artist Agreement. Additionally, WARNER and ARTIST failed to conduct adequate due diligence to investigate 321's purported authority to license these songs.

35.   WARNER and ARTIST authorized the use of Plaintiffs' subject Musical Works to third parties and unlawfully administered the publishing rights of Plaintiffs' subject Musical Works absent a lawful succession of the subject copyrights from the Plaintiffs.

36.   WARNER and ARTIST knew that the absence of a legal instrument of conveyance from Plaintiffs, MSI and NEALY, to 321 then subsequently to ARTIST and WARNER constituted a willful infringement of the Plaintiffs' copyrights and an inducement for the public to infringe on Plaintiffs' subject Musical Works. As a result of WARNER and ARTIST's unlawful licensing and administration of the Plaintiffs' Copyrighted subject Musical Works, Plaintiffs have suffered irreparable harm.

37.   Pursuant to the illegal Artist Agreement, Defendants WARNER and ARTIST have licensed and administered Plaintiffs' copyrighted subject Musical Works worldwide, throughout the United States of America and in the State of Florida by licensing the use of Plaintiffs' copyrighted subject Musical Works to third parties.

38.   The Artist Agreement specifically purportedly permits WARNER and ARTIST to license "In the Ayer" which infringes upon Plaintiffs'' copyright for "Jam the Box."

39.   The Artist Agreement specifically purportedly permits WARNER and ARTIST to license "Fuego" by recording artist Pitbull, which infringes upon Plaintiffs' copyright for "When I Hear Music."

40.   The Artist Agreement specifically purportedly permits WARNER and ARTIST to license "Lookout Weekend" to Kid Sister ft. Nina Sky on the Jersey Shore Soundtrack, which infringes upon Plaintiffs' copyright for "Look Out Weekend."

41. The Artist Agreement specifically purportedly permits WARNER and ARTIST to administer and license *Weekends and Another weekend by Black Eye Peas* which infringes on Plaintiffs' Musical Work "Lookout Weekend".

42. The Artist Agreement specifically purportedly permits WARNER and ARTIST to administer and license Computer Language, Fix it in the Mix, Freestyle Express, I Know You Love Me and The Party Has Begun which infringes on Plaintiffs' subject Musical Works.

43. WARNER and ARTIST have earned and will continue to earn significant amounts of money and other valuable benefits and consideration from their  licensing and administration of Plaintiffs' copyrighted subject Musical Works, to third parties under the illegal Artist Agreement.

44. Plaintiffs never granted ARTIST and WARNER the right to produce, sell, or otherwise exploit the subject Musical Works.

**THE 2009 CASE**

45. On February 27, 2009 a copyright infringement action was instituted in the Southern District of Florida by a company named Pandisc Music Corporation ("Pandisc") and an affiliated company named Whooping Crane ("Whooping Crane") regarding the subject musical works against 321 Music, Tony Butler, Atlantic Recording Corp., Artist Publishing L.L.C., and Warner Chappell Music. Pandisc Music et al vs 321 Music et al Case No: 09-20505-CIV-Moreno/Torres the ("2009 Case").

46. In the 2009 Case, Pandisc and Whooping Crane knowingly alleged false claims that they had lawfully acquired ownership rights in the subject Musical Works via a set of agreements which they entered into between 1989-1992 with two companies named Captain Productions Inc. ("Captain") and Ctan Music Inc. ("Ctan")

47. Captain and Ctan are both defunct Florida Corporations which were solely owned by Tony Butler. Although Pandisc and Whooping Crane lack standing to institute a copyright infringement action in the 2009 case, along with their unfounded copyright infringement claims, Pandisc and Whooping Crane sought to enforce an unrelated $300,000 judgment against Butler and 321 in the case.

48.     In their answer to the complaint, the Warner Defendants' affirmative defense pertinent to the allegations of Pandisc and Whooping Crane, confirms their knowledge of the following, *"Plaintiffs lack standing to assert the claims contained in the Complaint, to the extent they have failed to demonstrate they are the owners of the copyrights alleged to have been infringed."* Nevertheless, the 2009 Case was resolved by a mediation settlement agreement the MSA on July 23, 2009.

49.     The MSA purportedly settled the dispute amongst the parties pertinent to dominion and control over the subject master recordings and compositions which are rightfully owned by the Plaintiffs. Pursuant to the terms of the MSA, the Artist Agreement subsumed the MSA which purportedly permitted Artist/Warner Chappell to be the exclusive publisher of the subject musical works pertinent to the parties to the agreement. The case was dismissed with prejudice on July 31, 2009. Six months after the case being dismissed, these Defendants entered a so-called "Amendment" to the MSA.

50.     Shortly after entering into the "Amendment", Pandisc and Whooping Crane instituted another lawsuit in the Eleventh Judicial Circuit in and for Miami Dade County, FL against BUTLER and 321 claiming fraud in the inducement and breach of contract. See Pandisc Music Corp. et al vs Tony Butler and 321 Music LLC, Case. No. 10-59481 CA 40 the ("2010 Case"). Specifically, Pandisc and Whooping Crane alleged, among other things, that Tony Butler and 321 made fraudulent representations in the (2009) MSA and amended mediated settlement agreement that 321 breached the amended mediated settlement agreement.

51.     In the same (2010) case, and almost 5 years later, in 2015, the mediated settlement agreement and amendment resolving the 2009 Federal case was ***adjudicated fraud ab initio and unenforceable pursuant to the terms therein*** by the Honorable Judge Thornton, thereby, putting the parties to the MSA's back in the position they were in relative to the ownership of the subject Musical Works prior to the MSA and Amendment.

52.     Notably although the parties to the MSA had asked the court to maintain jurisdiction on the face of the MSA because the court did not maintain jurisdiction on the face of the dismissal order; Judge Moreno's final order in the 2009 case was explicit in the pertinent part. The MSA and amendment were subject to state court jurisdiction unless there was a basis for independent federal jurisdiction. This instant case instituted by MSI give rise to

a basis for independent federal jurisdiction pertinent to the nucleus of facts surrounding the conduct and transactions perpetrated by the parties to the MSA and Amendment.

## JAM THE BOX

53.   Since 2008, pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, which purportedly settled the dispute amongst the parties pertinent to dominion and control over the subject master recordings and compositions which are rightfully owned by the Plaintiffs. Artist Warner Chappell purported to be the exclusive publishers of the subject musical works and infringed on MSI's exclusive publishing rights in the composition Jam the Box by knowingly granting or administering unauthorized licenses to third parties including a blanket license to Warner Music Group to reproduce, create a derivative work, distribute for sale and causing the same to be publicly performed worldwide on the Phonorecord "In the Ayer" single (over 2 million infringing copies sold) / Mail on Sunday album by Flo-Rida (over 5 million infringing copies sold).

54.   Artist/Warner Chappell's actions are contributory to millions of infringing public performances worldwide over radio, internet, and television among others.

## LOOK OUT WEEKEND

55.   Since 2008, pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, Artist/Warner Chappell purported to be the exclusive publishers of the subject musical works and unlawfully authorized or administered license of the composition Lookout Weekend on the phonorecord "Weekends" single/ Bridging the Gap album by Black Eye Peas.

56.   Since 2008, pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, Artist/Warner Chappell purported to be the exclusive publishers of the subject musical works infringing on MSI's exclusive publishing rights in the composition Lookout Weekend by knowingly granting or administering unauthorized licenses to third parties including Kid Sister for use in "Weekends" on the Jersey Shore Soundtrack.

57.   Artist/Warner Chappell's actions are contributory to millions of infringing public performances worldwide over radio, internet, and television among others.

58.     Since 2008, pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, Artist/Warner Chappell purported to be the exclusive publishers of the subject musical works and  unlawfully authorized or administered license of the composition Lookout Weekend on the phonorecord "Another Weekend" single/ The E.N.D. album by Interscope Records' recording artist Black Eye Peas (over 11 million infringing copies sold.) Artist/Warner Chappell infringed on MSI's exclusive publishing rights in the composition by knowingly granting or administering unauthorized licenses to third parties.

59.     Artist/Warner Chappell's actions are contributory to the ongoing infringing, reproduction, creating of a derivative work, distribution for sale and public performances worldwide through retail outlets, over radio, internet, and television among others.

**WHEN I HEAR MUSIC**

60.     Since 2008, pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, Artist/Warner Chappell purported to be the exclusive publishers of the subject musical works and unlawfully authorized or administered license of the  composition "When I Hear Music" on the phonorecord "Fuego" single/ El Mariel album by Pitbull (over 2 million infringing copies sold.)

61.     Artist/Warner Chappell infringed on MSI's exclusive publishing rights in the composition by knowingly granting or administering unauthorized licenses to third parties. Artist/Warner Chappell's actions are contributory to millions of infringing public performances worldwide over radio, internet, and television among others.

**COMPUTER LANGUAGE, FIX IT IN THE MIX, FREESTYLE EXPRESS, I KNOW YOU LOVE ME, THE PARTY HAS BEGUN ("THE TRINERE & FRIENDS SONGS")**

62.     Since 2008, pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, Artist/Warner Chappell purported to be the exclusive publishers of the subject musical works and infringed on MSI's exclusive publishing rights in the composition I Know You Love Me by unlawfully conveying partial ownership of the publisher's share of copyright in perpetuity to Whooping Crane.

63.   Whooping Crane then authorized Pandisc Music to reproduce and distribute for sale the composition worldwide on the phonorecord Trinere and Friends among other uses.

64.   Additionally, Artist/Warner Chappell infringed on MS's exclusive publishing rights in the composition by knowingly granting or administering unauthorized licenses to third parties.

65.   Since 2008 pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, Artist/Warner Chappell purported to be the exclusive publishers of the subject musical works and infringed on MSI's exclusive publishing rights in the composition Party Has Begun by unlawfully conveying partial ownership of the publisher's share of copyright in perpetuity to Whooping Crane.

66.   Whooping Crane then authorized Pandisc Music to reproduce and distribute for sale the composition worldwide on the phonorecord Trinere and Friends among other uses.

67.   Additionally, Artist/Warner Chappell infringed on MSI's exclusive publishing rights in the composition by knowingly granting or administering unauthorized licenses to third parties.

68.   Since 2008, pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, Artist/Warner Chappell purported to be the exclusive publishers of the subject musical works and infringed on MSI's exclusive publishing rights in the composition Computer Language by unlawfully conveying partial ownership of the publisher's share of copyright in perpetuity to Whooping Crane.

69.   Whooping Crane then authorized Pandisc Music to reproduce and distribute for sale the composition worldwide on the phonorecord Trinere and Friends among other uses.

70.   Additionally, Artist/Warner Chappell infringed on MSI's exclusive publishing rights in the composition by knowingly granting or administering unauthorized licenses to third parties.

71.   Since 2008, pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, Artist/Warner Chappell purported to be the exclusive publishers of the subject musical works and infringed on MSI's exclusive publishing rights in the composition Freestyle Express by unlawfully conveying partial ownership of the publisher's share of copyright in perpetuity to Whooping Crane.

72.    Whooping Crane then authorized Pandisc Music to reproduce and distribute for sale the composition worldwide on the phonorecord Trinere and Friends among other infringing uses.

73.    Additionally, Artist/Warner Chappell infringed on MSI's exclusive publishing rights in the composition by knowingly granting or administering unauthorized licenses to third parties.

74.    Since 2008 pursuant to the terms of the Artist Agreement, fraudulent MSA/Amendment, Artist/Warner Chappell purported to be the exclusive publishers of the subject musical works and infringed on Sherman Nealy's authorship rights and MSI/MSP's exclusive publishing rights in the composition Fix it in the Mix by unlawfully conveying partial ownership of Nealy's authorship rights and the publisher's share of copyright in perpetuity to Whooping Crane.

75.    Whooping Crane then authorized Pandisc Music to reproduce and distribute for sale the composition worldwide on the phonorecord Trinere and Friends among other infringing uses. Trinere and Friends is a top seller in the Freestyle genre.

76.    Additionally, Artist/Warner Chappell infringed on MSI's exclusive publishing rights in the Trinere and Friends' subject musical works by knowingly granting or administering unauthorized licenses to third parties.

77.    Artist/Warner Chappell's actions are contributory to the ongoing infringing, reproduction, creating of a derivative work, distribution for sale and public performances worldwide through retail outlets, over radio, internet, and television among others.

78.    Defendant Artist/Warner Chappell never sought or obtained Plaintiffs' permission to copy, duplicate, digitally sample or otherwise use "Jam the Box," "Look out Weekend," "When I Hear Music," or the "Trinere and Friends Songs". Defendants Artist/Warner Chappell failed to conduct adequate due diligence and failed to investigate the ownership of the copyrights in "Jam the Box", "Lookout Weekend", "When I Hear Music" and "The Trinere and Friends Songs". Had Artist/Warner Chappell searched the U.S. Copyright Office's website, they would have discovered that Plaintiffs own the copyrights for the subject Musical Works. Artist/Warner Chappell has earned and continues to earn significant revenue from their unlawful licensing and administering of Plaintiffs' copyrighted subject Musical Works and have made no payments to the Plaintiffs.

12

## IN THE AYER

79.     A company named 321 Music L.L.C. a Corporation which is solely owned by Tony Butler through improper or invalid agreements or other means licensed the rights in Plaintiffs' composition "Jam the Box" to Defendant ATLANTIC. Said agreement purported to authorize ATLANTIC's use of "Jam the Box" without

80.     Plaintiffs' consent or permission. ATLANTIC knew prior to entering into any agreement with 321 that 321 did not possess any instrument which lawfully conveyed the copyrights in Jam the Box to 321.

81.     ATLANTIC then permitted one of its recording artists known as Flo Rida to digitally sample and interpolate "Jam the Box" in his song entitled "In the Ayer" on the compact disc Mail on Sunday.

82.     Defendant ATLANTIC never sought or obtained Plaintiffs' permission to copy, duplicate, digitally sample or otherwise use "Jam the Box" in Flo Rida's composition of "In the Ayer."

83.     Defendant ATLANTIC failed to conduct adequate due diligence and failed to investigate the ownership of the copyrights in "Jam the Box" or 321's purported authority to license "Jam the Box." Had ATLANTIC searched the U.S. Copyright Office's website, it would have discovered that Plaintiffs own the copyrights for "Jam the Box."

84.     ATLANTIC released Flo Rida's album Mail on Sunday in March 2008. The album was a smash hit. The song, "In the Ayer" topped various airplay and sales charts, and drove album sales.

85.     Since that time, "In the Ayer" has been distributed and sold through record stores, internet on-line sites, and other outlets and has been played on terrestrial radio, satellite radio, television, and at live performances by Flo Rida worldwide and in the United States, including the State of Florida.  ATLANTIC has earned and continues to earn significant revenue from their fraudulent copying and use of Plaintiffs' copyrighted "Jam the Box" in the musical composition and sound recording of "In the Ayer," which has been licensed for use in many instances that include the following:

     a.      *So You Think you Can Dance July 2, 2008*

     b.      *FN MTV programming July 2008*

c.      *So you think you can Dance July 9, 2008*

d.      *Cinemax Tour Stories HBO, July 20, 2009*

e.      *One Tree Hill #601, July 17, 2008*

f.      *Randy Jackson Presents July 17, 2008 Chuck*

g.      *2008-2009 season June 25, 2008*

h.      *blanket license to Warner Music Corp. for digital video*

i.      *2008 Espy's July 8, 2008*

j.      *Comedy Central Roast of Bob Saget July 17, 2008*

k.      *9 Squared July 7, 2008*

## ADDITIONAL ACTS OF UNLAWFUL CONDUCT AND TRANSACTIONS BY ATLANTIC RECORDS/ARTIST PUBLISHING/WARNER CHAPPELL

86.     Atlantic Records/Artist/Warner Chappell participated in the unlawful conveyance of 15% of the rights in the subject master recordings into perpetuity to Pandisc and 50% of Plaintiffs' share of copyrights in the compositions into perpetuity to Whooping Crane as consideration in order to resolve their frivolous and unfounded dispute with Pandisc and Whooping Crane in the 2009 Case. In exchange for the unlawful conveyance of Plaintiffs' copyrights, Pandisc and Whooping Crane abandoned their copyright infringement claims and acceded to Tony Butler and 321's allegations that 321 held dominion and control over the subject musical works. Additionally, Pandisc and Whooping Crane waived and discharged their $300,000.00 unsecured judgment against Tony Butler and 321.

87.     At the time of the 2009 proceedings over Two-Hundred and Fifty thousand dollars ($250,000) in ill gotten monies which was derived from the unlawful exploitation of Plaintiff's subject musical works were being held by Warner Chappell and Broadcast Music Inc. (BMI), pending the outcome of the 2009 case. It is clear that although Atlantic Records/Artist/Warner Chappell knew that Pandisc and Whooping Crane lack standing in

the 2009 case, Atlantic Records/Artist/Warner Chappell entered into the MSA and amendment which unlawfully conveyed plaintiff's subject musical works to evade Pandisc and Whooping Crane's enforcement of the $300,000 unsecured judgment against Tony Butler, upon the ill-gotten revenues of 321, ARTIST, WARNER, and ATLANTIC which were derived from the unlawful exploitation of MSI's musical work "Jam The Box" in Flo-Rida's hit single " In The Ayer" from the multi-platinum album "Mail On Sunday" among others.

88.     Atlantic Records/Artist/Warner Chappell knew that the prospective conveyance of Plaintiffs' copyrights in the subject musical works to Pandisc and Whooping Crane was illegal.

89.     Plaintiffs never granted Atlantic Records/Artist/Warner Chappell the rights to convey away their copyrights to produce, sell, or otherwise exploit the subject master recordings and musical compositions.

90.     Specifically, in the MSA/Amendment, Atlantic Records/Artist/Warner Chappell infringed on MSI's exclusive copyrights by participating in the unlawful conveyance of partial ownership of MSI and MSP's copyrighted Sound Recordings When I Hear Music, Fix it In the Mix and Freestyle Express to Pandisc in perpetuity. All references to unlawful transfer or infringement of Plaintiff's sound recordings made herein shall be specifically understood to be limited to mean the Sound Recordings of When I Hear Music, Fix it In the Mix and Freestyle Express.

91.     Pursuant to the terms of the fraudulent MSA and Amendment Atlantic Records/Artist/Warner Chappell infringed on MSI/MSP's exclusive publishing rights by participating in the unlawful conveyance of partial ownership of the publishers share in MSI/MSP's copyrighted compositions in perpetuity to Whooping Crane. The compositions include;   1. Computer Language, 2. Fix it In the Mix, 3. Freestyle Express, 4. I Know You Love Me,  5. Jam the Box, 6. Look out Weekend, 7. The Party Has Just Begun, 8. When I Hear Music.

92.     Prior to entering into the MSA/Amendment Artist/Warner/Atlantic knew or should have known that they did not possess a lawful succession of MSI/MSP's Copyrights and was therefore not authorized or entitled to convey MSI/MSP copyrights to Pandisc/Whooping Crane.

93. Atlantic, Artist/Warner Chappell's actions are contributory to the ongoing infringing reproduction, creating of a derivative work, distribution for sale and public performances of MSI/MSP's copyrights worldwide through retail outlets, over radio, internet, and television among others. Artist/Warner/Atlantic has earned substantial ill-gotten profits as a result of over twenty million (20,000,000) infringing phonorecords of MSI/MSP's copyrighted compositions sold and countless infringing public performances of the same. Artist/Warner/Atlantic have made no payments to MSI or MSP. MSI/MSP have been informed and come to believe that Artist/Warner/Atlantic ill-gotten profits and damages which will be determined and proven at trial is in excess of fifty million ($50,000,000).

94. At all relevant times Defendants knew that MSI/MSP was the legal owner of the copyrights in the subject musical works.

Absent from the records of the U.S. copyright office is any written instrument which transfers, assigns or otherwise conveys Plaintiffs' copyrighted subject musical works to any of the Defendants at any time.

## COUNT I: COPYRIGHT INFRINGEMENT BY ATLANTIC

95. Plaintiffs incorporate by reference as set forth in full herein the allegations of Paragraph 1 through 95 of this Complaint as set forth above.

96. Plaintiffs are the owners of the copyrights in the musical composition "Jam the Box" and the subject musical works which are purportedly covered and conveyed by the MSA and amendment. Plaintiffs are entitled to and authorized to protect the sound recordings and compositions against copyright infringement, including the enforcement of copyright actions. Plaintiffs secured the exclusive rights under 17 U.S.C. §§106 and 114, among others, to "reproduce the copyrighted works in copies or phonorecords," "to prepare derivative works based upon the copyrighted works," and "to sample their copyrighted works."

97. From 2008 to the present day, Defendant ATLANTIC participated and continues to participate in unauthorized sales of the musical composition "Jam the Box," which constitutes copyright infringement upon Plaintiffs' copyrighted works in violation of 17 U.S.C. § 106, 115 and 501.

98.   Such unauthorized sales include, copying, reproducing, preparing, causing, contributing to, and participating in the fraudulent sampling, copying, reproduction, and use of the musical composition "Jam the Box" in Flo Rida's composition and sound recording of "In the Ayer" and causing same to be publicly distributed in retail stores, on the internet, by digital download, through radio, television airplay, and otherwise, throughout the United States and in the Southern District of Florida.

99.   Additionally, ATLANTIC participated in the fraudulent conveyance of Plaintiffs' copyrighted subject musical works to Pandisc and Whooping Crane by way of the fraudulent MSA and amendment.

100.  Plaintiffs did not authorize Defendant ATLANTIC to sample, copy, reproduce, or use the composition "Jam the Box" in Flo-Rida's composition or sound recording, "In the Ayer." Nor did Plaintiffs authorize ATLANTIC to convey their copyrighted subject musical works which were purportedly covered and conveyed by the MSA and amendment to Pandisc and Whooping Crane. Defendants ATLANTIC did not seek or obtain any permission, consent, or license from Plaintiffs for the sampling, copying, reproduction, or the use of the composition "Jam the Box" in the composition or sound recording, "In the Ayer," or in any uses thereof in the subject musical works that were made or authorized by Defendant ATLANTIC.

101.  By such acts, Defendant ATLANTIC has illegally distributed, made available and placed into the stream of commerce Plaintiffs copyrighted works.

102.  Each infringement by Defendant ATLANTIC of Plaintiffs' copyrighted musical composition "Jam the Box" and copyrighted works constitutes a separate and distinct act of infringement.

103.  Defendant ATLANTIC's infringement is willful and in disregard of and with indifference to the Plaintiffs' rights.

104.  Plaintiffs' copyrights are registered and recorded with the United States Copyright Office and a simple search of the United States Copyright Office's website reveals Plaintiffs' ownership. At a minimum, Defendant ATLANTIC acted in reckless disregard of Plaintiffs' copyrights.

105.  As a direct and proximate result of the infringements, ATLANTIC is liable to Plaintiffs for willful copyright infringement under 17 U.S.C. § 501.

106.    Plaintiffs have suffered, and will continue to suffer, substantial damage to their professional reputation and goodwill, as well as losses in an amount not yet ascertained, but which will be determined according to proof. In addition to Plaintiffs' actual damages, Plaintiffs are entitled to receive the profits made by Defendant ATLANTIC from its wrongful distribution, sale or use of Plaintiff's copyrighted works, pursuant to 17 U.S.C. § 504.

107.    Alternatively, Plaintiffs are entitled to statutory damages for each copyrighted work infringed upon as provided by pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of ATLANTIC's willful copyright infringement.

108.    Plaintiffs is also entitled to recover their attorneys' fees and costs from the Defendant pursuant to 17 U.S.C. § 505.


**COUNT II: COPYRIGHT INFRINGEMENT BY ARTIST & WARNER**

109.    Plaintiffs incorporate by reference as set forth in full herein the allegations of Paragraph 1 through 95 of this Complaint.

110.    As set forth above, Plaintiffs are the owners of the copyrights in the subject musical works purportedly covered and conveyed by the Artist Agreement, MSA and Amendment "Jam the Box," "Look Out Weekend," "When I Hear Music" and "The Trinere and Friends Songs" and are entitled to and authorized to protect the sound recordings and musical compositions against copyright infringement, including the enforcement of copyright actions. Plaintiffs secured the exclusive rights under 17 U.S.C. §§ 106 and 114, among others, to "reproduce the copyrighted work in copies or phonorecords," "to prepare derivative works based upon the copyrighted work," and "to sample their copyrighted works."

111.    Since 2008, Defendants ARTIST and WARNER have infringed Plaintiffs' copyrights in the subject musical works which are purportedly covered and conveyed by the Artist Agreement, MSA and Amendment. Additionally, ARTIST and WARNER unlawfully conveyed 15% of the rights in the master recordings of "Fix it in the Mix", "Freestyle Express" and "When I Hear Music" and 50% ownership of the publishers' share of copyrights in "Jam The Box", "Lookout Weekend", "When I Hear Music" and "The

Trinere and Friends Songs" to PANDISC and WHOOPING CRANE respectively via the fraudulent MSA and Amendment.

112.   ARTIST and WARNER unlawfully authorized the copying, reproducing, preparing, causing, contributing to, and participating in the fraudulent sampling, copying, reproduction, administering licenses and use of the musical compositions "Jam the Box" in the song "In the Ayer" by Atlantic Records recording artist Flo Rida, the use of "Lookout Weekend" in the songs "Weekends" and "Another Weekend" by Interscope Records recording artists Black Eyed Peas, and in the song "Weekends" on the *Jersey Shore Soundtrack by Kid Sister*, the use of "When I Hear Music" in the song "Fuego" by recording artist Pitbull and "The Trinere and Friends songs" on the phonorecord "Trinere and Friends" and causing same to be publicly distributed in retail stores, on the internet, by digital download, through radio and television airplay, and otherwise, worldwide, throughout the United States and in the Southern District of Florida.

113.   Plaintiffs did not authorize Defendants ARTIST and WARNER to sample, copy, reproduce, or use the subject musical works purportedly covered and conveyed by the Artist Agreement, MSA and Amendment. Defendants ARTIST and WARNER did not seek or obtain any permission, consent, or license from Plaintiffs to authorize the sampling, copying, reproduction, for the use of the sound recordings and musical compositions purportedly covered and conveyed by the Artist Agreement, MSA and Amendment or in any uses thereof that were made or authorized by Defendants ARTIST and WARNER.

114.   Each infringement by Defendants ARTIST and WARNER of Plaintiffs' copyrighted use of the sound recordings and musical compositions purportedly covered and conveyed by the Artist Agreement, MSA and Amendment constitutes a separate and distinct act of infringement.

115.   Defendants ARTIST and WARNER infringement is willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' copyrights. At a minimum, Defendants ARTIST and WARNER acted in reckless disregard of Plaintiffs' copyrights.

116.   As a direct and proximate result of the infringements, ARTIST and WARNER are liable to Plaintiffs for willful copyright infringement under 17 U.S.C. § 501. Plaintiffs have suffered, and will continue to suffer, substantial damage to their professional reputation

and goodwill, as well as losses in an amount not yet ascertained, but which will be determined according to proof. In addition to Plaintiffs' actual damages Plaintiffs are entitled to receive the profits made by Defendants ARTIST and WARNER from their wrongful acts, pursuant to 17 U.S.C. § 504. In the alternative, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C.§ 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of ARTIST and WARNER's willful copyright infringement.

117.    Further, by reason of ARTIST and WARNER's copyright infringement and threatened continued copyright infringement, Plaintiffs have sustained and, if ARTIST and WARNER's acts are not enjoined, will continue to sustain irreparable harm for which no adequate remedy at law exists. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502 enjoining any further use or exploitation by ARTIST and WARNER of their infringing sound recordings and musical compositions purportedly covered and conveyed by the Artist Agreement, MSA and Amendment and to an order under 17 U.S.C. § 503 that any of ARTIST and WARNER's infringing products be impounded and destroyed.

118.    Plaintiffs also are entitled to recover their attorneys' fees and costs of suit under 17 U.S.C. § 505.

## COUNT III:  CONTRIBUTORY COPYRIGHT INFRINGEMENT BY WARNER AND ARTIST

119.    Plaintiffs incorporate by reference as if set forth in full herein the allegations of Paragraph 1 through 95 of this Complaint.

120.    Plaintiffs are, and at all material times hereto have been, the owners of copyrights in the sound recordings and musical compositions purportedly covered and conveyed by the Artist Agreement, MSA and Amendment "Jam the Box," "When I hear Music," "Lookout Weekend" and "The Trinere and Friends Songs" and they are entitled to and authorized to protect their sound recordings and compositions against copyright infringement, including through the enforcement of copyright actions. Plaintiffs secured the exclusive rights under 17 U.S.C. § 106, among others to "reproduce the copyrighted work in copies or phonorecords," "to prepare derivative works based upon the copyrighted work," and "to sample their copyrighted works."

121.    Since at least 2008, WARNER and ARTIST have knowingly and systematically

materially contributed to, intentionally induced, and/or caused third parties to infringe Plaintiffs' copyrights in the sound recordings and musical compositions purportedly covered and conveyed by the Artist Agreement, MSA and Amendment by administering and exploiting Plaintiffs' copyrighted subject musical works and licensing to third parties the use of Plaintiffs' copyrighted subject musical works in violation of Sections 106 and Section 501 of the Copyright Act.

122. Specifically, Atlantic's recording artist Flo-Rida infringed on MSI/MSP's exclusive right in *Jam the Box* by unlawfully copying and publicly performing the composition in the phonorecord *In the Ayer* on the album Mail on Sunday. Additionally, Warner Music Group infringed on MSI/MSP exclusive right in *Jam the Box* by unlawfully authorizing the public performance of the composition *In the Ayer*  in digital video. The Artist Agreement, MSA and Amendment purportedly permits WARNER and ARTIST to authorize Flo-Rida to publicly perform the composition and to license "In the Ayer". The Artist Agreement, MSA and Amendment purportedly permits Artist and Warner to grant a blanket license to Warner Music Group for use of the composition in digital video which infringes upon Plaintiffs'' copyright for "Jam the Box"

123. Recording artist Pitbull infringed on MSI/MSP's exclusive right in *When I Hear Music* by unlawfully copying and publicly performing the composition in the phonorecord *Fuego* on the album El Mariel. The Artist Agreement, MSA and Amendment purportedly permits WARNER and ARTIST to authorize Pitbull to publicly perform the composition and to license "Fuego" which infringes upon Plaintiffs' copyright for "When I Hear Music."

124. Recording artist Kid Sister ft. Nina Sky infringed on MSI/MSP's exclusive right in Lookout Weekend by unlawfully copying and publicly performing the composition in the phonorecord *Weekends* on the Jersey Shore Soundtrack. The Artist Agreement, MSA and Amendment purportedly permits WARNER and ARTIST to license "Lookout Weekend" to Kid Sister ft. Nina Sky on the Jersey Shore Soundtrack, which infringes upon Plaintiffs' copyright for "Look Out Weekend."

125. Interscope Records and their artists recording artists *Black Eye Peas* infringed on MSI/MSP's exclusive right in Lookout Weekend by unlawfully copying, distributing for sale and publicly performing the composition in the phonorecord *Weekends on the album*

Bridging the Gap and *Another weekend* on the album The E.N.D. The Artist Agreement, MSA and Amendment purportedly permits WARNER and ARTIST to authorize the use of the composition to Interscope Record and to authorize and administer license of *Weekends and Another weekend by Black Eye Peas* which infringes on Plaintiffs' Musical Work "Lookout Weekend".

126.    Pandisc and Whooping Crane infringed on MSI/MSP's exclusive right in the Trinere and Friends Songs by unlawfully copying, distributing for sale and publicly performing the compositions in the phonorecord *Trinere and Friends*. The Artist Agreement, MSA and Amendment purportedly permits WARNER and ARTIST to convey partial ownership in the subject master recordings and of the publishers share in the subject compositions to Pandisc and Whooping Crane prospectively and to authorize and administer license of Computer Language, Fix it in the Mix, Freestyle Express, I Know You Love Me and The Party Has Begun which infringes on Plaintiffs' subject Musical Works.

127.    Defendants WARNER and ARTIST did not seek or obtain any permission, consent, or license from Plaintiffs for the administration and exploitation of the subject musical works purportedly covered and conveyed by the Artist Agreement, MSA and Amendment nor did Defendants WARNER and ARTIST seek permission to license Plaintiffs' copyrighted musical compositions.

128.    Defendants WARNER and ARTIST knew or should have known the licensing and administration of Plaintiffs' copyrighted subject musical works that were purportedly covered and conveyed by the Artist Agreement, MSA and Amendment constituted infringements of Plaintiffs' copyrighted works in violation of the Copyright Act, 17 U.S.C. § 101.

129.    The ownership rights in the sound recordings and musical compositions purportedly covered and conveyed by the Artist Agreement, MSA and Amendment were initially vested in Plaintiffs and were first recorded and published by MSI/MSP. Additionally, Plaintiffs' copyrights are registered and recorded with the United States Copyright Office. At a minimum, WARNER and ARTIST acted in reckless disregard of Plaintiffs' copyrights.

130.    Defendants WARNER and ARTIST's material contributions, intentional inducements and/or causing of copyright infringements by third parties were willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' copyrights.

131.    Each infringement by Defendants WARNER and ARTIST of Plaintiffs' copyrighted sound recordings and musical compositions that were purportedly covered and conveyed by the Artist Agreement, MSA and Amendment constitutes a separate and distinct act of infringement.

132.    As a direct and proximate result of the infringements, Defendants WARNER and ARTIST are jointly and severally liable to Plaintiffs for willful copyright infringement under 17 U.S.C. § 501. Plaintiffs have suffered, and will continue to suffer, substantial damage to their professional reputation and goodwill, as well as losses in an amount not yet ascertained, but which will be determined according to proof. In addition to Plaintiffs' actual damages, Plaintiffs are entitled to receive the profits made by Defendants WARNER and ARTIST from their wrongful acts, pursuant to 17 U.S.C. § 504. In the alternative, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of WARNER and ARTIST's willful copyright infringement.

133.    Further, by reason of WARNER and ARTIST's copyright infringement and threatened continued copyright infringement, Plaintiffs have sustained and, if WARNER and ARTIST's acts are not enjoined, will continue to sustain irreparable harm for which no adequate remedy at law exists. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502 enjoining any further use or exploitation by WARNER and ARTIST of Plaintiffs' sound recordings and musical compositions purportedly covered and conveyed by the Artist Agreement, MSA and Amendment.

134.    Plaintiffs are also entitled to recover their attorneys' fees and costs of suit under 17 U.S.C. § 505.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

135.    That the Court enter a preliminary and permanent injunction prohibiting and enjoining Defendants' officers, agents, and employees, and all persons acting in concert with them from infringing Plaintiffs' copyrighted musical compositions in

any manner and from distributing, selling, advertising, broadcasting, publishing or communicating, in the United States or elsewhere, any visual or sound recording (including those identified in this Complaint), as well as any sheet music, commercials, or other merchandise or materials that contain or refer to all or part of Plaintiffs' copyrighted musical compositions;

136.   That the Court enter an order pursuant to 17 U.S.C. § 503 mandating the impounding of all infringing copies of the musical works and any other materials prepared by Defendants containing any copies of Plaintiffs' copyrighted musical compositions or any portions thereof;

137.   That the Court require Defendants to provide an accounting and payment to Plaintiffs covering all profits derived from Defendants' wrongful acts;

138.   That the Court award compensatory damages in an amount to be proven at trial or applicable statutory damages;

139.   For reasonable attorneys' fees and costs of suit incurred herein; and

140.   For such other and further relief in favor of Plaintiffs as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand trial by jury on all triable issues herein.

Dated: December  05, 2019                    Respectfully Submitted,

_____
By: Carlton LP Talbot, Esq.
Carlton LP Talbot Attorney At Law
Fla Bar ID: 0107089
123 NW 23rd St.
Miami, FL 33127
Telephone: (305) 697-3030
Email: ctesq.consulting@gmail.com

*/s/ Peter G. Herman*

_____

By: Peter G. Herman
**THE HERMAN LAW GROUP, P.A.**
3020 NE 32nd Avenue, Suite 226
Ft. Lauderdale, FL 33308
Telephone: (954) 315-4874
Florida Bar No. 353991
servicepgh@thlglaw.com

*/s/ Chelsea Lewis*

_____

By: Chelsea Lewis
**LEWIS LAW, LLC**
151 North Nob Hill Rd
Plantation, FL 33324
Telephone: (954) 870-9734
Florida Bar No.111607
chelsealewispa@gmail.com


_____

By: David A. Moreno Jr., Esq.
Law Offices of Spar & Bernstein, P.C.
NY Bar ID: 5004460 *Pro Hac Vice*
225 Broadway 5th Flr.
New York, NY 10007
Telephone: (646) 633-3064
Email: dmoreno@lawsb.com

*Attorneys for Sherman Nealy and*
*Music Specialist, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of December, 2019 a true and correct copy of

the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system.

Respectfully Submitted,

_____.
By: Carlton LP Talbot, Esq.
Fla. Bar No.: 0107089