UNITED STATES DISTRICT
COURT FOR SOUTHERN
DISTRICT OF FLORIDA

Case No.: 1:18-cv-25474-RAR

MUSIC SPECIALIST, INC., a Florida
Corporation, and
SHERMAN NEALY, an
individual

       Plaintiffs,

v.

ATLANTIC RECORDING CORP. a Delaware
Corporation, WARNER/CHAPPELL
MUSIC, INC., a Delaware Corporation,
ARTIST PUBLISHING GROUP, L.L.C., a
Delaware Limited Liability Company

       Defendants.

_____/

**PLAINTIFFS' OBJECTION TO MAGISTRATE ORDER [DE 154] DENYING
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF INFORMATION
REFLECTING FOREIGN INCOME EARNED FROM DEFENDANTS USE AND
EXPLOITATION OF THE SUBJECT MUSICAL WORKS**

Pursuant to Federal Rule of Civil Procedure 72(a) and Rule 4(a) of the Magistrate Judge Rules of the Southern District of Florida ("M.J.R."), Plaintiffs object to the Magistrate Judge's order denying, as untimely, Plaintiffs' Motion to Compel the production of information reflecting foreign income earned from Defendants use and exploitation of the Subject Musical Works (hereinafter referred to as "Foreign Income"). *See* [DE 154]. Plaintiffs respectfully request that this Court set aside the Magistrate Judge's Order in part and require Defendants Warner Chappell

1

Music, Inc. ("Warner") and Artist Publishing Group, LLC ("APG") (collectively referred to herein as "Defendants") to produce information in their possession reflecting Foreign Income.

## BACKGROUND

1. On December 18, 2019, Plaintiffs served its First Request for the Production of Documents on the Defendants. In particular, Plaintiffs' Request #17 ("Request #17") sought the production of:

   > "All documents concerning any income, commissions, revenues, and/or royalties received or distributed by Warner [and APG] in connection with any contracts, agreements and/or transactions regarding the Subject Work Materials, or the copy, distribution, licensing, or administration of the exclusive publishing rights in the Subject Work Materials, including, but not limited to income, revenues, and/or royalties received in connection with the Artist Agreement, the MSA, the MSA Amendment."

2. Defendants served responses to those requests on February 10, 2020, and in response to Request #17, stated:

   > "Warner [and APG] objects to this request on the basis that "Subject Work Materials" is not defined and is unintelligible. Warner [and APG] further objects to the extent that this request calls for what is tantamount to a full accounting despite this Court's prior ruling that Plaintiffs may not seek an accounting in this action except as a remedy (i.e., after prevailing on its copyright claims). Warner [and APG] further objects to providing financial information that pre-dates December 28, 2015 based on the applicable statute of limitations. Subject to these objections, Warner [and APG] will provide information about revenue for the Subject Musical Works it has administered for the time period set forth in General Objection I."

3. Despite objecting to Request #17 on the basis of the statute of limitations[1], nowhere in Defendants' responses (including Defendants' General Objections) does it expressly state, or indicate in any way whatsoever, that Defendants were objecting to Request #17 (or any

---

[1] The parties engaged in a discovery hearing on Plaintiffs' Motion to Compel financial information relating to a period of time outside the applicable statute of limitations on June 11, 2020, following which, Plaintiffs' Motion to Compel was granted. *See* [DE 124; 126].

2

other Request for that matter) to the extent that the Request was seeking information relating to Defendants' Foreign Income.

4. Prior to the June 11, 2020 discovery hearing, *see* n.1, *supra*, Defendants had produced an approximately 20-page summary of financial information relating to their use and exploitation of the Subject Musical Works from January of 2016 through December of 2019. Following the Magistrate Judge's June 11th ruling, on July 14, 2020, Defendants produced a financial summary of approximately 36-pages (the same 20-page summary already provided, but with an additional 16-page summary) encompassing the financial information relating to their use and exploitation of the Subject Musical Works from July of 2008 to December of 2019.

5. Neither of those financial summaries contained any specific reference to, or differentiation of, income received from the domestic use and exploitation of the Subject Music Works as opposed to income received from the foreign use and exploitation of the Subject Musical Works.

6. During the relevant times and received in similar litigation prior to this litigation, Plaintiffs did have in their possession royalty statements originally sent from Defendants (specifically APG) to Mr. Tony Butler ("Butler") and 321 Music, LLC ("321 Music") with a date range between July of 2008 and June of 2014 pertaining to the use and exploitation of the Subject Musical Works (the "Royalty Statements"). Further, the Royalty Statements do make specific reference to, and provide specific differentiations for, income received from the domestic use and exploitation of the Subject Musical Works and income received from the foreign use and exploitation of the Subject Musical Works.

7. Despite being in possession of the Royalty Statements, Plaintiffs nevertheless had no reason to know or ability to determine whether the approximately 36-page summary of financial information that had been provided to them by Defendants encompassed both domestic and foreign income received from the use and exploitation of the Subject Musical Works. One would only reasonably assume that the Defendants would provide ***all*** revenues received based on the Plaintiffs' requests. Unfortunately, as such, Plaintiffs, at all times, assumed that Defendants were engaging in good-faith discovery and that the complete lack of reference to foreign income meant that both domestic and foreign income received from the use and exploitation of the Subject Musical Works had been produced.

8. It was not until August 21, 2020, upon taking the deposition of Mr. Jeremy Blietz ("Blietz"), Defendants' financial representative, that Plaintiffs learned – *for the first time* – that the 36-page summary provided by Defendants contained only income received from the domestic use and exploitation of the Subject Musical Works. *See* Discovery Hearing Transcript, P42, L2-16.

9. Following Blietz's deposition, the parties engaged in good-faith negotiations regarding Defendants production of the Foreign Income; however, no agreement was able to be reached.

10. As Defendants and Plaintiffs had also been engaged in good-faith negotiations regarding separate discovery issues raised by Defendants, Defendants requested a discovery hearing, which was set for September 25, 2020. Defendants filed a notice of hearing on September 18, 2020, *see* [DE 148], but Defendants' notice did not include the Foreign Income issue raised by Plaintiffs. Thus, Plaintiffs immediately filed a cross-notice of hearing on September 22, 2020, *see* [DE 149].

## LEGAL STANDARD

The district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. Proc. 72(a).

## ARGUMENT

### I. The Magistrate Judge Clearly Erred in Holding that Plaintiffs' Motion to Compel Defendants' Foreign Income Was Untimely.

As Plaintiffs moved to compel Defendants' Foreign Income within the time required by the Local Rules of the United States District Court for the Southern District of Florida ("S.D. Fla. L.R.") and the Discovery Procedures for Magistrate Judge Jacqueline Becerra ("M.J.R.")., Plaintiffs' Motion to Compel should be granted. SD. Fla. L.R. 26(g)(1) states:

> "all disputes related to discovery shall be presented to the Court by motion (or, if the Court has established a different practice for presenting discovery disputes, by other Court-approved method) within thirty (30) days from the: (a) original due date (or later date if extended by the Court or the parties) of the response or objection to the discovery request that is the subject of the dispute; (b) date of the deposition in which the dispute arose; or (c) date on which a party first learned of or should have learned of a purported deficiency concerning the production of discovery materials."

Additionally, M.J.R. I(B) states that "[t]he Court strictly enforces [S.D. Fla. L.R.] 26.1(g)(1) and interprets the thirty-day window as the opportunity during which good faith resolution efforts must be made." Further, Magistrate Judge Becerra stated in the September 25, 2020 discovery hearing that a party has "30 days to review [a response] with counsel and ten [(10)] days to bring it to the Court's attention." Discovery Hearing Transcript, P43, L1-2.

5

Magistrate Judge Becerra based her assessment of whether that Plaintiffs' Motion to Compel was timely on two questions: (1) whether Defendants' "response … made clear that [the Foreign Income] information wasn't being produced" and (2) whether Plaintiffs had "reason to know it existed and wasn't being produced in that response." *Id.* at P42, L22-25. Ultimately, Magistrate Judge Becerra found that Plaintiffs' Motion to Compel was untimely, *see Id.* at P67, L1-2, reasoning that "Plaintiffs were clearly aware that foreign income … may be an issue in the [instant] case" before this case began (dating back to their receipt of the Royalty Statements in 2017), and that the September 25, 2020 discovery hearing "was the first time a motion to compel on [the foreign income] issue [was] raised before the Court." *Id.* at P67, L3-11.

Despite Magistrate Judge Becerra's findings, Plaintiffs had no way whatsoever, prior to the taking of Blietz's deposition on August 21, 2020, to know that Defendants had made the unilateral decision not to include Foreign Income in their production. Nowhere within Defendants' general objections, their objections to Request #17, or the approximately 36-page financial summary that was produced to Plaintiffs, is any reference whatsoever made to the fact that Defendants had made the inappropriate and unilateral decision that foreign income was not relevant to this case, and as such, they were not going to produce Foreign Income. Despite the Plaintiffs' possessing the Royalty Statements, until the deposition of Blietz, it was not unreasonable for the Plaintiffs to rely on the Defendants' anticipated full and fair disclosure of all revenues and income, as there had been no mention of anything to the contrary in the summaries provided. In other words, without the summaries suggesting otherwise, there was no reason to question the Defendants' production until Blietz testified to what the summaries actually contained. *See* Blietz Deposition, P96, L3-4, L19-25. The dispute regarding this issue arose at the deposition of Blietz on August 21, 2020, and on September 22, 2020 (and arguably on September

18, 2020 with the filing of Defendants' notice of hearing), well within the time-limit provided by S.D. Fla. L .R. 26.1(g)(1) and M.J.R. I(B), Plaintiffs presented the dispute to this Court. Therefore, Plaintiffs' Motion to Compel was not untimely.

Regarding Plaintiffs' entitlement to Defendants' Foreign Income, Magistrate Judge Becerra stated, notwithstanding the timeliness issue, "from a discovery perspective," she would likely "be inclined to" give the requested information to Plaintiffs, *Id.* at P69, L14-16. In coming to that conclusion, the Magistrate Judge seemingly relied on the following cases cited in Plaintiffs' Notice of Authorities [D.E. 150]: (1) *P & D Int'l v. Halsey Pub. Co.*, 672 F. Supp. 1429, 1432-33 (S.D. Fla. 1987)("However, to the extent that part of an act of infringement occurs within this country, although such act be completed in a foreign jurisdiction, those who contributed to the act within the United States may be liable under U.S. copyright law."); (2) *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004)("Thus, it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act.")(citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 48 (2d Cir. 1939)); and (3*) Hermosilla v. Coca-Cola Co*., No. 10-21418-CIV, 2010 U.S. Dist. LEXIS 139020, at *8 (S.D. Fla. Dec. 27, 2010)("Since it appears unclear as to where the infringement took place in this case, in the United States or in Mexico, Plaintiff is entitled to obtain from Defendant information that will assist Plaintiff in ascertaining what profits Defendant realized from extra-territorial exploitation of Plaintiff's work, as it may be admissible evidence or may lead to admissible evidence."). As there is no question that the infringing acts alleged in this case originated in the United States and then subsequently spread to foreign territories, Plaintiffs are entitled to discover Defendants' Foreign Income.

## CONCLUSION

For the foregoing reasons, this Court should set-aside the Magistrate Judge's order in part and compel the discovery of Defendants' Foreign Income.

Dated: October 13, 2020                             Respectfully Submitted,

_____
By: Carlton LP Talbot, Esq.
Carlton LP Talbot Attorney At Law Fla Bar ID: 0107089
123 NW 23rd St.
Miami, FL 33127
Telephone: (305) 697-3030
Email: ctesq.consulting@gmail.com

/s/ Peter G. Herman

_____
By: Peter G. Herman
Peter Herman, P.A.
3020 NE 32nd Avenue, Suite 226 Ft. Lauderdale, FL 33308 Telephone: (954) 882-1133 Florida Bar No. 353991
service@phpalaw.com

_____
By: David A. Moreno Jr., Esq.
Law Offices of Spar & Bernstein, P.C. NY Bar ID: 5004460 *Pro Hac Vice* 225 Broadway 5th Flr.
New York, NY 10007
Telephone: (646) 633-3064 Email: dmoreno@lawsb.com

*Attorneys for Sherman Nealy and Music Specialist, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of October, 2020 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system.

Respectfully Submitted,

*/s/ Peter G. Herman*
_____
By: Peter G. Herman
Peter Herman, P.A.
3020 NE 32nd Avenue,
Suite 226 Ft. Lauderdale, FL
33308 Telephone: (954)
882-1133 Florida Bar No.
353991
service@phpalaw.com

1  I said to the Court the last time that the Court, from my
2  understanding, didn't recognize those type of responses.  I
3  don't think it said anything with regard to foreign income.  As
4  a matter of fact, I'm pretty certain that it did not.
5          And the first time we heard or got a confirmation from
6  anybody at Warner with regard to foreign income was in the
7  deposition.  And quite frankly, I'm starting to think about it.
8  I don't see how this is any different than the royalty
9  statement issue, in fact, that they just unilaterally decided
10 to even let us know one way or the other.  It doesn't say it
11 excludes foreign revenue or "We're not producing foreign
12 revenue because we don't think it's, you know, discoverable."
13 It's a little bit disingenuous at this point to think that they
14 can sit there and try to now point to us and it's somehow our
15 fault that we didn't recognize that there wasn't foreign income
16 in a summary that they gave us.
17          THE COURT:  No.  The issue is not whether it's your
18 fault or not.  The issue is whether or not your request to
19 compel the information now is timely.  So that's what I'm
20 trying to figure out first.  I mean, I think that's the
21 threshold issue I have to figure out.
22          So if the production itself or the request -- or the
23 response, rather, made clear that this information wasn't being
24 produced or you had a reason to know that it existed and wasn't
25 being produced in that response, then there is a timing issue,

1  because you've got 30 days to review it with counsel and ten
2  days to bring it to the Court's attention. So it is a
3  timeliness issue as far as I'm concerned. That's why I'm
4  trying to figure out from the parties as to the argument,
5  right, that --
6        MS. STETSON: Right. I do not think that I said "We
7  are withholding foreign income." I also didn't say we are
8  withholding a whole litany of documents that were part of our
9  overall objection that they were basically seeking, you know, a
10 full accounting, that that was not permitted, that it was
11 overbroad, et cetera.
12       So there were a lot of documents that were withheld
13 based on the objection to No. 17. And all that Mr. Herman
14 cared about, as I recall, initially was the statute of
15 limitations and that he only wanted, you know, the same as what
16 he had gotten, but for a longer period of time.
17       He then tried at the second hearing to sort of go back
18 on that and say: I actually do want more. And that was
19 what -- that your Honor said, you know, that it was untimely at
20 this point in time.
21       But as far as him knowing or he should have known --
22       THE COURT: Hold on. Let me ask Mr. Herman.
23       When was the first time that you realized that there
24 should have been foreign information from your perspective
25 produced that wasn't produced?

do:  I'm going to deny the motion to compel.  I find that the motion to compel this information is untimely.

Plaintiffs were clearly aware that foreign income could have been an issue.  It isn't -- it may be an issue in the case or that at least some of these documents would have been available.  This is the first time a motion to compel on this issue is raised before the Court given what I think is the plain evidence that this was an issue that was known to the Plaintiff before filing this lawsuit, but certainly at the time that the discovery was done.  So I'm going to deny the motion to compel.

The prejudice I see, Mr. Herman, is I'm looking at Judge Ruiz's schedule, which has summary judgment filed October 23rd.  And so if you want to go back to Judge Ruiz now and say, "We now have this issue with foreign income; we want this discovery; Judge Becerra wouldn't give it to us because of the schedule; we want this whole schedule amended by 30 days or 40 days or 60 days so that we can get this information and we can amend expert reports and everything can be moved," you're certainly, you know -- you could certainly do that.

But I've got the schedule I've got in front of me from Judge Ruiz.  It attempts to put some order, as all scheduling orders do, into the collection of facts and into expert reports and into summary judgment.

And so while it's easy for you to say, "I don't see

Case 1:18-cv-25474-RAR   Document 159   Entered on FLSD Docket 10/13/2020   Page 13 of 14

8/21/2020    Music Specialist, Inc. et al. v. Atlantic Recording Corp. et al.   Jeremy Blietz

Page 96

1    royalty report that we're looking at, does that
2    reflect some publishing fees?
3         A.   No, this is a report of domestic income
4    only.
5         Q.   So this doesn't include -- well, are some
6    publishing companies always foreign companies, I
7    take it because Warner/Chappell outside of the
8    United States?
9         A.   I'm sorry.  Can you rephrase the question.
10        Q.   Yeah.  I guess, explain to me why you said
11   that domestically, I took it to mean that you
12   didn't -- that Warner/Chappell doesn't have self
13   publishing agreements domestically, correct?
14        A.   Domestically, no.  We will administer
15   rights directly.
16        Q.   Right.  And so self publishers would be
17   informed about this?
18        A.   Yes, ex -- ex -- United States.
19        Q.   All right.  And so why is it that -- why
20   is it that you did not include the fees from foreign
21   sources in your self publishing agreement pursuant
22   to self publishing agreements?
23        A.   For this particular query because it's a
24   US claim, US issue, we limited the broad data hold
25   here to domestic income.

1        But either you have this big conference with Judge Ruiz
2   trying to figure out what these dates were.  You do that under
3   the assumption that discovery is closed.  And so discovery is
4   closed, you know.  You take it from there as you set up the
5   deadlines.
6        So I'm going to deny your motion to compel.  Like I
7   said, if you go back to Judge Ruiz and you get more time on the
8   schedule, I'll deny your motion without prejudice.  You can
9   come back to me and say:  Look, we've got all this extra time
10  now.
11       And if you've got all that extra time, then I'm
12  probably going to have a very different view of it,
13  Ms. Stetson, because although on the merits you may be right
14  that he doesn't get the foreign income, I think from a
15  discovery perspective I'm going to be inclined to give it to
16  him.  I'm not giving it to him now because I feel like -- or
17  I'm finding that his motion to compel is untimely and I do
18  think there is prejudice to you at this point.  The only way
19  that can be remedied is if this entire scheduling order gets
20  moved back.  We're already sort of pushing it a little bit with
21  respect to what happened with these work product documents.
22       And by the way, I'm hoping there's not going to be a
23  lot more of them.  I guess we'll find out in seven days if
24  we're going to get another dump of information, documents from
25  Mr. -- well, not from Mr. Herman, but from the Plaintiff.