**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:18-cv-25474-RAR

MUSIC SPECIALIST, INC., a Florida
Corporation, and
SHERMAN NEALY, an Individual,
        Plaintiffs,

v.

ATLANTIC RECORDING CORP., a Delaware
Corporation, WARNER/CHAPPELL
MUSIC, INC., a Delaware Corporation,
ARTIST PUBLISHING GROUP, L.L.C., a
Delaware Limited Liability Company
        Defendants.
_____/

## REPORT AND RECOMMENDATION[1] ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTIONS TO STRIKE

**THIS CAUSE** came before the Court on: (1) Defendants Atlantic Recording Corporation

("Atlantic"), Warner Chappell Music, Inc. ("Warner") and Artist Publishing Group, LLC's

("Artist") (collectively, "Defendants") Motion for Summary Judgement, ECF No. [166]; (2)

Plaintiffs Music Specialist, Inc. ("MSI") and Sherman Nealy's ("Nealy") (collectively,

"Plaintiffs") Motion for Partial Summary Judgment and Memorandum of Law, ECF No. [175];

(3) Defendants' Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Facts,

ECF No. [185]; and (4) Defendants' Motion to Strike the Affidavits of William Stevens

---

[1] On October 27, 2020, United States District Judge Rodolfo Ruiz referred Plaintiffs' Motion for Partial Summary Judgement, ECF No. [165], and Defendants' Motion for Summary Judgement to the undersigned. ECF No. [169]. On December 9, 2020, the case was referred to the undersigned "for rulings on all pre-trial, non-dispositive matters and for issuance of a Report and Recommendation on any dispositive matters." ECF No. [196].

("Stevens"), ECF No. [185-7], George Knox ("Knox"), ECF No. [185-1], and Garfield Baker ("Baker"), ECF No. [176-12].

As to the Motions for Summary Judgment, both parties filed Statements of Undisputed Material Facts in Support of their respective Motions for Summary Judgment.  ECF Nos. [167], [176].  Defendants filed a Response to Plaintiffs' Motion for Partial Summary Judgment, ECF No. [182], and a Response to Plaintiffs' Statement of Material Facts, ECF No. [183].  Plaintiffs also filed their Opposition to Defendants' Motion for Summary Judgment, ECF No. [184], and a Statement of Material Facts in Opposition including several additional facts (the "Additional Facts").  ECF No. [185].  Both parties filed a Reply.  ECF Nos. [190], [191].  Defendants then filed their Response to Plaintiffs' Additional Facts.  ECF No. [192].

Defendants also filed two motions to strike.  The first is a Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Facts.  ECF No. [193].  Plaintiffs filed their Opposition, ECF No. [199], and Defendants filed a Reply.  ECF No. [203].  The second is a Motion to Strike the Affidavits of William Stevens ("Stevens Affidavit"), George Knox ("Knox Affidavit") and Garfield Baker ("Baker Affidavit").  ECF No. [194].  Plaintiffs filed their Opposition, ECF No. [200], and Defendants filed a Reply.  ECF No. [204].

For the reasons set forth below, it is hereby:

**ORDERED** that Defendants' Motions to Strike Plaintiffs' Response to Defendants' Statement of Material Facts, ECF No. [193], be **DENIED**;

**ORDERED that** Defendants' Motions to Strike the following Affidavits of Stevens, Knox and Baker, ECF No. [194], be **GRANTED**;

**RECOMMENDED** that Defendant's Motion for Summary Judgment, ECF No. [166], be **GRANTED IN PART** AND **DENIED IN PART**; and

**RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. [175], be **DENIED**.

## I.      BACKGROUND AND THE INSTANT MOTIONS

This case concerns copyright infringement of eight musical works: (1) "Fix It in the Mix,"
(2) "Freestyle Express," (3) "When I Hear Music," (4) "Computer Language," (5) "I Know You
Love Me," (6) "Jam the Box," (7) "Lookout Weekend," and (8) "The Party Has Begun"
(collectively, the "Subject Musical Works").  ECF No. [176] ¶ 7.  Plaintiffs Nealy and MSI allege
that they own the Subject Musical Works as evidenced from the copyright registrations that list
them as the owners.  *See* ECF No [176-10].  They allege that the Subject Musical Works were
recorded over thirty-five years ago at the MSI Studio and that "as each song was written, the author
of said composition executed a songwriter agreement pertaining to the compositions, which
assigned the copyrights in the compositions controlled by them as songwriters" to MSI and Music
Specialist Publishing ("MSP").  *Id.* ¶¶ 3, 6–10.

Defendants counter that they have licenses from Tony Butler ("Butler"), the author of the
Subject Musical Works, for the use of the works.  In February 2008, Atlantic obtained a license
from Butler and his company, 321 Music, LLC ("321 Music"), to use portions of "Jam the Box"
as an interpolation in the musical composition "In the Ayer" embodying the performance of the
recording artist publicly known as Flo Rida.  ECF No. [167] ¶ 38.  On July 25, 2008, Artist and
Warner entered into an agreement with Butler and 321 Music, whereby Artist and Warner became
the exclusive administrators of the music publishing rights for the Subject Musical Works and
were transferred the rights to "grant licenses and collect royalties on behalf of th[e] writers and
publishers shares" in the Subject Musical Works.  ECF No. [176] ¶ 27.

On December 28, 2018, Plaintiffs filed their initial Complaint.  ECF No. [1].  Plaintiffs
were permitted to amend that Complaint three times.  ECF Nos. [42], [63], [74], [145].  In their
Third Amended Complaint, the operative pleading at hand, Plaintiffs alleged damages from

copyright infringement and sought injunctive relief and damages. ECF No. [74] at 3. Specifically, they allege copyright infringement against Atlantic (Count I); copyright infringement against Artist and Warner (Count II); and contributory copyright infringement against Warner and Artist (Count III). *Id.* ¶¶ 95–134.

Defendants filed their Motion for Summary Judgment on October 26, 2020 alleging three independent grounds for dismissal. ECF No. [166] at 2. First, Defendants state that Plaintiffs cannot prove that they own the Subject Musical Works. *Id.* Although Plaintiffs rely on the presumption of validity that attached to their copyright registrations, Defendants argue that the presumption is rebuttable and that there is ample evidence to rebut that presumption. *Id.* at 12–28. Defendants argue that Plaintiffs have been unable to produce a single document that evidences that the author(s) of the Subject Musical Works assigned the rights to the Subject Musical Works to Plaintiffs. Instead, Defendants argue that Plaintiffs present "contradictory and incoherent" testimony "that not only fails to establish ownership of any copyright, but affirmatively disproves it." *Id.* at 12. Second, Defendants state that Butler is, at minimum, a co-owner of the songs and had the right to use or license them to Defendants. *Id.* at 28–29. Finally, Defendants state that Plaintiffs' claims are nevertheless barred by the Copyright Act's three-year statute of limitations, 17 U.S.C. § 507(b), because Plaintiffs knew (or should have known) that the copyright ownership rights were being violated well before the three years prior to filing this suit. *Id.* at 30–49.

Plaintiffs countered that Defendants fail to rebut the presumption of validity of their copyright registrations, which constitute *prima facie* evidence of their ownership and of the information provided on the face of the copyright registration certificates. ECF No. [184] at 18. Thus, it is not necessary to produce any written agreements evidencing any transfer of ownership to Plaintiffs of the Subject Musical Works. *Id.* at 22–30. As to the argument that their claims are

untimely, Plaintiffs argue that Plaintiff Nealy "did not become aware of the Defendants' infringements, and under his circumstances, could not have become aware of the Defendants' infringements, until January 2016" which is within the three-years statute of limitations, considering he filed suit on December 28, 2018.  ECF Nos. [1]; [184] at 36.

Plaintiffs also filed a Motion for Partial Summary Judgment arguing that summary judgment should be entered in their favor as they are the owners of the copyrights to the Subject Musical Works and there is no dispute that Defendants are using, and thereby infringing, on their rights.  Specifically, they argue that the copyright registrations of the Subject Musical Works are evidence of their ownership and because they have never transferred their ownership to Butler or any third party, the rights to the works continue to exclusively reside with them.  ECF No. [175] at 8.  Further, Plaintiffs argue that 17 U.S.C. § 507(b) does not bar their recovery for damages incurred more than three years prior to the filing of this lawsuit as they were unaware of that the Defendants were infringing their works and that their lack of knowledge was reasonable under the circumstances.  *Id.* at 13.

## II.    MOTIONS TO STRIKE

Before considering the Motions for Summary Judgement, the undersigned must first consider the Motions to Strike filed by Defendants—the Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Fact, ECF No. [193], and the Motion to Strike Plaintiffs' Affidavits of Stevens, Knox and Baker, ECF No. [194]—as the undersigned's disposition of these two motions bears on the Motions for Summary Judgment.

### A.  The Motion to Strike Plaintiffs' Response To Defendants' Statement Of Material Facts Is DENIED.

Defendants filed a Motion to Strike Plaintiffs' Response to Defendants' Statement of Material Fact, ECF No. [185], for failure to comply with Southern District of Florida Local Rule

56.1.  ECF No. [193].  Pursuant to Local Rule 56.1, "[a] motion for summary judgment and the opposition to it shall each be accompanied by a separate and contemporaneously filed and served Statement of Material Facts."  Local Rule 56.1(a)(1).  "An opponent's Statement of Material Facts shall clearly challenge any purported material fact" that is "genuinely in dispute."  Local Rule 56.1 (a)(2).  In the opponent's Statement of Material Facts, the opponent "shall use, as the very first word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed'" and for any disputed facts, "the evidentiary citations supporting the opponent's position must be limited to evidence specific to that particular dispute."  Local Rule 56.1 (2)(B)–(C).

Here, Defendants argue that thirty-two out of eighty-eight of Plaintiffs' responses to Defendants' Statement of Material Facts did not adhere to the form specified by the Local Rule. ECF No. [193] ¶ 3.  Specifically, these responses state that the fact is "undisputed," but go on to "add argument, additional purported facts, citations of record evidence and legal authorities, all said to be 'for the sake of context.'"  *Id.*  Defendants argue that this is a failure to comply with Local Rule 56.1 as it "defeat[s] the rule's purposes of imparting clarity and simplifying the Court's review" and "[m]oreover, there is no procedure for Defendants to respond to Plaintiffs' violation of the Rule in appending additional argument and evidence to facts Plaintiffs concede are undisputed."  *Id.* ¶¶ 4–5.

Plaintiffs state that they have complied with the Local Rule 56.1 because, while there might not be a provision in the Local Rule for a party to include citations of evidence when the facts are undisputed, Plaintiffs argue that the Local Rule does not expressly disallow it.  ECF No. [199] at 4.  Also, Plaintiffs counter that they are not defeating the Rule's purpose of imparting clarity and simplifying the Court's review; instead their responses are "wholly necessary for this Court to make a meaningful determination" as to whether such facts are in dispute.  *Id.*  Plaintiffs cite to

*Silverstein v. Boehringer Ingelheim Pharms.*, 2020 WL 6110909 (S.D. Fla. Oct. 7, 2020), to support their position that the Court should consider these clarifying facts.  In *Silverstein*, both parties submitted in their responses to the statement of undisputed facts additional facts that clarify, limit, or contextualize the other side's proposed facts.  2020 WL 6110909, at *5.  The Court in *Silverstein* stated that "[d]espite the parties' non-compliance with Local Rule 56.1, to the extent the additional facts are material and supported by evidence in the record, I consider them."  *Id.*

The Court finds that the undisputed facts do contain argument and characterizations which would have been better addressed in the "Additional Facts" section.  Local Rule 56.1(b)(3) allows parties to respond to the "Additional Facts" section of the opposition to the statement of material facts, but not to the responses to the statement of material facts.  Alternatively, these characterizations should have been limited to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, where they may also be found in the instant case.  *See* ECF No. [184]. However, the Court has broad discretion in the case of non-compliance, and despite the violation of the Local Rule, the Court was able to review the matter and consider those additional facts that are material and supported by evidence of record.  *See* Local Rule 56.1(d); *Silverstein*, 2020 WL 6110909, at *5.  As such, the Defendants' Motion to Strike Plaintiffs' Responses to Defendants' Statement of Material Facts, ECF No. [193], is **DENIED**.

### B. The Motion To Strike The Stevens Affidavits, The Knox Affidavit And The Baker Affidavit, ECF No. [194], Is GRANTED.

Defendants filed a Motion to Strike the Stevens Affidavit, ECF No. [185-7], the Knox Affidavit, ECF No. [185-1], and the Baker Affidavit, ECF No. [176-12].  ECF No. [194]. Defendants argue that "none of these witnesses was previously identified as having knowledge of the matters stated in their [a]ffidavits, and [] Stevens was not identified at all" in either Plaintiffs'

Initial Disclosures from March 15, 2019 or the Amended Initial Disclosures dated March 10, 2020

*Id.* at 1.

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), parties must provide in their initial disclosures "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses."   If a party "learns that in some material respect the disclosure or response is incomplete or incorrect," then they have an ongoing duty under Federal Rule of Civil Procedure 26(e)(1)(A) to supplement their initial disclosures.

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Federal Rule of Civil Procedure 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."   *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005) (affirming the District Court's striking of affidavits submitted in opposition to summary judgment when the deadline for discovery had passed and affiants were not listed on the Plaintiffs' initial disclosures and there was no attempt to supplement the disclosures); *Lawver v. Hillcrest Hospice, Inc.*, 300 F. App'x 768, 770 (11th Cir. 2008) (because the plaintiff failed to amend her discovery disclosures to identify her witness, the magistrate judge did not abuse his discretion in striking her witness's affidavit).  The Federal Rules of Civil Procedure also prohibit proffering a previously disclosed witness to testify on a subject matter that was not previously disclosed.  *Rigby v. Philip Morris USA Inc.*, 717 F. App'x 834, 835 (11th Cir. 2017) (failure to include a description of the witness's discoverable information was not excusable); *Zuniga v. Jacobs*, No. 18-22303, 2020 WL 168106 (S.D. Fla. Jan. 13, 2020) (striking

an affidavit submitted in opposition to summary judgment where the witness had been previously identified but his knowledge on a newly asserted defense was not identified.

"The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citation omitted).  In making this determination, courts are to consider "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)).  "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question."  *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (quoting *Berryman–Dages v. City of Gainesville Fla.*, No. 1:10cv177–MP–GRJ, 2012 WL 1130074, at *2 (N.D. Fla. Apr. 4, 2012)).

### 1.  *The Stevens Affidavit*

The Stevens Affidavit, executed on November 15, 2020, avers that he worked as an attorney for MSI, at the behest of Nealy, from approximately 1983 to 1986.  ECF No. [185-7] at 1. Stevens explains that he "was personally responsible for preparing the recording artist contracts and producer contracts that were signed by the recording artists and producers" at MSI.  *Id.*  He states that Butler "was an engineer, producer, and songwriter for MSI, and as such, executed a recording artist and producer contract with MSI."  *Id.*  Stevens also claims that he was personally responsible for completing the copyright registrations for "Party Has Begun," "Lookout Weekend," "Freestyle Express," and "When I Hear Music."  *Id.*  Importantly, Stevens also states that "[t]he representations on the face of the copyright registration certificates accurately reflect

the fact that Butler assigned his rights in all of the songs authored by him to MSI and [MSP] (the publishing arm of MSI) as work(s) for hire pursuant to the recording artist and producer agreements [Stevens] prepared and [Butler] executed." *Id.*

Defendants argue that the Stevens Affidavit should be stricken pursuant Federal Rule of Civil Procedure 37.   ECF No. [194] at 5.   Specifically, Stevens was never disclosed at all in Plaintiffs in Plaintiffs' Rule 26(a) disclosures.   Indeed, the first time Defendants had any notice that Stevens had any relevant information regarding the matter was when the Stevens Affidavit was submitted in Opposition to Defendants' Motion for Summary Judgment.   *Id.*   Moreover, Defendants argue that the Stevens Affidavit purports to contradict sworn testimony Plaintiffs have given during discovery" that goes to the heart of the matter—the validity of the copyright registrations for the songs at issue."   *Id.* at 2.   Defendants point to Nealy's deposition where he testified that Jonathan Black had prepared all MSI's copyright registrations and that Black was responsible for prepared the transfer agreements for MSI.   *Id.* at 2–3 (citing ECF No. [176-15] at 33, 41–42, 44, 66, 77).   Later, when Black contradicted Nealy's statements by testifying that he did not prepare the copyright registrations for six of the musical works in question, no mention was made of Stevens.   ECF No. [176-5] at 13–20.   Although Blacks' testimony was on June 25, 2020, the first time that Stevens was mentioned by Plaintiffs was November 16, 2020 when his affidavit was filed with the Opposition.   Indeed, given that the discovery cutoff was August 31, 2020, Plaintiffs had two months after the Black testimony to have located and identified Stevens and chose not to do so.   Given that, Defendants argue that this late disclosure is not substantially justified nor is it harmless as they were not afforded any opportunity to depose Stevens or otherwise prepare for this new evidence.

In response, Plaintiffs explain that they "had no contact with Stevens whatsoever, had no idea as to the extent of Stevens' relevant knowledge, and had no intention of using Stevens or any of his testimony to support Plaintiffs' claims or defenses" as of the time that Plaintiffs provided their Initial Disclosures and Amended Initial Disclosures.  ECF No. [200] at 4.  Plaintiff state that they "fully intended to rely on the testimony of Black as it pertained to the songwriter agreements" and on the presumption of ownership based on the copyright registration certificates.  *Id.* at 5.  However, they initiated an additional investigation after reading Defendants' Motion for Summary Judgment filed on October 26, 2020.  *Id.*  They also state that any failure to comply with Federal Rule of Civil Procedure 26(a) or (e) was substantially justified or harmless because Stevens' name appears on the copyright registration certificates as the individual to whom correspondence regarding the application should be sent for "Lookout Weekend," "Freestyle Express," "Party Has Begun," and "When I Hear Music."  *Id.* at 6.  Defendants could have, they contend, but never did ask any questions about Stevens' role during the discovery stage.  *Id.*  Even though Defendants have concerns because they were unable to depose Stevens, Plaintiffs state that they are in a similar position because they only recently spoke to him and he lives outside of the United States.  *Id.*

The Court finds that the failure to disclose Stevens is neither substantially justified nor harmless.  At least as of Black's deposition, Plaintiffs knew that they did not have a witness who could testify as to the how they came into possession of the works from the authors of the Subject Musical Works.  Discovery at that point was still open.  Plaintiffs admittedly did nothing in the face of Blacks' testimony and instead decided to rest their arguments on the copyright registrations alone.  Indeed, they concede they did not even consider Stevens until after they read Defendant's summary judgment arguments admitting that they were not willing to "stand-pat" and they "initiated additional investigation."  ECF No. [200] at 5.  Plaintiffs never advised Defendants that

they had located Stevens, they never amended their Initial Disclosures, and they never sought leave of Court to re-open the discovery period.  Instead, they submitted a cursory and conclusory affidavit on a key issue as part of their Opposition.  Their conduct is not substantially justified; indeed, it cannot be justified at all.  If this is not the scenario that the Federal Rules of Civil Procedure were meant to proscribe it is hard to imagine what would be.

Moreover, the failure to disclose Stevens is not harmless as Defendants had no ability to depose or otherwise test this "new evidence."  *Henriquez v. Total Bike, LLC*, 13-20417-CIV, 2013 WL 6834656, at *6 (S.D. Fla. Dec. 23, 2013) ("[C]ourts have consistently held that the affidavit of a witness cannot be used to support or oppose summary judgment where the other party did not have the ability to depose the witness."); *Lawver*, 300 Fed. Appx. at 770 (striking an affidavit submitted in opposition to summary judgment when the moving party did not have an opportunity to depose the witness based on non-movants failure to disclose.).  The Court cannot permit Plaintiffs to "'glean an unfair advantage over [Defendants] by relying on [a] witness to whom [Defendants] did not have access during discovery.'" *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 446 F. Supp. 3d 1032, 1042 (S.D. Fla. 2020), *reconsideration denied*, No. 18-23125-CIV, 2020 WL 4586399 (S.D. Fla. Aug. 10, 2020) (citing *Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 566 (S.D. Fla. 2001)).

Plaintiffs' passing reference that they would not oppose a deposition out of time is hardly an answer given that the parties have already filed summary judgment and the matter is set for trial.  Rather than amending their initial disclosures or seeking to extend discovery, which would have provided Defendants with an opportunity to seek discovery from Stevens, Plaintiffs took the most egregious road available, they simply surprised Defendants with this Affidavit.  Because their admitted failure to comply with the Federal Rules of Civil Procedure is neither substantially

justified or harmless, the Stevens Affidavit is **STRICKEN** and Defendants' Motion to Strike the Affidavit of Stevens should be **GRANTED**.

### 2.   *The Knox Affidavit*

In the Knox Affidavit, executed on November 13, 2020, Knox states that he performed "some legal services" on behalf of MSI, and at the direction of Nealy, from 1985 until the time of its administrative dissolution.  ECF No. [185-1].  He stated that based on his recollection it was Stevens who "prepared the copyright applications for most of the songs which were created by MSI's recording artists prior to Jonathan Black joining MSI."  *Id.*  Knox also said that he believed Stevens "prepared agreements that were signed by the recording artist who were engaged by MSI, and which contained provisions regarding the rights and responsibilities of the parties."  *Id.*

Defendants argue that the Affidavit should be stricken because Knox was only identified in the Initial Disclosures as having subject matter knowledge as to "Nealy's capacity and ownership interest in [MSI], and composition of [MSI]'s Board of Directors."  ECF No. [194] at 6; *see* ECF Nos. [194-1] at 3, [194-2] at 3.  Defendants argue that the subject matter of the Knox Affidavit falls well outside of that scope, as the Affidavit relates instead to the preparation of agreements with recording artists engaged by MSI.  ECF No. [194] at 6.

Plaintiffs counter that, unlike the case of Stevens, Knox was mentioned numerous times during the depositions of Plaintiff Nealy, Black, and Baker, when they testified regarding the execution of transfer agreements executed by MSI.  ECF No. [200] at 7.  As such, Defendants were on notice of Knox's expanded subject matter knowledge.  *Id.*  Because Defendants had notice, they argue, the Affidavit should not be stricken.

As an initial matter, it is clear that Knox was not disclosed as having any information on the subject matter he now addresses in the Affidavit.  That failure to disclose the subject matter is

grounds to strike the Affidavit unless Plaintiffs' failure can be substantially justified or is harmless. Here, the undersigned cannot find that their failure is substantially justified. Plaintiffs proffer no reason as to why the Initial Disclosures failed to present Knox as an individual who had information regarding the assignments. However, the Knox Affidavit purports to bolster the Stevens Affidavit by stating that Stevens prepared the agreements that were signed by the recording artists who were engaged by MSI . . . ." ECF No. [185-1]. It appears to the Court that, as with Stevens, this is a line of evidence that Plaintiffs' simply chose not to consider. Offering no justification for their failure to follow the Federal Rules of Civil Procedure, it appears instead that they simply chose not to pursue this evidence. The failure is not substantially justified and now the issue now is whether the failure to disclose is harmless.

The Court finds that this failure is not harmless. Plaintiffs' argument that Defendants were on notice that Knox had this information as a result of Baker's and Black's depositions, is unpersuasive. ECF No. [200] at 7. Upon closer examination, neither Baker nor Black gave Defendants sufficient information as to Knox's knowledge. For example, when Baker was asked who presented the contract to him at MSI, he stated "Sherman Nealy, Tony Butler . . . [and] it may have been George Knox. I think it was George Knox." ECF No. [176-4] at 5–6. When Black was asked who did the copyright registrations prior to him joining MSI, Black stated "No. I couldn't say for certain who it was. It could have been [done] by Mr. Knox or Pat Johnson or could have been any number of people." ECF No. [176-5] at 21. Neither of these statements provide sufficient notice to Defendants that Knox would have knowledge of the transfer agreements underlying copyright registrations given that Plaintiffs did not disclose that he had any such information in their Initial Disclosures, nor did they amend those Disclosures after those depositions. Indeed, the point of Initial Disclosures, at least in part, is precisely to avoid chasing down every comment

made in a deposition or piece of paper.  A party should be able to rely that counsel has investigated his or her own case and made disclosures that are fair and complete.  Indeed, here, Defendants had a right to assume that counsel had spoken to Knox either when the Initial Disclosures were first made or after these depositions and concluded that he had nothing to add because the Initial Disclosures in fact were not amended. The fact that Defendants knew who Knox was or that others mentioned him as potentially having information is of no moment when they were not given the correct information as to what he knew.  In short, it was Plaintiff who bore the responsibility to inquire of Knox at least no later than those depositions, if in fact those deposition can be taken for what Plaintiffs suggest and confirm whether that information was correct and amend their Disclosures. When they did not do so, Defendants were well within their rights not to seek a deposition of Knox on that point.  Therefore, Plaintiffs' last-minute affidavit is prejudicial because Defendants have had no opportunity to explore the basis for Knox's testimony, and as such, their failure to properly disclose Knox is not harmless.  *See Rigby*, 717 F. App'x at 835 (striking of an affidavit where a party failed to describe the subject of the witness's knowledge under Fed. R. Civ. P. 26(a)(1)(A)(i)); *Pete's Towing Co. v. City of Tampa, Fla.*, 378 F. App'x 917, 919–20 (11th Cir. 2010) ( Eleventh Circuit upheld District Court Judge's order striking portions of a witness affidavit because it "included allegations that had not been previously disclosed to Defendants in response to discovery requests.").  The Defendants' Motion to Strike the Affidavit of Knox is **GRANTED**.

### 3.   *Baker Affidavit*

Finally, Plaintiffs submitted the Baker Affidavit which addresses practices and procedures before the Copyright Office.  Although Baker was disclosed in the Federal Rule of Civil Procedure 26 Initial Disclosures he was listed as having information on "Nealy's capacity and ownership interest in [MSI], and [MSI]'s Board of Directors," "status of copyright issues," "fraudulent

activity of Tony Butler," and the "knowledge of Defendants' understanding of issues presented, and information concerning deliverables and accounts receivable to MSI." ECF Nos. [176-12]; [194-1] at 2; [194-2] at 2. However, the Baker Affidavit is a summary of what Baker alleges he discussed with a Ms. Veronica Patten, a Supervisory Copyright Specialist, working in the Records, Research and Certification Section of the United States Copyright Office. ECF No. [176-12].

Defendants argue that the Baker Affidavit should be struck. ECF No. [194] at 7. Although he was listed on Plaintiffs' Initial Disclosures, this Affidavit is offered for matters outside the scope of his subject matter knowledge. *Id.* Defendants also argue that the Baker Affidavit is "pure hearsay consisting entirely of Baker's one-sided account of a conversation(s) he claims he had with the Copyright Office." ECF No. [194] at 7. In their Response, Plaintiffs state they do not oppose the striking of the Affidavit. ECF No. [200] at 3 n.2.

In addition to the fact that Plaintiffs are not opposed to striking the Affidavit, the Court finds that there is nothing on the record that would support a finding that the failure to properly disclose Baker's area of knowledge is either substantially justified or harmless. Plaintiffs proffer no reason for their failure to disclose this area of knowledge, and given the close of discovery, the failure to disclose is not harmless. Finally, as Plaintiffs argue, the substance of the Affidavit is hearsay and lacks proper foundation. Thus, the Defendants' Motion to Strike the Affidavit of Baker is **GRANTED**.

III.     **SUMMARY OF UNDISPUTED FACTS**[2]

Plaintiff Nealy is the owner, president, and shareholder of MSI, a Florida corporation incorporated in 1983.  ECF Nos. [167] ¶¶ 2, 3; [176] ¶ 2.  Nealy was also the President and sole owner/shareholder of In the Mix, Inc. ("In the Mix"), a Florida corporation which was administratively dissolved in 1984.  ECF No. [176] ¶ 2.  Nealy formed MSI because he wanted to enter the music business and identify artists and others who could help launch a record company.  ECF No. [167] ¶ 7.  Although at the time of MSI's incorporation, Tony Buter ("Butler") was listed as the President of MSI, MSI's Articles of Incorporation were later amended to list Nealy as President and Butler as Vice President of MSI.  *Id.* ¶ 4.  Nealy was the "money man" funding the operations of MSI, and Butler was a disc jockey and more knowledgeable than Nealy about the music business.  ¶¶ 6, 8.  MSI was dissolved in November of 1986 and reinstated as an active corporation on or about January 19, 2017.  ECF No. [176] ¶ 14.  From 1983 to 1986, MSI recorded and released one album and a number of singles on vinyl and cassette.  ECF No. [167] ¶ 12.

Those singles released by MSI included the eight works that are at issue in this case: (1) "Fix It in the Mix" by Pretty Tony (Butler); (2) "Freestyle Express" by Freestyle; (3) "When I Hear Music" by Debbie Deb; (4) "Computer Language" by Pretty Tony (Butler); (5) "I Know You Love Me" by Trinere; (6) "Jam the Box" by Pretty Tony (Butler); (7) "Lookout Weekend" by Debbie Deb; and (8) "The Party Has Begun" by Freestyle.  ECF No. [176] ¶ 7.  Each work was registered with the United States Copyright Office.  The copyright registration for each reflects as

---

[2] The undisputed facts are taken from Defendants' Statement of Material Facts, ECF No. [167], Plaintiffs' Statement of Material Facts, ECF No. [176], Defendants' Response to Plaintiffs' Statement of Material Facts, ECF No. [183], Plaintiffs' Statement of Material Facts in Opposition including the Additional Facts, ECF No. [185], and Response to Plaintiffs' Additional Facts, ECF No. [192].

follows.  For "Fix It in the Mix," MSI is listed as the claimant[3] and author[4] and the copyright registration notes that the work was created for hire.  ECF No. [167-16] at 5–8.  For "Freestyle Express," In The Mix Inc. is listed the claimant and the author as the employer for hire of Calvin Mills, Moses Talbot, and Tony Butler.  *Id.* at 12–14.  The copyright registration also states it was transferred to claimants as "work made [for] hire."  *Id.* at 14.  For "When I Hear Music," the registration lists MSP[5] as the claimant, states that the author is "Music Specialist Publishing employer for hire of Tony Butler," and indicates that the work was created for hire.  *Id.* at 2–4.  For "Computer Language," the registration lists "Happy Stepchild Music Publ. Corporation & Music Specialist Publ." as the claimants, states that Tony Butler is the author, and indicates that the work was not made for hire.  *Id.* at 9–11.  For both "I Know You Love Me" and "Jam the Box" the copyright registrations state that the claimant is MSP, the author is Tony Butler, and the work was not for hire.  *Id.* at 15–20.  The copyright registrations for both "Lookout Weekend" and "The Party Has Begun" indicate that MSI is the claimant, Tony Butler is the author, and that the work was made for hire.  *Id.* at 21–26.  For both of those songs, the copyright registrations also state that the works were transferred to claimant by assignment.  *Id.* at 23, 26.

---

[3] A copyright claimant is either: "(i) the author of a work; or (ii) a person or organization that has obtained ownership of all rights under the copyright initially belonging to the author.  37 C.F.R. § 202.3(a)(3).  The latter category "includes a person or organization that has obtained, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration."  *Id.* at n.1.

[4] The copyright website, registration form, and label also indicate that "Pretty Tony," or Tony Butler, was artist or performer of the work.  ECF No. [167-16] at 5–8.

[5] Plaintiffs state that MSI has always been affiliated with MSP, a d/b/a of MSI, which was created to administer the publishing rights to compositions owned by MSI.  ECF No. [176] ¶ 3.  Defendants dispute this fact arguing that "no evidence has been produced to support this statement or that MSI owns any musical compositions."  ECF No. [183] ¶ 3.

In approximately March of 1989, the business of MSI came to a complete stop when Nealy was incarcerated for distributing cocaine.  ECF No. [167] ¶ 18.  Nealy's incarceration lasted from March 1989 to March 2008.  *Id.* ¶19.  Nealy was then incarcerated a second time, again for distribution of cocaine, from February 2012 to September 2015.  *Id.*  During Nealy's first incarceration, no one was authorized by Nealy to sell the MSI catalog and MSI had no contracts with third parties to publish or distribute any of the music in the MSI catalog.  *Id.* ¶ 20.  Nealy was also the president and sole owner and shareholder of In the Mix, Inc. ("In the Mix"), a Florida corporation which was administratively dissolved in 1984.  ECF No. [176] ¶ 2.

In 2007, Butler formed a company named 321 Music, LLC.  ECF No. [176] ¶ 24.  In February 2008, Atlantic obtained a license from Butler and 321, to use portions of the musical composition "Jam the Box" as an interpolation in the musical composition "In the Ayer" embodying the performance of the recording artist publicly known as Flo Rida.  ECF No. [167] ¶ 38.  Atlantic used DMG Clearances, Inc., a reputable copyright clearing house, to obtain the license, and DMG negotiated the license with an attorney representing Butler, 321, and MSI.  *Id.*

Upon his release from prison in March of 2008, Nealy was informed that a third party, Robert "Bo" Crane ("Crane"), was distributing the MSI catalog.  *Id.* ¶ 22.  Through MSI's consultant, Jonathan Black ("Black"), a meeting was arranged with Crane on June 9, 2008.  *Id.* ¶ 23.  It was a ten-minute meeting.  ECF No. [176] ¶ 19.  Nealy remembered "talking to them concerning whatever they [were] doing with any music that Music Specialist owned" and "letting them know that I was home and they had my music."  ECF No. 167 ¶ 23 (citing ECF No. [176-15] at 20–21).  At his deposition, Nealy was asked if he knew Pandisc was distributing his songs and music.  ECF No. [176-15] at 21.  He responded, "I heard they had possession and they were utilizing it."  *Id.*  Nealy was also asked at his deposition whether he ever provided Crane or his

lawyers "any proof that either [he] or [MSI] were the owners of the songs and records [Pandisc] was distributing." *Id.* Nealy stated that he never provided anything because "[he] was just coming home [after his first incarceration] and [he] didn't know what was going on." *Id.* at 21–22. Finally, Nealy was asked what if anything he did from that 2009 meeting with Crane up until Nealy's second incarceration in 2012. *Id.* at 22. Nealy responded, "I wasn't in no position to do anything" and that "[he] didn't know what to do." *Id.*

On July 25, 2008, Artist and Warner entered into an agreement with Butler and 321 whereby Artist and Warner purportedly became the exclusive administrators of the music publishing rights for the Subject Musical Works, and were transferred the rights to "grant licenses and collect royalties on behalf of th[e] writers and publishers shares" in the Subject Musical Works. ECF No. [176] ¶ 27. In addition to the Subject Musical Works, Artist and Warner purportedly became the exclusive administrators of the music publishing rights and were transferred the rights to license musical works, such as "In the Ayer," "Weekends" (a derivative work of "Lookout Weekend") and "Another Weekend" (a derivative work of "Lookout Weekend") by Black Eyed Peas, and "Fuego" (a derivative work of "When I Hear Music") by Pitbull. *Id.*

In 2009, Pandisc and Whooping Crane instituted a copyright infringement action in the Southern District of Florida regarding the Subject Musical Works against Atlantic, Artist, Warner, Butler, and 321. ECF No. [176] ¶ 29; *see* ECF No. [167-5]. Therein, Pandisc and Whooping Crane alleged that from 1989 to 1992, Butler's companies – Captain Productions, Inc. and CTan Music –transferred ownership rights in various musical works claimed by Plaintiffs. ECF No. [167] ¶ 25; *see* ECF No. [167-5] at 5–7. Neither MSI nor Nealy was notified of or joined as a party to this case. ECF No. [167] ¶ 25. This case was settled by a Mediated Settlement Agreement that was subsequently amended. *Id.* Shortly after, Pandisc and Whooping Crane brought another

lawsuit in the Eleventh Judicial Circuit in and for Miami Dade County, Florida against Butler and 321 based on fraudulent claims made in the Settlement Agreement and its amendment.  *Id.* ¶ 30. Neither MSI nor Nealy was ever notified of or joined as a party to this case either.  *Id.*  In 2015, the Settlement Agreement and the amendment were adjudicated fraud *ab initio* and unenforceable by the Honorable Judge John Thornton, and the parties were placed back into their positions relative to the ownership of the subject musical works.  *Id.*

In approximately January of 2016, shortly after Nealy was released from prison for the second time, Baker reached out to Nealy to determine whether MSI or Nealy had ever transferred any of the copyrights in the Subject Musical Works "to Butler or to anybody."  ECF No. [176-4] at 47.  When Nealy informed him that they had not, Baker then informed Nealy of Butler's purported transfers of the copyrights in the Subject Musical Works to the Defendants and the ongoing litigations and conflicting claims regarding ownership of the Subject Musical Works.  *Id.* This action was commenced thereafter on December 28, 2018.  ECF No. [1].

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed R. Civ. P. 56.  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).  Speculation or conjecture cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).  In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment.  *Bailey v. Allgas, Inc*., 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* Fed. R. Civ. P. 56(e).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  *Miranda v. B & B Cash Grocery Store, Inc*., 975 F.2d 1518, 1534 (11th Cir. 1992).  But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiffs contend that on this record the Court can find that they own the Subject Musical Works by virtue of executed songwriter agreements "pertaining to the compositions, which assigned the copyrights in the compositions controlled by them as songwriters to MSI/MSP," and Defendants contend that on this record the Court can find that Plaintiffs do not own the Subject Musical Works as no such agreements have been produced by Plaintiffs.  ECF Nos. [176] ¶ 10; [183] ¶ 10.

## V.     ANALYSIS

In order to establish copyright infringement, Plaintiffs must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). The matter at hand involves only the first prong: who owns the Subject Musical Works. Indeed, Defendants concede that they are using, in one way or another, the Subject Musical Works. This case is about ownership.

In order to determine who owns the Subject Musical Works, there are three principles that are undisputed and form the basis of the analysis. First, it is well-settled and not in dispute that an author retains ownership over the copyright unless he or she unequivocally transfers that copyright to another in a signed writing. 17 U.S.C. § 204(a). This requirement is known as the Copyright Act's Statute of Frauds. *Tjeknavorian v. Mardirossian*, 56 F. Supp. 3d 561, 565 (S.D.N.Y. 2014). Here, Butler is the author or co-author of the Subject Musical Works. ECF Nos. [167-16]; [167-22] at 5–6. Plaintiffs contend that they acquired each of the Subject Musical Works from Butler by written agreements, and that based on those agreements, they own and registered the Subject Musical Works.

Second, a copyright registration is *prima facie* evidence of the validity of a copyright and the facts stated therein. 17 U.S.C. § 410(a-c); *Code Revision Comm'n for Gen. Assembly of Georgia v. Public.Resource.Org, Inc.*, 906 F.3d 1229, 1236 (11th Cir. 2018) (as there was no dispute that the plaintiff, the state of Georgia, had a registered copyright, the burden of proof on whether the copyright was valid shifted to the defendant); *Latimer*, 601 F.3d at 1233 (Plaintiff produced a copyright registration and benefitted from the rebuttable presumption that the copyright

is valid).  Plaintiff argues that each of the copyright registrations of the Subject Musical Works list it as the owner, and therefore, under 17 U.S.C. § 501(b), they own the Subject Musical Works and have standing to sue for infringement of same.

Third, a "certificate of registration . . . is not conclusive on the copyright ownership issue" because the statutory presumption is "rebuttable," and to "rebut the presumption of validity, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."  *Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc.*, 549 Fed. Appx. 913 (11th Cir. 2013); *see also Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149 (2d Cir. 2003) (registration "creates no irrebuttable presumption of copyright validity" but merely "orders the burdens of proof" so that "where other evidence in the record casts doubt on the question, validity will not be assumed").  Defendants make several arguments challenging the copyright registrations and argue that the burden has shifted back to Plaintiffs and that Plaintiffs have failed to show that they own the Subject Musical Works.  Before discussing whether Defendants have shifted the burden of proof back to Plaintiffs, the Court begins by reviewing the copyright registrations for each of the subject works in order to determine, as an initial matter, whether Plaintiffs have a *prima facie* case that they own the Subject Musical Works.

### A.  Plaintiffs Can Only Bring Suit As To Four Of The Subject Musical Works.

Three of the copyright registration certificates list Plaintiff MSI as the claimant—"The Party Has Begun," "Lookout Weekend," and "Fix it in the Mix."  ECF No. [167-16] at 5–7, 21– 26.  Plaintiffs argue that upon administrative dissolution of MSI, the ownership interest in the Subject Musical Works held by virtue of the copyright registration certificates was transferred by operation of law to Nealy, who was the sole shareholder.  ECF No. [175] at 12.  However, MSI was reinstated as a Florida corporation in 2018.  ECF No. [176] ¶ 14 n.6.  Upon the reinstatement

of a corporation, following administrative dissolution, "the reinstatement relates back as if the dissolution never occurred." *Allstate Ins. Co. v. Levesque*, 2010 U.S. Dist. LEXIS 147353, at *9 (M.D. Fla. Nov. 9, 2010) (citing Fla. Stat. § 607.1422(3)).  Defendants argue that reinstatement fully and retroactively restores a corporation as if it was never dissolved, and therefore, Nealy has no basis for claiming that he has an interest the Subject Musical Works as the interest belongs to MSI.  ECF No. [182] at 10–11.  The Court agrees and finds that the copyright registrations show that MSI is the claimant, MSI has been reinstated and so the interest in these three musical works belongs with MSI.  Accordingly, the copyright registrations are *prima facie* evidence that Plaintiff MSI (not Nealy) owns these three works.

For "Freestyle Express," the copyright registration lists the claimant as In the Mix, Incorporated ("In the Mix").  ECF No. [167-16] at 12–14.  It is undisputed that Nealy was the president, sole owner and shareholder of In the Mix, a Florida corporation which was administratively dissolved in 1984.  ECF No. [176] ¶ 2.  Upon the dissolution of In the Mix, Inc., Plaintiffs make the argument that the asset of the copyright, belonging to In the Mix, Inc., passed to Nealy by operation of law.  ECF No. [175] at 11-12; *see Wilmington Sav. Fund Soc'y v. Good Samaritan Fund, Inc.*, Civil Action No. 2:15-cv-00211-WCO-JCF, 2017 U.S. Dist. LEXIS 222970, at *20–21.  The undersigned agrees.

Prior to the 1989 amendments to the Corporations Chapter of the Florida Statutes, Section 607.301 of the Florida Statutes provided that "[t]he directors of the corporation at the time of its dissolution shall thereafter be and constitute a board of trustees for any property owned or acquired by the dissolved corporation."  *See Gould v. Brick,* 358 F.2d 437, 439 (5th Cir.1966) ("[I]n Florida the statutory trustees take title to corporate property upon the dissolution of the corporation, and are charged with the fiduciary duties imposed upon them by the statutes, with the right to sue and

subject to being sued, *Trueman Fertilizer Co. v. Allison,* Fla., 81 So.2d 734.").  Therefore, at the time of the administrative dissolution, the assets of In the Mix, Inc. transferred to Nealy by operation of law.  As such, the Court finds that the copyright registration is *prima facie* evidence that Nealy owns this work.  *See* 17 U.S.C. § 410(c) (stating that "the certificate of registration . . . shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate.").

For the remaining four musical works—"Jam the Box," "I Know You Love Me," "Computer Language," and "When I Hear Music"—the claimants listed on the copyright registration certificates are neither MSI nor Nealy.  Indeed, the claimants listed are entities for which there is no evidence in this record to support a finding that Plaintiffs have an ownership interest.  ECF No. [167-16] at 2–4, 9–11, 15–20.  Specifically, for "Jam the Box," "I Know You Love Me," and "When I Hear Music," the claimant is listed as MSP.  ECF No. [167-16] at 2–4, 15–20.  The copyright claimant for "Computer Language" is "Happy Stepchild Music Publ. Corp" and MSP.  ECF No. [167-16] at 9–11.

As Defendants point out, Plaintiffs have only "vaguely plead" that MSP is affiliated with MSI.  ECF No. [165] at 19–20.  Indeed, although Plaintiffs state that MSI has always been affiliated with MSP, as MSP was created to administer the publishing rights to compositions owned by MSI, ECF No. [176] ¶ 3, there is nothing in the record that supports that allegation.

Plaintiffs, in response, only point to the record label imprints for two songs.  ECF No. [184] at 18–19.  Specifically, for "Computer Language" and "When I Hear Music," the label imprints on the record state that the songs were "recorded at MSI Studios."  ECF No. [176-9] at 4, 6.  However, that neither shows that MSP is affiliated with MSI or Nealy, nor does is it suffice to

prove that MSI or Nealy have any standing to sue on MSP's behalf. Given that, there is nothing in the record to support a finding that either Plaintiff has standing to sue on behalf of MSP.

Likewise, for Happy Stepchild Music Publ. Corp., listed as a co-claimant along with MSP for the song "Computer Language," there is no evidence in the record that either MSI or Nealy have any authority to bring suit on its behalf. As such, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** as to "Jam the Box," "I Know You Love Me," "Computer Language," and "When I Hear Music." On this record there is no evidence that Plaintiffs own these works. Therefore, they have no standing to bring an infringement action as to these songs.

The Court now considers whether summary judgment can be entered on the issue of ownership as to "The Party Has Begun," "Lookout Weekend," "Fix it in the Mix,." and Freestyle Express" (the "Remaining Subject Musical Works").

### B.  Defendants Have Rebutted The Presumption of Ownership Afforded to the Copyright Registration Certificates.

It is undisputed that Plaintiffs were not the authors of these Remaining Subject Musical Works. Therefore, and as discussed above, ownership of the Remaining Subject Musical Works could only have been transferred to them by a written document. Plaintiffs contend that although they no longer have copies of those assignments or contracts, the copyright registrations themselves note that they are the claimants (by way of written assignment or because the works were "for hire") and therefore they are the owners of the Remaining Subject Musical Works for purposes of asserting this infringement claim. Plaintiffs contend that these copyright registration certificates are *prima facie* evidence of their ownership. They are correct, at least as to the Remaining Subject Musical Works, that the copyright registration certificates show them as claimants and serve as *prima facie* evidence that they own the works. However, the inquiry does

not end there, as the certificates are not definitive proof but simply set the presumption with them in the first instance.

Indeed, as previously noted, to "rebut the presumption of validity [of a registration] an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's *prima facie* case of infringement." *Progressive Lighting*, 549 Fed. Appx. at 919 (the Eleventh Circuit held that the defendants "rebutted the presumption of validity by offering evidence showing, *inter alia,* that the works whose copyrightability is at issue were useful articles that did not contain separable copyrightable elements"); *Dellacasa, LLC v. John Moriarty & Assoc. of Fla., Inc.*, 2008 WL 299024, at *14–15 (S.D. Fla. 2008) (defendants rebutted the presumption of validity of the copyright that plaintiff was the owner of registered shop drawings by pointing to the language in the underlying general contract purportedly transferring ownership and the actual actions of the parties); *see also Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149 (2d Cir. 2003) (although the "Hogarths contend that the registrations for the [subject works] . . . created a presumption that Burne Hogarth was the author" as stated on the early registrations, defendant overcame the presumption with evidence, including an agreement from 1970, that Hogarth created work for hire).  Specifically, a copyright registration's presumption of validity can be rebutted: (1) when the copyright challenger provides evidence that the copyright registration holder did not timely register the copyright, 17 U.S.C. § 410(c); (2) when the copyright challenger provides evidence that the copyright registration holder is not the author of the work and has not been transferred the work by way of written assignment, *Arthur Rutenberg Homes, Inc. v. Berger*, 910 F. Supp. 603, 605 (M.D. Fla. 1995); (3) when the copyright challenger provides evidence that fraud has been committed on the copyright office, *see Robbins v. Artis--Usher*, No. CV411-193, 2011 WL 5840257, at *3 n.4 (S.D. Ga. Aug. 29, 2011); and (4) when the copyright challenger

provides evidence that the copyright registration holder has already transferred the copyrights, *Roberts v. Gordy*, 359 F. Supp. 3d 1231, 1239–40 (S.D. Fla. 2019).  Defendants argue that they have presented evidence challenging that the validity of the copyright registrations, specifically, challenging that they were transferred by way of written agreement to Plaintiffs, and as such, Plaintiffs now bear the burden of proof that they are the owners, a burden that they argue Plaintiffs cannot meet.

With the testimony of Butler conspicuously absent from the record, Defendants make several arguments and point to several different pieces of documentary and third-party evidence to argue that the presumption has shifted back to Plaintiffs to show that they own the Remaining Subject Musical Works.  ECF No. [166] at 19–26.  Defendants argue that there are competing copyright registrations for some of the works at issue and that various claims of ownership were made in prior litigation between other parties as to these musical works.  *Id.* at 20.  For example, they point to evidence that from 1989 to 1992, two companies wholly owned by Butler, Captain Productions, Inc. and C-Tan Music, transferred rights in various works claimed by Plaintiffs, including many of the works at issue in this case, to Pandisc and Whooping Crane.  *Id.* at 21; *see* ECF No. [167-5].  They also point to the fact that Baker, the Plaintiffs' own 30(b)(6) deposition witness, signed an agreement in another case that acknowledged that Butler was the sole author and co-owner with Whooping Crane of six of the musical works in this litigation.  ECF No. [166] at 21; *see* ECF No. [167-19].  Defendants point out that Butler has claimed to represent MSI in the past, casting doubt on whether Plaintiffs even control MSI as they say.  ECF No. [166] at 21.  They also review the history of prior suits among different parties where different statements as to the ownership of the songs were made.  *Id.*

The undersigned finds these reasons unpersuasive because they all, at their core, relate to Butler assigning rights that, under Plaintiffs' theory, he had already assigned to them either by agreement or because he was an employee for hire for MSI.  Allowing this evidence to rebut the presumption would render the presumption afforded copyright registrations meaningless because the nefarious actions of someone fraudulently selling rights could strip the proper owner of the presumption afforded by the registration itself.

However, Defendants' argument that the statements of some of Plaintiffs' witnesses, including Nealy, are sufficient to shift the presumption of validity is well taken, especially in the absence of any of the written agreements between Plaintiffs and the author of the songs, Butler. *See* ECF No. [166] at 21–26.  The undersigned finds that the testimony of Black, a consultant for MSI who was hired to setup MSI's publishing, including preparing copyright registrations, is more than sufficient to shift the burden back to Plaintiffs to prove that they own the Remaining Subject Musical Works.  *See* ECF No. [176-5] at 6–7.  Nealy testified in his deposition that Black would have prepared the agreements with the songwriters:

> Q: Are you aware of any written agreement between Music Specialist Inc. and Freestyle?
>
> A: Jonathan Black was handling agreements like that.
>
> Q: So if there were any agreements, Jonathan Black would know about them.
>
> A: Yes, he would know about them.

ECF No. [176-15] at 33.  During his deposition, however, Black stated that he did not prepare or personally sign the copyright registrations and did not prepare any corresponding agreement for Butler by which Butler assigned any of his rights. ECF Nos. [166] at 25–26; [167-3] at 4–8, 10–12, 16–17.  Specifically, during his deposition Black was shown the copyright registration for "Fix It In The Mix."  ECF No. [176-5] at 14.  Counsel pointed out that the copyright registration lists

Music Specialist Inc.'s address in New York.  Black stated that he did not prepare that copyright registration because he would not have completed any registration where MSI's address was listed in New York.  *Id.*  Black was shown the copyright registration for "Freestyle Express."  ECF No. [167-3] at 7–8.  He testified that "Freestyle Express was released prior to [his] coming to Music Specialist" and affirmed that he did not prepare that copyright registration.  *Id.* at 8.  Black was also asked about the song "Lookout Weekend."  ECF No. [167-3] at 10.  Black initially stated: "I don't believe that I did Lookout Weekend" and that he thought it was done before his time.  *Id.* at 11.  However, when he was shown the copyright registration and realized that it was a handwritten application, he confirmed he did not prepare that one because he "never" handwrote them.  *Id.* Finally, Black was then asked about the song "The Party Has Begun."  ECF No. [167-3] at 11–12.  He was shown the copyright registration, which was handwritten, and he responded: "not mine." *Id.* at 12.  Further, Black testified that if he did not prepare the copyright registration for a song, he also would not have prepared the songwriter agreement.  ECF No. [167-3] at 17.  Therefore, Black's testimony failed to show that he prepared or had knowledge of any of the songwriter agreements for any of the Remaining Subject Musical Works.

Of course, Black's testimony directly contradicted Nealy's deposition testimony that Black prepared all of the registrations in this case.  ECF No. [176-15] at 77.  Black's testimony casts doubt on the validity of the copyright registrations because it directly disputes the basis on which the copyright registrations were issued, namely, that Butler assigned his rights to Nealy or MSI by written agreement.  Defendants have rebutted the presumption and thus the burden shifts to Plaintiffs to prove that they are owners of the four Remaining Subject Musical Works at issue.

**C. The Issue Of Ownership As To The Remaining Subject Musical Works Is Not Subject To Summary Judgment.**

The Court must now consider what other evidence Plaintiffs present to meet their burden that they are the owners of the Remaining Subject Musical Works.  For certain, Plaintiffs still have the copyright registrations which evidence transfers by assignment or as work for hire.  ECF No. [176-10] (copyright registration for "The Party Has Begun" states it was transferred by assignment; copyright registration for "Lookout Weekend" states it was transferred by assignment; and copyright registration for "Freestyle Express" states it is "work made for hire").  Although they are no longer *prima facie* evidence, the Court would be hard pressed at this juncture to conclude that they are not evidence at all.

Second, Plaintiffs have the testimony of Nealy who testified that MSI had agreements with Butler.  Although his testimony certainly lacks clarity, he testified that during the relevant time period there were songwriter agreements with Butler whereby Butler would have given MSI ownership of Butler's songs.  ECF No. [176-15] at 41.  Nealy also testified with respect to "Fix It In The Mix," that he was the "executive producer" who funded the records and that Butler worked for hire for Music Specialist as an engineer.  *Id.* at 39.  Finally, Plaintiffs offered up the testimony of another songwriter, Baker, who recalled having signed songwriter agreements with MSI.  ECF No. [176-4] at 4–5.

To be sure, the evidence proffered by Plaintiffs in support of their claim is thin.  However, the standard the Court must use is whether there is more than "[a] mere 'scintilla' of evidence supporting the opposing party's position."  *Walker v. Darby*, 911 F. 2d 1573, 1577 (11th Cir. 1990) (quoting *Liberty Lobby*, 477 U.S. at 252).  Here, a jury could find Nealy's testimony credible and that the copyright registrations themselves are sufficient evidence to find that Plaintiffs own the works.  For the Court to make that determination now would necessitate that the Court make

32

credibility determinations as to Nealy's testimony, which is a task that falls to the jury. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Liberty Lobby*, 477 U.S. at 255. Given the existence of the copyright registrations and the testimony of Nealy, this Court cannot say that a rational trier of fact would be unable to find in favor of Plaintiffs or in favor of Defendants. The issue of ownership, as it sits here, is one for the jury and one that Plaintiff will have the burden of establishing.

As to whether "The Party Has Begun," "Lookout Weekend," and "Freestyle Express" were made for hire pursuant to 17 U.S.C. § 101, the Court finds that based on the record before it and the arguments submitted, summary judgment would not be appropriate. Defendants state that none of these works are for hire because Butler did not create any within the scope of his employment, as Nealy testified that Butler was not a songwriter. ECF No. [166] at 26–27; *see* ECF No. [176-15] at 49. Plaintiffs counter by relying on the copyright registrations which, on their face, state that the work was completed for hire. ECF No. [184] at 30; *see* ECF No. [176-10] at 2, 8, 17. Furthermore, Plaintiffs argue that the works were within Butler's scope of employment. ECF No. [184] at 31. Any statement by Nealy that Butler was not a songwriter was due to Nealy's "misunderstanding of the term 'songwriter.'" *Id.* Although Plaintiffs cannot rely on the "work for hire" designation on the copyright registrations alone as proof, Nealy's testimony, if believed, in conjunction with the copyright registrations could be enough for the jury.

Finally, Defendants' argument that Butler is, at a minimum, a co-owner of the musical works and that this serves as a complete defense to infringement because co-owners have "an independent right to use or license the use of a duty," is unpersuasive given the procedural posture

of the case.  ECF No. [166] at 28; *see Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1258 at n.2 (11th Cir. 2014).  Defendants point to Plaintiffs' interrogatory responses as evidence that Butler has co-ownership of some of the copyrights.  ECF No. [166] at 29.  Plaintiffs respond that for "The Party Has Begun," "Lookout Weekend," and "Freestyle Express," Butler was not a co-owner because he worked "for hire."  ECF No. [184] at 30–32.

Given the Court's finding above, the Court cannot conclude that the issue can be decided on summary judgment.  In regard to "Fix It In The Mix," Plaintiffs state that both Butler and Nealy maintained a writer's share, or beneficial ownership, of 25% that entitled them only to royalties, but not to legal title to the copyright.  ECF No. [184] at 32–33; *see Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (songwriter who assigns copyright ownership in exchange for royalties is beneficial owners of copyright).  Indeed, Plaintiffs' Amended Interrogatories state that the remaining 50% of ownership was the "publisher's share" held by MSI.  *See* ECF No. 167-22 at 11.  Plaintiffs then argue that the royalty statements received by Nealy from his own 25% writer's share of "Fix It In The Mix" are the same amount of royalties Butler would have received for his equal 25% writer's share.  *Id.* at 33; *see* ECF No. [167-17].  Plaintiffs state that this beneficial ownership, or *writer's share*, is distinct from the *publisher's share* held by MSI, which entitled it—not Nealy or Butler individually—to control the copyright. ECF No. [184] at 33–34.  In the absence of agreements, the Court is again left with Nealy's testimony to evaluate in order to determine whether Defendants claim is correct.  Because doing so would require the Court to make credibility findings, the Court cannot grant summary judgment based on this argument.

**D.  Plaintiffs' Claim Is Not Barred, At This Stage, By The Statute Of Limitations.**

The relevant statute of limitations is set by 17 U.S.C. § 507(b) which states that "no civil action shall be maintained under the provisions of this title unless it is commenced within three

years after the acclaim accrued."  Plaintiffs sued Defendants for infringement on December 28, 2018, and so the date for limitations purposes is December 28, 2015.  Plaintiffs claim that although Defendants were openly exploiting their works since 2008, they only discovered that Defendants were infringing on their copyright within three years of December 2018.  ECF No. [184] at 36–47. Plaintiffs also argue that the Court should adopt the "discovery rule" and consider that the instant claim accrued on the date that Plaintiffs knew or should have known that Defendants were infringing on their rights and not on the date that Defendants infringed.  ECF Nos. [175] at 13–15; [184] at 47–50.

Defendants argue that because the gravamen of the case sounds in ownership, as opposed to infringement, the statute of limitations accrues only once, when Plaintiffs knew or should have known their ownership rights were being violated.  ECF No. [166] at 30–35.  Defendants argue that Plaintiffs knew or should have known that their ownership was being challenged at least as far back as mid-2008 when Nealy met with Crane about Crane's use of the MSI catalogue, and that as such, their present suit filed many years later is clearly time-barred.  *Id.* at 35–45.

As an initial matter, the Court needs to consider whether the case at hand is one of ownership or one of infringement.  Specifically, if the action is one sounding in infringement, the claim accrues each time the infringing work is distributed, and each distribution creates a new wrong and gives rise to a discrete claim which start anew the limitations period.  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014).  Whether the discovery rule, using when the plaintiff knew or should have known of the infringement applies, has not been considered by the Eleventh Circuit but, as discussed below, is not at issue here.  *Sieger Suarez Architectural Partnership, Inc. v. Arquitectonic Intern. Corp.*, 998 F. Supp. 2d 1340, 1354–55 (S.D. Fla. 2014) (noting that the better practice is to use the discovery rule for infringement actions).  However, if

35

the matter is one sounding in ownership, the claim only accrues once, at the time the plaintiff learns or should have learned that the defendant was violating his ownership rights. *Webster v. Dean Guitars*, 955 F.3d 1270, 1276–77 (11th Cir. 2020).

Defendants heavily rely on the Eleventh Circuit's recent opinion in *Webster*. There, the plaintiff filed its action in 2017 claiming that Dean Guitars had produced and sold replications of guitars containing the lightning storm graphic without the plaintiff's consent and without payment of royalties for using the design. *Webster*, 955 F.3d at 1272. Both parties agreed that Dean Guitars reproduced the graphic on several guitar models without Webster's permission, leaving ownership the only disputed issue in the case. *Id*. at 1276. The Eleventh Circuit, in affirming summary judgment in the defendants' favor, agreed that the case concerned copyright ownership not infringement as the main argument advanced by the plaintiff was that he owned the image at issue and that the defendant had clearly and expressly repudiated the claim of ownership. *Id.* at 1276. The Eleventh Circuit held that because the plaintiff had reason to know his ownership rights were being violated in 2004 when he first learned that Dean was reproducing the subject guitar or even in 2007 when the owner of Dean Guitars sent an email to the plaintiff saying that another party was the  legal owner of the lightning storm graphic, the claim started accruing then and accrued only once and not each time the graphic was replicated. *Webster*, 955 F.3d at 1276. Given those facts, the Circuit Court concluded that the three-year statute of limitation period had expired well before the plaintiff brought his copyright action in 2017 thus barring the plaintiff from any relief. *Id.* at 1277.

The Court agrees that the case here, as was the case in *Webster,* is one of ownership, not infringement. Like *Webster*, there is no dispute that Defendants are infringing, the issue is whether Plaintiffs own the works. Like the plaintiffs in *Webster*, Plaintiffs' main argument is that they own

36

the Remaining Subject Musical Works.  Like the defendants in *Webster*, Defendants claim that Plaintiffs do not own the works, and that their right to use the works derives from the true owner of the work.  The issue now turns on *when* Plaintiffs knew or should have known that Defendants were challenging their ownership to the Remaining Subject Musical Works.  Given the procedural posture of the case, in order for Defendants to succeed on summary judgment, they must be able to prove, by undisputed facts and with all reasonable inferences and reasonable doubts drawn in favor of Nealy, that Nealy was aware of, or that a reasonable person in Nealy's position should have been aware of Defendants' infringements prior to December 28, 2015.  *Habersham Plantation Corp. v. Molyneux*, No. 10-61526-CIV-DIMITROULEAS, 2011 U.S. Dist. LEXIS 117511, at *14–16 (S.D. Fla. Aug. 19, 2011) (denying defendants' partial summary judgment as to whether three-year statute of limitations of the Copyright Act barred plaintiff's copyright infringement claims because Defendant could not "demonstrate, by undisputed facts, that Plaintiff 'knew or reasonably should have known' of those acts of infringement occurring more than three years before the lawsuit was filed").  The Court finds that this is a burden that Defendants cannot meet on this record.

The first possible notice to Nealy, according to Defendants, was the meeting Nealy had with Crane.  ECF No. [166] at 38–41.  Based on his testimony, Nealy knew that Crane and his companies, were using the MSI catalog as early as June 2008.  At his ten-minute meeting with Crane in June 2008, Nealy testified that he was aware that the MSI catalog was being distributed.  ECF No. [176-15] at 19.  Nealy remembered talking to Crane "concerning whatever they was doing with any music that Music Specialist owned" and "letting them know that I was home and they had my music." *Id.* at 20–21.  At his deposition, Nealy was asked if he knew Pandisc was distributing his songs and music.  *Id.* at 21.  He responded, "I heard they had possession and they

were utilizing it." *Id.* There is no evidence on the record, or from Nealy's deposition, that Crane or Butler were challenging Nealy's ownership of the copyrights in question. When Nealy was asked at his deposition whether he ever provided Crane or his lawyers "any proof that either [he] or [MSI] were the owners of the songs and records [Pandisc] was distributing," Nealy stated that he never provided anything because "[he] was just coming home [after his first incarceration] and [he] didn't know what was going on." *Id.* at 21–22. Finally, Nealy was asked what if anything he did from that 2009 meeting up until Nealy's second incarceration in 2012. *Id.* at 22. Nealy responded, "I wasn't in no position to do anything" and that "[he] didn't know what to do." *Id.*

The Court finds that the meeting with Crane does not go to the issue at hand–when Plaintiffs knew that *Defendants* were challenging his ownership rights. To be sure, Nealy might have a difficult time pursuing an infringement claim suit against Crane on this record. However, the Crane meeting would not have provided Nealy with any notice that these Defendants were challenging his ownership interest. Indeed, in *Webster*, the plaintiff had reason to know that the defendants were challenging his ownership interest because the defendants plainly and expressly repudiated the plaintiff's ownership. 955 F.3d at 1275–77. Indeed, faced with the plaintiff's notice that their guitars were infringing with his ownerships interest, the defendants' response was not that they were not infringing but that the plaintiff was not the owner of the design. A finding that Crane's challenge to Plaintiffs' ownership interest, (assuming that in fact that was the gravamen of the meeting) bars Plaintiffs from asserting their ownership interest as to *these* Defendants is not supported by the decision in *Webster*.

Defendants argue that there are other facts that show that Plaintiffs knew or had reason to know that Defendants were using their works. They argue that: (1) there were at least five other lawsuits encompassing the musical works at issue; (2) Nealy intervened in 2017 in an ongoing

litigation, *Baker v. Warner/Chappell Music, Inc.*, 14-22403, 2017 WL 45772247, *4–6, n.7 (S.D. Fla. Oct. 12, 2017); (3) Nealy's allegedly infringed work was widely disseminated so he should have known of the infringement based on its commercial success; (4) Nealy received several royalty checks, associated with performances of the composition "Fix It In The Mix" which should have put him on notice of infringement; (5) one of those royalty statements specifically identified Warner as the administrator of the song "Fix It In The Mix;" and (6) the failure to receive royalties on any of the other songs despite their widespread dissemination.  ECF No. [166] at 37–45.

Nealy responds that none of these facts indicate that Nealy knew of Defendants' challenge to their ownership interest prior to December 28, 2015.  ECF No. [184] at 36–47.  Regarding the five other lawsuits encompassing the works at issue, Nealy states that these did not serve to put him on notice of any potential infringement because he was in jail most of the time.  *Id.* at 41–42. Although MSI was included in a 2006 case, Nealy was in prison.  *Id.* at 41.  Additionally, neither MSI nor Nealy were notified or joined as a party to the 2009 federal case, the 2010 state case, the 2014 federal or state cases.  *Id.* at 42.  Indeed, after learning of the litigations in January 2016, it was then that Nealy took action and appeared in the still ongoing 2006 state case and moved to intervene in the 2014 federal case.  *Id.* at 41–42.  Plaintiffs also state that even though some of the Remaining Subject Musical Works were widely disseminated, this does not by itself evidence Nealy's knowledge of the infringement.  *Id.* at 44.  As to the BMI royalty checks associated with performances of the composition "Fix It In The Mix" and indicating that Warner was an administrator of the song, Plaintiffs explain that he "disregarded" these royalty statements.  *Id.* at 45.  Additionally, Nealy states that he did not even receive the royalty statement, dated September 18, 2015 showing Warner as the administrator until later, as it was sent to an old address.  *Id.*

Plaintiffs also argue that the fact that he was *not* receiving royalties, despite the widespread dissemination is also insufficient on its own to put Nealy on notice of infringement. *Id.* at 46–47.

Moreover, when Nealy was asked when "did [he] first become aware that Tony Butler was involved in licensing music to any of the [D]efendants in this case," he responded, "probably 2015" but did not specify when in 2015. ECF No. [176-15] at 37. When asked how he became aware, he explained that "[he] went to the state court and they were speaking about the litigation, what was going on concerning this case in the state court. And that's when [he] contact[ed] a couple of lawyers to help [him] out with this matter." *Id.* Nealy explained he was "trying to find out who [had] the music and who [was making] the money off it, so I went after them." *Id.* Nealy also maintains that he did not even hear the popular song "In the Ayer" which was an alleged interpolation of "Jam the Box," until 2015 or 2016, when it became part of this lawsuit and was played to him by Byron Smith. ECF No. [176-15] at 69. Indeed, he says he does not listen to music anymore. *Id.*

Although Defendants state that Nealy's incarceration cannot excuse his delay, Defendants cite to two inapplicable cases—*Paulcin v. McDonough*, 259 F. App'x 211, 213 (11th Cir. 2007) and *McComb v. Jones*, No. 16-61104, 2017 WL 2380285, at *3 (S.D. Fla. May 8, 2017)—which deal with prisoners seeking to toll the statute of limitations on appeals of their convictions. As articulated in *Sieger*, the "statute of limitations begins to run when Plaintiff learned of or . . . should have learned" of the infringement; and, "should have learned" involves considering "a reasonably prudent person in Plaintiff's position." 998 F. Supp. 2d at 1354–55 (citing *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008); *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). As such, even if the Court were to consider that the facts are undisputed as to this issue, a finding that does not appear possible on this record, reasonable minds could differ on the

inferences arising from undisputed facts, namely whether Nealy had reason to know that Defendants were infringing.  *See Miranda*, 975 F.2d at 1534.[6]  Moreover, in order to determine when Plaintiff knew or should have known that Defendants were challenging their ownership rights, the Court must make credibility determinations, particularly Nealy's testimony.  As such, summary judgment should be **DENIED**.

## VI.    ORDER AND RECOMMENDATION

For the reasons noted above, the undersigned hereby:

> **ORDERS** that Defendants' Motions to Strike Plaintiffs' Response to Defendants' Statement of Material Facts, ECF No. [193], be **DENIED**;

> **ORDERS** that Defendants' Motions to Strike the following Affidavits of Stevens, Knox and Baker, ECF No. [194], be **GRANTED**;

> **RECOMMENDS** that Defendant's Motion for Summary Judgment, ECF No. [166], be **GRANTED IN PART AND DENIED IN PART**; and

> **RECOMMENDS** that Plaintiff's Motion for Partial Summary Judgment, ECF No. [175], be **DENIED**.

## VII.   OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within FOURTEEN (14) DAYS of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this

---

[6] Plaintiffs conflate the issue of when an action accrues, the discovery rule, and how far back they can seek damages.  Although an action, sounding in ownership or infringement, accrues when a plaintiff knew or should have known that their rights were being infringed, their damages are limited to the three-year period before they filed suit even if the infringement went further back than the three-year period.  *Petrella*, 572 U.S. at 672.  Although this issue was reviewed by the undersigned when considering the scope of discovery, the undersigned made clear that the standard for discovery was certainly lower, broader and different than what the Court must consider now. Based on the parties briefing of the issue and the Court's consideration of *Petrella*, the damages available to Plaintiffs are capped to the three-year statutory limit.

Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 8th day of March, 2021.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**