UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 18-25474-CIV-RUIZ

MUSIC SPECIALIST, INC., a Florida Corporation,
and SHERMAN NEALY, an individual,

      Plaintiffs,

v.

WARNER CHAPPELL MUSIC, INC.,
et al.,

      Defendants.

_____/

## DEFENDANTS' MOTION *IN LIMINE*

      Defendants Warner Chappell Music, Inc. ("Warner Chappell") and Artist Publishing Group, LLC ("APG") (collectively, "Defendants") by and through undersigned counsel, submit this Motion *in Limine*.

      Motions *in limine* are intended "to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial, as well as to focus the issues to be considered by the jury." *Lensing v. Potter*, No. 03-575, 2010 WL 2670785, at *1 (W.D. Mich. July 1, 2010). Such motions further "permit the pre-trial resolution of evidentiary disputes without presenting potentially prejudicial evidence in front of a jury . . . avoid[ing] the need to 'unring the bell.'" *Miltiadis v. M/Y LUCKY STAR*, No. 16-62030, 2017 WL 2895920, at *1 (S.D. Fla. Mar. 29, 2017).

      Defendants bring this Motion *in Limine* pursuant to several critical evidentiary principles that must guide the fair and efficient conduct of trial in this case. Federal Rule of Evidence 401 provides:

**Rule 401. Test for Relevant Evidence.**  Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Federal Rule of Evidence 403 provides:

**Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time or Other Reasons.**  The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Based on the parties' pre-trial filings and discussions regarding evidentiary matters, it appears that plaintiffs Music Specialist, Inc. ("MSI") and Sherman Nealy ("Nealy," and together with MSI, "Plaintiffs") will seek at trial to refer to extraneous matters or introduce evidence which is either irrelevant or which offers minimal probative value that is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  "Motions *in limine* allow the trial judge to eliminate from consideration evidence that should not be presented to the jury because it would not be admissible for any purpose," and such motions "may also be used to prevent a jury from exposure to prejudicial evidence."  *Lensing v. Potter, supra,* at *1.

Defendants note that in meeting and conferring with Plaintiffs in advance of this motion, the parties were able to eliminate certain evidentiary disputes, as reflected in the Stipulation on Evidentiary Issues filed herein.  (DE 231).  However, a number of key disputes remain and necessitate the instant Motion *in Limine*.  Defendants further note that they make this motion in light of the case's current status, including the dismissal of claims as to certain musical compositions.[1]  Those compositions include "The Party Has Begun," "Lookout Weekend," and a derivative work based on "Lookout Weekend" entitled "Weekends" (collectively, the "Compositions at Issue").  Defendants reserve the right to seek additional relief as to evidentiary

---

[1] There are no sound recordings at issue in this case, only musical compositions.

2

issues that may result from any further rulings by the Court or other circumstances that require further application to the Court.  With those qualifications, Defendants file this Motion *in Limine* to prohibit any reference to, or introduction of, evidence regarding the following matters.

**IN LIMINE ISSUE NO. 1.**  Plaintiffs should be precluded from presenting any evidence of damages against APG, because they failed to provide any calculations of damages sought from APG in their initial and expert disclosures despite the requirements of the Federal Rules of Civil Procedure.  This failure not only violates the initial and expert disclosure requirement of F.R.C.P. 26, but also contradicts Plaintiffs' express assurances to provide such information.  As detailed in APG's *Daubert* Motion, filed simultaneously herewith, Plaintiffs never provided any computation of damages in their initial disclosures as to any of the Defendants, but instead stated that they would present such calculations through an expert report to be produced in accordance with the schedule for expert disclosures:

> MSI intends to rely on the opinions of a qualified damages expert and will disclose a computation of damages at the time of expert disclosures.  MSI reserves the right to supplement its disclosure as its investigation continues.

Plaintiffs' Initial Disclosures and Amended Initial Disclosures, DE 97.

However, when Plaintiffs' damages expert, John Menneci, rendered his reports on September 11, 2020, he only rendered two reports: one specifically addressed to Atlantic Recording Corporation, a defendant that was subsequently dismissed from the case on summary judgment; and one specifically addressed to Warner Chappell (the "Menneci Expert Report").[2] Menneci rendered no report or any opinion on damages APG would owe if it were to be found liable.  In an attempt to remedy the omitted damages calculation, Plaintiffs' counsel sent an email on September 10, 2020 indicating that the report entitled "Warner Chappell Report" also

---

[2] Warner Chappell is simultaneously filing a *Daubert* motion with respect to the Menneci Expert Report and will file a copy of the Menneci Expert Report as an exhibit attached thereto for the Court's reference.

#51248521 v1

"applies to APG as well."  Yet, nowhere in the Menneci Expert Report is there any calculation of damages against APG.

As numerous courts have held in excluding the recovery of certain categories of damages, Plaintiffs cannot violate the disclosure requirements of F.R.C.P. 26 and then seek such damages at trial.  *Reese v. Herbert*, 527 F. 3d 1253, 1266 (11th Cir. 2008) ("compliance with the requirements of Rule 26 is not merely aspirational").  *See also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

The burden of establishing that a failure to disclose the matters required by Rule 26 was substantially justified or harmless rests with the non-disclosing party.  *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009) (per curiam).  *See, e.g.*, *Vivint, Inc. v. NorthStar Alarm Servs., LLC*, No. 16-00106, 2019 WL 1098986, at *11 (D. Utah Mar. 8, 2019) (party "cannot avoid the requirements of Fed. R. Civ. P. 26" after stating that it would provide an expert to calculate damages and failing "to offer any other means of computing its damages"); *In re Mirabilis Ventures, Inc.*, 2011 WL 3236027, at *5 (M.D. Fla. July 28, 2011) (granting motion *in limine* to exclude evidence of damages where party "fails to properly identify a category of damages or to provide the calculations underlying it").  Accordingly, because Plaintiffs cannot establish that their failure to provide a calculation of damages sought against APG is justified or harmless, the Court should grant Defendants' Motion *in Limine* on Issue No. 1 and preclude Plaintiffs from presenting any evidence of damages against APG at trial.

**IN LIMINE ISSUE NO. 2.**  Plaintiffs should be precluded from presenting evidence of foreign licensing income earned outside the United States, which is not recoverable under the

Copyright Act.  As explained in Warner Chappell's *Daubert* Motion, filed simultaneously herewith, Plaintiffs' damages expert intends to testify as to Defendants' profits earned outside of the United States from licenses granted by Defendants' employees residing in the United States. However, profits earned outside of the United States, even if resulting from licenses granted in the United States, are not recoverable under the Copyright Act.

The law is clear in this regard.  There is no extraterritorial reach of the U.S. Copyright Act.  Therefore, a defendant in a copyright infringement action is not responsible for monies earned abroad, even where the allegedly infringing act consists of licensing activity that occurred in the United States.  The seminal case establishing this principle is *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088 (9th Cir. 1994), which held that authorization of acts of infringement that occurred outside the United States are not actionable.  *Subafilms* is followed in this jurisdiction.  *See, e.g.*, *Frida Kahlo Corp. v. Tupperware Corp.*, No. 13-21039, 2014 WL 11880681, at *4 (S.D. Fla. Mar. 31, 2014) ("Federal copyright law has no extraterritorial effect and cannot be invoked to secure relief for acts of infringement occurring outside the United States," citing *Subafilms* and *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004)).  *See also* Defendant Warner Chappell's *Daubert* Motion, filed simultaneously herewith, at pp. 14-15.

Any testimony or argument that Defendants are liable for income earned from alleged infringement that occurred outside of the United States would be contrary to U.S. copyright law. Testimony and argument based upon incorrect legal principles are prejudicial and must be excluded.  *See, e.g.*, *Huawei Techs., Co, Ltd v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 964 n.21 (N.D. Cal. 2018) (opinions and testimony that "are based on incorrect legal assumptions or propose views that diverge from the actual law . . . may be excluded via motions *in limine*"); *Villalpando v. Exel Direct Inc.*, 161 F. Supp. 3d 873, 895 (N.D. Cal. 2016)

(addressing motions *in limine* and noting that "an expert's reliance on incorrect legal assumptions would warrant exclusion[.]").  Accordingly, the Court should grant Defendants' Motion *in Limine* on Issue No. 2 and preclude Plaintiffs from presenting evidence of foreign licensing income earned outside of the United States.

**IN LIMINE ISSUE NO. 3.**  Plaintiffs should be precluded from testifying that non-party Tony Butler ("Butler"), the author of the Compositions at Issue, committed fraud.

Given Plaintiffs' prior submissions in this case, Defendants believe that Plaintiffs will attempt to characterize Butler as a "fraudster" based on the state court judgment entered in a separate case between non-parties Pandisc Music Corp. ("Pandisc") and Butler (*see Pandisc et al. v. Butler et al.*, Case No. 10-59481 CA 08, Miami-Dade).  In that case, the court held that aspects of a settlement agreement resolving an earlier federal lawsuit between Pandisc, Butler, and Defendants in the instant case (the "Settlement Agreement") were deemed invalid based on "fraud *ab initio*" *as between Butler and Pandisc*.  However, the only identified misrepresentation in that case concerned whether Butler had entered into a sound recording distribution agreement with an unrelated third party in the United Kingdom – an agreement that has nothing to do with the Defendants or any issue to be tried in this case.  The plaintiffs' complaint in the state court case alleged:

> 12.  In order to induce Plaintiffs to execute the Settlement Agreement and agree to its terms, Butler and 321 Music represented that 321 Music had entered into a distribution agreement with Universal (UK), a major worldwide record distributor, regarding the master recordings for 20 certain songs which were the subject of the federal court action.

*See* DE 167-12, p. 4, ¶ 12.  There was no allegation that Defendants in the instant case had committed fraud in connection with the Settlement Agreement, or that Butler had made any misrepresentations to Defendants in the course of that settlement.  In other words, the state court

#51248521 v1

judgment may have impacted the Settlement Agreement in the federal case *vis-a-vis* Pandisc and Butler, but it had no effect as to non-parties to the state court action, including Defendants. Therefore, Plaintiffs' intention to use the state court judgment to impugn Butler's character is irrelevant and highly prejudicial.  *See e.g.*, *U.S. v. Flowers*, 664 Fed. Appx. 887, 888-89 (11th Cir. 2016) ("We doubt that the probative value of the judgment reflecting Flowers's prior unemployment-fraud conviction outweighs the substantial risk of undue prejudice"). Accordingly, the Court should grant Defendants' Motion *in Limine* on Issue No. 3 and preclude Plaintiffs from presenting evidence that non-party Butler is a "fraudster".

**IN LIMINE ISSUE NO. 4.**  Plaintiffs should be precluded from testifying that the financial documents they received from Warner Chappell and APG are deficient – an allegation contradicted by the Court's denial of Plaintiffs' motions to compel additional financial documents from Defendants.

In the course of discovery in this case, the Court denied Plaintiffs' request for financial information beyond the financial documents that were produced by Warner Chappell and APG. *See, e.g.*, DE 153, 154, 189.  Magistrate Judge Becerra conducted multiple hearings concerning the scope and sufficiency of Warner Chappell's and APG's productions of financial documents, and ruled that the productions were either sufficient or, in some instances, Plaintiffs' requests were untimely.  Having been unsuccessful in those discovery disputes, Plaintiffs should be precluded from testifying or arguing at trial that they were denied sufficient financial information or that APG and Warner Chappell withheld any financial information.

While Plaintiffs have indicated that they do not *intend* to raise this issue, Defendants request further clarity reduced to an order for trial so that Defendants are not prejudiced if Plaintiffs change their minds at trial.  Defendants believe such an order is necessary because,

*inter alia*, Plaintiffs' damages expert identified in his report numerous documents he failed to receive but that would have allegedly been necessary to render a proper report.  Some of those documents are those that Plaintiffs sought unsuccessfully to compel.  *See* Warner Chappell's *Daubert* Motion filed simultaneously herewith, and the Menneci Expert Report attached thereto. Plaintiffs' expert's accusations about not having received all of the financial information sought for his report is merely a "back door" way of resuscitating Plaintiffs' failed motions to compel and falsely suggesting to the jury that Defendants were not forthcoming in their financial disclosures.

Any efforts by Plaintiffs to reference their requests for additional financial information at trial would not only constitute an attempt to reargue their earlier failed motions to compel, but also would be highly prejudicial to Defendants.  Accordingly, the Court should grant Defendants' Motion *in Limine* on Issue No. 4 and exclude any testimony in the presence of the jury regarding the sufficiency of Defendants' production of financial documents, Plaintiffs' requests for additional documents or any commentary on the sufficiency of discovery.

**IN LIMINE ISSUE NO. 5.**  Plaintiffs should be precluded from presenting evidence or argument that Warner Chappell and APG are both "direct" infringers *and* "contributory" infringers based on the same conduct.

Plaintiffs have alleged that Warner Chappell and APG have directly infringed Plaintiffs' purported copyrights by granting third-party licenses for musical works that Plaintiffs claim to own.  Third Amended Complaint, DE 74, Count II.  In order to state a claim for copyright infringement, a plaintiff must allege that the defendant violated one of the exclusive rights of copyright ownership.  Pursuant to 17 U.S.C. § 106:

> the owner of copyright under this title has the <u>exclusive rights to do and to authorize</u> any of the following:

8

(1) to <u>reproduce</u> the copyrighted work in copies or phonorecords;
(2) to <u>prepare derivative works</u> based upon the copyrighted work;
(3) to <u>distribute</u> copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
**

17 U.S.C. § 106 (emphasis added).

The exclusive right Warner Chappell and APG are accused of infringing is the act of "authorizing others," via licenses, to reproduce, prepare derivative works, distribute, and perform the Compositions at Issue. However, Plaintiffs illogically claim that Warner Chappell and APG are also "contributory" infringers (Count III) based on the very same licensing activity. Contributory infringement is a form of "secondary liability" where a defendant is charged with knowingly and materially assisting or inducing a third party's direct infringement. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990). To prove contributory infringement, a copyright plaintiff must prove a third party's direct infringement as a precondition to proving secondary liability. *See, e.g., Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1298 n.11 (11th Cir. 2008) ("there can be no contributory infringement without a direct infringement") (citing *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 833, 889 (6th Cir. 2004)).

Plaintiffs' pleading for contributory infringement in Count III sets forth a myriad of possible "direct" infringers whom Warner Chappell and APG allegedly knowingly and materially assisted, including, *inter alia*, recording artists Pitbull, Flo Rida, Kid Sister, and The Black Eyed Peas. *See* Third Amended Complaint, ¶¶ 122-126. Plaintiffs, however, never adduced any evidence that Warner Chappell or APG provided any assistance or inducement to those third parties. Subsequently, in the Joint Pre-Trial Stipulation (DE 218) and their proposed verdict form (DE 226), Plaintiffs abandoned these claims and instead alleged that the direct

9

infringer is non-party Interscope Records, a company that Plaintiffs claim was authorized by Warner Chappell and APG to use the musical composition "Lookout Weekend."[3]  Needless to say, it is improper for Plaintiffs to attempt to amend their pleadings, without leave therefor, by unilaterally inserting new claims into the Joint Pre-Trial Stipulation.

It is unknown why non-party Interscope Records was chosen by Plaintiffs as the "direct infringer" for purposes of their contributory infringement claim, but it is clear that Plaintiffs seek to have this Court adjudicate Interscope Records' liability as a "direct" infringer – as that is a precondition to any finding of Warner Chappell's or APG's purported "secondary" liability – without ever joining Interscope Records as a defendant or substantively establishing Interscope Records' liability.  Had Plaintiffs wished to rely on Interscope Records' alleged infringement, Plaintiffs should have joined Interscope Records as a party and litigated its liability.  Moreover, Plaintiffs fail to allege how Defendants materially assisted and contributed to Interscope Records' unproven infringement.  *See, e.g.*, *Livnat v. Lavi*, No. 96-4967, 1998 WL 43221, *3 (S.D.N.Y. Feb. 2, 1998) (to be held liable for contributory infringement, "…. Participation in the infringement must be "substantial." …. [T]he contributory infringer must have acted in concert with the direct infringer"; citations omitted).

Regardless, the fact remains that Warner Chappell and APG have been charged as direct infringers for issuing a license to Interscope Records to use the musical composition "Lookout Weekend," and also as contributory infringers for the exact same license.  In fact, ¶ 112 of Count II (direct infringement) and ¶ 125 of Count III (contributory infringement) both specifically

---

[3] It is a matter of dispute whether either Warner Chappell or APG issued a license to Interscope Records for this use as the Interscope Records recording in which the alleged composition was first used was released prior to the date when either Warner Chappell or APG began licensing any of the musical works at issue.  *See* Disputed Fact No. 21 in the parties' Joint Pre-Trial Stipulation, DE 218, p. 17, ¶ 21.  Nothing in Defendants' Motion in *Limine* should be construed as accepting the truth of Plaintiffs' allegations concerning any purported license to Interscope Records.

reference a purported license to Interscope Records as a violation of Plaintiffs' rights by Warner Chappell and APG.  Although a defendant can be both a direct and contributory infringer <u>based on different acts</u>, it is legally improper to claim that a defendant is both a direct and contributory infringer based on the same conduct.  *See, e.g.*, *Cable/Home Commc'n Corp.*, 902 F.2d 829 (11th Cir. 1990) (defendant was himself a "direct" infringer based on his own copying of software; defendant was also a "contributory" or "secondary" infringer based on assistance provided to a different direct infringer by supplying training and advertising to the separate direct infringer with knowledge of that infringer's conduct).

Arguing that Defendants are both "direct" infringers *and* "contributory" infringers based on the same conduct is legally indefensible and prejudicial to Defendants because it gives the jury the false impression that Defendants have been accused of two alleged wrongs when, by law, there could only be one alleged wrong, *i.e.*, the purported issuance of a third-party license. Accordingly, the Court should grant Defendants' Motion *in Limine* on Issue No. 5 and preclude Plaintiffs from presenting evidence that Defendants are "contributory" infringers in addition to "direct" infringers.

**IN LIMINE ISSUE NO. 6.**  Plaintiffs should be precluded from introducing evidence of any earnings, revenues or profits of non-parties or arguing that either Defendant is responsible for any earnings, revenues or profits other than its own earnings, revenues or profits, if any.  As noted above, Plaintiffs have offered no calculation of damages for APG, which accordingly, should not be subject to any claim for financial relief.  However, as set forth below, Plaintiffs improperly seek to hold Warner Chappell liable for profits earned by third parties.

In this case, Plaintiffs seek solely the disgorgement of Defendants' profits as their measure of damages.  While there can be joint and several liability for *actual damages*, which

Plaintiffs do not seek, it is black letter law that there can be no joint and several liability for disgorgement of profits. Each Defendant (or non-party infringer) is only responsible for its own profits. *See, e.g.*, *TMTV, Corp. v. Mass Prods., Inc.*, 645 F.3d 464, 474 (1st Cir. 2011) ("Although [actual] damage liability is joint and several, liability for *profits* is several only") (emphasis in original). As stated in *MCA, Inc. v. Wilson*:

> Because infringement of copyright is considered a tort, the general statement often is made that all defendants concerned in the infringement are jointly and severally liable. *See, e.g.*, *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972). However, <u>this rule applies only to the defendants' liability for [actual] damages. Insofar as there is liability for illegal profit, the liability is several; one defendant is not liable for the profit made by another.</u>

677 F.2d 180, 186 (2d Cir. 1981) (emphasis added). *See also Charter School Cap., Inc. v. Charter Asset Mgmt. Fund, L.P.*, 768 Fed. Appx. 776, 779 (9th Cir. 2019) (copyright defendant only liable for its own separate profit; "[O]ne defendant is not liable for the profit made by another."); *KTS Karaoke, Inc. v. Sony/ATV Music Publ'g, LLC*, No. 12-00014, 2014 WL 12567169, at *5 (C.D. Cal. Jan. 14, 2014) (each copyright defendant is liable only for its own illegal profit, not the profit of other alleged infringers); 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits *of the infringer* that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing *the infringer's profits*, the copyright owner is required to present proof only *of the infringer's* gross revenue…") (emphasis added).

The purpose of awarding profits under the Copyright Act is to require the infringer to disgorge *its own* ill-gotten gains. *See, e.g.*, *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001) ("The award of the infringer's profits examines the facts only from the infringer's point of view. If the infringer has earned a profit, this award makes him disgorge the profit to

insure that he not benefit from his wrongdoing."); *Walker v. Forbes, Inc*., 28 F.3d 409, 415 (4th Cir. 1994) (a "[Profits] award is designed to remove from the defendant all benefit derived from the misappropriation of the plaintiff's intellectual property.  This damages structure is not designed . . . to be punitive.").  Construing the Copyright Act to require the "disgorgement" of someone else's profits would amount to an impermissible punitive damages award and would stray far from the purpose of precluding the infringer from reaping the benefit of its own infringement.  *See also, e.g.*, *Calio v. Sofa Express, Inc.*, 368 F. Supp. 2d 1290, 1291 (M.D. Fla. 2005) (punitive damages are not available in a copyright infringement action).

In this case, Plaintiffs are attempting to hold Defendants liable for profits earned by numerous non-parties, including the writers of the songs at issue, other publishers, non-party Interscope Records, and foreign record label affiliates.  *See* Warner Chappell's *Daubert* Motion filed simultaneously herewith and the Menneci Expert Report attached thereto.  The Court should grant Defendants' Motion *in Limine* on Issue No. 6 and preclude Plaintiffs from introducing evidence or argument that either Defendant is responsible for any profits other than those they individually earned.  *Huawei Techs.*, 340 F. Supp. 3d at 964 n.21 (opinions and testimony that "are based on incorrect legal assumptions or propose views that diverge from the actual law . . . may be excluded via motions *in limine*"); *Villalpando*, 161 F. Supp. 3d 873, 895 (N.D. Cal. 2016) (addressing motions *in limine* and noting that "an expert's reliance on incorrect legal assumptions would warrant exclusion[.]").

**IN LIMINE ISSUE NO. 7.**  Plaintiffs should be precluded from presenting William Stevens and George Knox as witnesses in the case, including without limitation, on issues concerning ownership or transfer of copyrights.

In the Report and Recommendation entered on March 8, 2021, Magistrate Judge Becerra granted Defendants' motion to strike the affidavits of William Stevens and George Knox because neither witness had ever been identified in Plaintiffs' initial disclosures as having any knowledge about Plaintiffs' claim to own the copyrights in question.  *See* Report and Recommendation (DE 224) at 7-15.

Magistrate Judge Becerra found in no uncertain terms that Plaintiffs had not justified their failure to identify these witnesses, and that Plaintiffs' last-minute effort to use their affidavits on a key issue in the case was highly prejudicial.  *See, e.g.*, *id.* at 12 (failure to identify Stevens and Knox "cannot be justified at all"; "Plaintiffs took the most egregious road available, they simply surprised Defendants" with these witnesses' testimony).  This Court agreed with Magistrate Judge Becerra, adopted her Report and Recommendation, and granted Defendants' Motion to Strike the Stevens and Knox affidavits.  DE 256, pp. 8-10, 13.

Plaintiffs nevertheless have indicated that they intend to present testimony from Stevens and Knox at trial, despite the striking of their affidavits.  For the reasons set forth in the Report and Recommendation, as well as in Defendants' Motion to Strike, the Court should grant Defendants' Motion *in Limine* on Issue No. 7 and preclude Plaintiffs from presenting any testimony at trial from Stevens or Knox on any issue, including but not limited to copyright ownership or transfer.

**IN LIMINE ISSUE NO. 8.**  Plaintiffs should be precluded from testifying that the reason they did not file this lawsuit before the statute of limitations expired was because Nealy could not afford a lawyer.

As the Court is aware, Defendants contend that Plaintiffs' claims are barred by the statute of limitations.  Plaintiffs should not be permitted at trial to excuse their failure to timely file this

#51248521 v1

lawsuit by testifying that Nealy could not locate or afford a lawyer.  These excuses are not

legally cognizable reasons for tolling the statute of limitations, and would therefore only serve to

mislead the jury.  *See, e.g.*, *Cartagena v. Colvin*, No. 15-679, 2016 WL 7666178, at *4 (M.D.

Fla. June 16, 2016) ("plaintiff's arguments that she is 'not capable of dealing with legal issues'

and that she cannot afford counsel are not sufficient reasons to toll the limitations period");

*Richardson v. Tennessee*, No. 13-2482, 2014 WL 794365, at *2 (W.D. Tenn. Feb. 27, 2014)

("The only reason Plaintiff gives for not filing her complaint in a timely manner is that she could

not find an attorney she could afford.  However, the fact that Plaintiff could not afford a lawyer

is not a sufficient reason to toll the limitations period."); *Wen Liu v. Mount Sinai Sch. of Med.*,

No. 09-9663, 2012 WL 4561003, at *5 (S.D.N.Y. Sept. 24, 2012), aff'd, 559 F. App'x 106 (2d

Cir. 2014) (a plaintiff's limited financial means and inability to afford a lawyer are not

'extraordinary circumstances' that support tolling the limitations period); *Wang v. Palmisano*,

157 F. Supp. 3d 306, 321 (S.D.N.Y. 2016) (the case law makes clear that a plaintiff's limited

financial means and inability to afford a lawyer do not support tolling the limitations period).

Accordingly, the Court should grant Defendants' Motion *in Limine* on Issue No. 8 and preclude

evidence or testimony that Plaintiffs did not file this lawsuit before the statute of limitations

expired because Nealy could not afford a lawyer.

   **IN LIMINE ISSUE NO. 9.**  Plaintiffs should be precluded from relying on the testimony

of Jonathan Black, now deceased, on issues concerning the ownership or transfer of copyrights.

Plaintiffs should also be precluded from relying on the alleged "Form Songwriter's Agreement"

(or "Popular Songwriter's Agreement"), which they produced on August 31, 2020 after Jonathan

Black's deposition.

As the Court is aware, Plaintiffs have been unable to prove that MSI is the copyright owner of the Compositions at Issue.  At trial, Plaintiffs must prove that the author of the Compositions at Issue, Butler, assigned the corresponding copyrights to MSI.  The Copyright Act has a strict requirement that a copyright can only be transferred in a writing signed by the author.  *See* Report and Recommendation (DE 224) at 23 (citing 17 U.S.C. § 204(a); *Tjeknavorian v. Mardirossian*, 56 F. Supp. 3d 561, 565 (S.D.N.Y. 2014)).  That writing must be strictly scrutinized to ensure an unambiguous assignment of clearly identified rights and it must be signed by the author to protect that author's interests.  *See Tjeknavorian*, 56 F. Supp. at 565 (holding that § 204(a) "imposes a rigid default in favor of letting creators retain their interests in copyrighted work").

To date, Plaintiffs have never been able to produce any documents to support their claim that Butler assigned the Compositions at Issue to MSI.  Plaintiff Nealy has testified that such "assignments" were incorporated in certain "songwriter agreements," which also have never been produced in this case.  For an uncertain period of time in or about 1984, MSI claims to have employed an attorney named Jonathan Black as a "consultant."  Black previously testified that he had no involvement in preparing registrations or songwriter agreements for the Compositions at Issue.

Magistrate Judge Becerra has specifically already noted Black's lack of personal knowledge and involvement with respect to the Compositions at Issue:

> Black was also asked about the song "Lookout Weekend"  ECF No. [167-3] at 10. Black initially stated: "I don't believe I did Lookout Weekend" and that he thought it was done before his time. *Id.* at 11.  However, when he was shown the copyright registration and realized that it was a handwritten application, he confirmed he did not prepare that one because he "never" handwrote them.  *Id.*  Finally, Black was then asked about the song "The Party Has Begun." ECF No. [167-3] at 11-12.  He was shown the copyright registration, which was handwritten, and he responded: "not mine."  Id. at 12.  Further, Black testified that if he did not prepare the

> copyright registration for a song, he also would not have prepared the songwriter
> agreement.  ECF No. [167-3] at 17.

DE 224, p. 31.[4]  Having admitted a lack of personal knowledge or involvement with the

registrations or any purported agreements relating to the Compositions at Issue, Black's

testimony on issues concerning ownership or transfers of copyright should be precluded at trial.

Similarly, Plaintiffs should be precluded from relying on the "Form Songwriter's

Agreement" produced by Plaintiffs after Black's deposition.  Plaintiffs list among their trial

exhibits a "Popular Songwriter's Agreement" in the form of an unsigned contract template,

undated, and replete with numerous blank spaces indicating key terms that would presumably be

negotiated by the contracting parties.  Defendants anticipate that Plaintiffs will seek to present

this alleged "Popular Songwriter's Agreement" at trial as an example of the type of contract

Butler signed in the early 1980s that would have allegedly effectuated Butler's transfer of

copyrights to MSI.

The sole reference in the factual record to any "Popular Songwriter's Agreement" was in

Black's deposition testimony on June 25, 2020.  Black testified that he generally used a form

agreement by that name when he prepared copyright registrations for MSI in the 1980s.  *See*

Black Depo. at 194, attached hereto.  Neither Plaintiffs nor Black ever produced any such forms

prior to Black's deposition – Plaintiffs' counsel merely emailed the unsigned form to

Defendants' counsel on August 31, 2020 as a purported example of the type of agreement that

Black was referring to at his deposition.  Since, as set forth previously, Black disavowed having

---

[4] As stated herein, there are three Compositions at Issue.  Because "Weekends" is a "derivative" of "Lookout
Weekend," Plaintiffs rely on the registration for "Lookout Weekend" to support their infringement claims as to both
"Lookout Weekend" and "Weekends."  There are, therefore, only two copyright registrations at issue – one for
"Lookout Weekend" and the other for "The Party Has Begun."

#51248521 v1

prepared any such agreements for the Compositions at Issue, Plaintiffs have no evidentiary foundation for introducing any form agreement at trial.

Moreover, a modern template agreement with blanks as to all key terms cannot fairly serve as an exemplar of the type of agreement that might have been signed 40 years ago in any purported negotiation between MSI and Butler over the Compositions at Issue.  Given the Copyright Act's strict writing requirements, it would be extraordinarily prejudicial for Plaintiffs to attempt to remedy this fatal gap in their evidence by proffering an incomplete, unauthenticated, and unsigned form agreement in lieu of the statutorily-required transfer document that is required to be in writing and signed by Butler.  Such a form would confuse jurors about the legal requirement under the Copyright Act, and run directly counter to the very purpose of the statute – to protect authors from inadvertent or unclear transfers of copyrights. Moreover, the proposed exhibit is unreliable.  While Plaintiffs claim that the alleged transfers from Butler occurred in the 1980s, the "Popular Songwriter's Agreement" is dated "this __ day of __, 20__," and Plaintiffs have adduced no evidence that the same form was used 40 years ago.

The language in Plaintiffs' alleged form agreement also assumes that the songwriter/author is affiliated with The American Society of Composers and Authors ("ASCAP"), whereas Plaintiffs are undisputedly affiliated with ASCAP's primary competitor, Broadcast Music, Inc. ("BMI").  Finally, critical terms are left blank in the form agreement, including, for example, royalty rates and advances that would be central to any songwriter's publishing agreement.  *See Turner v. U-Haul Co. of Fla. 905, LLC*, 2008 U.S. Dist. LEXIS 20081 (M.D. Fla. Mar. 14, 2008) (Court refused to enforce unsigned, form agreement to arbitrate where it did not "specify all of the essential terms of the Agreement").  Plaintiffs' alleged form agreement sheds no light on what, if anything, Butler allegedly signed 40 years ago, and will

undoubtedly mislead jurors about the strict standards imposed by the Copyright Act's writing requirement for copyright transfers.

For the foregoing reasons, it would be extraordinarily prejudicial to allow Plaintiffs to use any supposed form agreement.  Accordingly, the Court should grant Defendants' Motion *in Limine* on Issue No. 9 and preclude Plaintiffs from presenting any testimony at trial from Black on any issue, including but not limited to copyright ownership or transfer, and likewise preclude Plaintiffs from introducing at trial any purported "Form Songwriter Agreement" or "Popular Songwriter's Agreement".

Based on the foregoing argument and recitation of authorities, Defendants respectfully request that the Court grant Defendants' Motions *in Limine* Nos. 1-9 and preclude Plaintiffs from presenting evidence, testimony or argument as indicated herein.

Certificate of Counsel

Pursuant to Local Rule 7.1, undersigned counsel conferred with counsel for Plaintiffs in an effort to resolve the issues raised herein, but was unable to do so.

Respectfully submitted,

GRAY ROBINSON, P.A.
*Attorneys for Defendants Warner Chappell*
*Music, Inc., and Artist Publishing Group, LLC*
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Phone: (305) 416-6880
Fax: (305) 416-6887
karen.stetson@gray-robinson.com

By: /s/ Karen L. Stetson
Karen L. Stetson
Florida Bar No.: 742937
Jonathan L. Gaines
Florida Bar No.: 330361

#51248521 v1

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the

Clerk of the Court and furnished via CM/ECF to all participating recipients, on this 14th day of

August, 2023.

By: /s/ Karen L. Stetson_____

#51248521 v1